Rudy Rosenberg
244 Fifth Ave., Suite 2992
N.Y., N.Y. 1001
(917) 740-9757

# UNITED STATES DISTRICT COURT
## _____ SOUTHERN DISTRICT OF _____
## NEW YORK

RUDY ROSENBERG, JACQUELINE ROSENBERG, & ELTHA JORDAN ) Case No.

Plaintiffs,

        vs.

CITY OF NEW YORK, CYRUS R. VANCE, JR., in his individual and official

capacity as District Attorney of the New York County District Attorney's

Office; DAVID O'KEEFE, in his individual and official capacity as Assistant

District Attorney; ROBERT RYAN, in his individual and official capacity as

Assistant District Attorney; EUGENE PORCARO, in his individual and official

capacity as Assistant District Attorney, Chief of Trial Bureau 30; NITIN

SAVUR, in his individual and official capacity as Assistant District Attorney,

Deputy Chief of the Trial Division in Charge of Criminal Court; BONNIE

SARD, in her individual and official capacity as Assistant District Attorney,

Administrative Assistant District Attorney and Director of Legal Hiring; JOHN

& JANE DOES 1-30, in their individual and official capacity as A.D.A.s ;

NYPD; DERMONT F. SHEA, in his individual and official capacity as Police

Commissioner of the NYPD; WILLIAM BRATTON in 2016, in his individual

and previous official capacity as Police Commissioner of the NYPD;

TERRENCE A. MONAHAN, in his individual and official capacity as Police

Chief;  CARLOS M. GOMEZ, in his individual and official capacity as NYPD

Chief of the Department in 2017; JAMES P. O'NEIL, in his individual and

official capacity as NYPD Chief of the Department in 2016 & 2017; Deputy

Inspector KATHLEEN WALSH, in her individual and official capacity as

Commanding Officer of the NYPD 25th Precinct; Lieutenant DERICK J.

BENTLEY, in his individual and official capacity as Integrity Control Officer of

the NYPD 25th Precinct; JASON BROCHHAUSEN (Shield # 18783), in his

## **VERIFIED COMPLAINT**

## **JURY DEMAND**

individual and  official capacity as Police Officer of NYPD 25th Precinct;   )

ROBERT KSELMAN (Shield # 25091), in his individual and official capacity   )

as Police Officer of NYPD 25th Precinct; SERGEANT KIM, in his individual   )

and  official capacity as Police Officer of NYPD 5th Precinct; JANE and JOHN   )

DOES, in their individual and official capacity as Police Officers & employees   )

of NYPD 5th Precinct;  JOHN & JANE DOES 1-30, in their individual and   )

official capacity as Police Officers;  NY Courts Security; MICHAEL   )

MAGLIANO, in his individual and official capacity as Chief of N.Y.C. Courts   )

CityWide Operations and as New York State Chief of The Department of Public   )

Safety; MICHAEL SENSESE, in his individual and official capacity as Chief of   )

Court Security for New York City Courts; HOWARD METZDORFF, in his   )

individual and official capacity as First Deputy Chief of Public Safety, N.Y.C.   )

Courts CityWide Operations; JEWEL MCCOLLIN, in her individual and   )

official capacity as was Chief of N.Y.C. Courts CityWide Operations; DENNIS   )

CALASCIBETTA, in his individual and official capacity as NYS Court Officer-   )

Lieutenant in charge of Court Security supervisor at 111 Center Street   )

Courthouse; KALAWSKI, in his individual and official capacity as NYS Court   )

Officer -  Lieutenant in charge of Court Security supervisor at 111 Center Street   )

Courthouse; JOHN ALLEN, in his individual and official capacity as NYS   )

Court Officer-Major in charge of Court Security for Manhattan Criminal Court;   )

"JOHN" DOE, in his individual and official capacity as Manhattan Criminal   )

Court Security / Bailiff; JAMES WHITEHEAD, in his individual and official   )

capacity as NYS Court Officer -  Captain of Court Security Services;   )

BERNARDO AVILES Badge # 47, in his individual and official capacity as   )

NYS Court Officer -  Major of Court Security; Sgt. FREDRICK LOEFFLER   )

Badge # 223, in his individual and official capacity as NYS Court Officer -   )

Sergeant of Court Security; DANIEL F. MAGRINO Badge # 6411, in his   )

individual and official capacity as Court Security Officer; NIKKI STERLING #   )

6882, in her individual and official capacity as Court Security Officer; "African   )

American" Court Security officer Badge # 6346, , in his individual and official   )

capacity as Court Security Officer; JOHN & JANE DOES 1-30, in their   )

individual and official capacity as Court Security Officers & employees of New )
York Courts; ALIA A. RAZAQ , in her individual and official capacity as Chief )
Clerk of the Civil Court of New York City; CAROL ALT, in her individual and )
official capacity as Chief Clerk of the Civil Court of New York City (2015 - )
2017); ANTHONY CANNATARO , in his individual and official capacity as )
Citywide Administrative Judge of the Civil Court of the City of New York; )
EUGENE HURLEY, in his individual and official capacity as First Deputy )
Chief Clerk, Citywide Administration; ANANIAS GRAJALES, in his )
individual and official capacity as Clerk of the County; SERENA SPRINGLE, )
was Clerk of the County New York County Civil Court in 2016 and Criminal )
Court Coordinator (2016 – 2018); PETER CATELLA, in his individual and )
official capacity as Manager of Housing Court Clerk's Office; THOMAS GREY )
, in his individual and official capacity as Senior Clerk - Housing Court Clerk's )
Office; KIM GOODEN, in her individual and official capacity as Senior Clerk - )
Housing Court Clerk's Office; JOHN & JANE DOES 1-10, in their individual )
and official capacity as Clerks Office employees; ANGELA BRIGANTE, in her )
individual and official capacity as a court reporter; IERVASI, in her/his )
individual and official capacity as a court reporter; NAOMI SCHWARTZ, in )
his/her individual can official capacity as a court reporter;  ROBERTO )
IRIZARRY and his employer BELKIN, BURDEN & GOLDMAN, LLP and )
principals and/or employees of this firm as JOHN & JANE DOES 1-10, in their )
individual and official capacity as agents to DANY and/or NYPD and/or Court )
Security and/or Clerks Office. )
Defendants. )
_____ )

PLAINTIFFS, RUDY ROSENBERG, JACQUELINE ROSENBERG AND, ELTHA JORDAN make the

following Verified Complaint and state and allege as follows:

**ACTION MANDATE**

1. Upon information and belief, Plaintiffs allege that Defendants DANY, NYPD, the New York Courts Security and Court Clerk's Office administrations directed all of the court and clerk employees' unconstitutional violations against Plaintiffs from March 9, 2016 forward.

2. Upon information and belief, Plaintiffs allege that the Court Security and Court Clerk's Office defendants engaged in a conspiracy of racial discrimination and retaliation from Spring 2015 forward that includes the Clerk's Office defendants misappropriating Plaintiffs' filed pleadings with the Clerk's Office on or about December 18, 2015 that resulted in a NY Courts IG investigation in January 2016 which caused an escalation in Defendants' constitutional violations directed at Plaintiffs.

3. Upon information and belief, Plaintiffs allege that Judge Statsinger and his unidentified Court Security conspired with both DANY and NYPD defendants, inclusive of the 25th Precinct defendants to falsely assert to Plaintiffs and thereafter fabricate both court and law enforcement records that the alleged Bench Warrant was actually issued on December 8, 2016.

4. Upon information and belief, Plaintiffs allege that Defendants engaged in a hybrid conspiracy of evidence laundering and parallel construction involving civilian agents such as Roberto Irizarry and the other named defendants.

5. Upon information and belief, Plaintiffs allege that DANY, Court Security and Clerk's Office defendants directed Roberto Irizarry to initiated the Clerk's Office March 9, 2016 controversy by assaulting RUDY ROSENBERG and then making false race baiting allegations against RUDY ROSENBERG.

6. Upon information and belief, DANY, Plaintiffs allege that DANY, Court Security and Clerk's Office defendants further conspired by directing all defendants present at the Clerk's Office on March 9, 2016 to ignore and suppress Plaintiffs' complaints about Roberto Irizarry's assaults upon RUDY ROSENBERG and JACQUELINE ROSENBERG thereby re-victimizing Plaintiffs by Defendants constitutional violations not to intervene and protect Plaintiffs.

7. Upon information and belief, Plaintiffs allege that Defendants, directed by DANY defendants,

   engaged in the conspiracy, by prior private agreement, prior to the March 9, 2016 arrests.

8. Upon information and belief, Plaintiffs allege that Defendants received complaints of racist assault and threats by Roberto Irizarry upon RUDY ROSENBERG on March 9, 2016, but ignored the same out of racist and conspiratorial motives.

9. Upon information and belief, Plaintiffs allege that Defendants conspired to use the 2017 false arrest as a procedural "shoe horn" to slip in the fictitious 2016 Bench Warrant so as to enhance the probability of a conviction in the 2016 prosecution.

10. Upon information and belief, Plaintiffs allege that the visible minority defendants, at a minimum, were motivated to join the DANY conspiracy for racial discriminatory and retaliatory motives tied to Plaintiffs' prior discrimination and retaliation complaints against the Court Security and the Clerk's Office administration and these defendants.

11. All defendants collectively and individually conspired to fabricate charges and evidence such as their collusion that RUDY ROSENBERG engaged in racial profanity at the Housing Court Clerk's Office on March 9, 2016.

12. At the December 4, 2017 trial, RUDY ROSENBERG submitted into evidence an audio recording that covered the entire events from the time Plaintiffs entered the courthouse through the arrests and detention, but this high definition audio recording did not present any evidence that RUDY ROSENBERG used racial or profanity nor did he "yell" at anyone as testified to by Roberto Irizarry, Kim Gooden, Tom Grey and Nikki Sterling.

13. All the of the NYC court house employees testified under oath that they all know Roberto Irizarry and had a relationship with him.

14. In comparing these defendants March 9, 2016 statements, charging documents and reports Plaintiffs allege that the probability that all of these defendants constantly lied about the same set of facts and using the same false details can only demonstrate a conspiracy as opposed to random chance.

15. This is a civil rights action seeking damages from the named and unnamed defendants in both their official and individual capacities in addition to the City of New York and private actors (collectively, "Defendants"), for Defendants' violations of Plaintiffs RUDY ROSENBERG,

Constitutions in addition to the Federal Americans with Disabilities Act ("ADA") et seq., Section

504 of the Rehabilitation Act ("Section 504") et seq., the New York City Human Rights Law,

N.Y.C. Admin. Code § 8-101 et. seq. ("NYCHRL") et seq., and pursuant to 42 U.S.C. § 1983

("Section 1983"), 1985 (2) & (3), 1981 & 1986.

16. Additionally, this is a civil action, which incorporates the State-Created Danger Doctrine and

Civil Rights conspiracy, is brought due to Defendants', individual and collective, abuse of

process, gross negligence, and violations of Plaintiffs' rights pursuant to 42 U.S.C. § 1983, 1981,

1985, 1986 et seq.; the rights secured by the First, Fourth, Fifth, and Fourteenth Amendments of

the United States Constitution; and those rights secured under the New York State Constitution,

Article I, Sections 11 and 12, and the common law of the State of New York, also including other

rights raised and implicated herein.

17. Plaintiffs seek monetary relief, general, compensatory, special and punitive damages,

disbursements, costs and fees, against all defendants in their individual and official capacities in

addition to such other relief as this Court deems equitable and just, further details included herein.

18. Plaintiffs' individual and collective injuries are not "transitory and de minimis" injury. See

Coleman v. City of New York, No. 07 Civ. 1051 (CM), 2010 WL 571986, at *5 (S.D.N.Y. Feb.

2, 2010)

**CONTINUING VIOLATIONS DISCOVERY, HARMS & EQUITABLE TOLLING**

19. The fact that DANY fabricated the 2016 Bench Warrant and held it in abeyance until they were

ready to stage another false arrest on May 24, 2017 demonstrates a singular conspiracy involving

the 2016 and 2017 prosecutions.

20. Defendants have operated within a single conspiracy during this time frame, between March 2016

and the present time, to prosecute, jail and deport RUDY ROSENBERG, and by implication his

dependents that would be a logical extension of their constructive eviction of Plaintiffs in the

court system.

21. Defendants' own communications, omissions and commissions directed at Plaintiffs between

2016 and present conclusively establish  a single conspiracy during this period such as the Court

held in Robinson, "one conspiracy to 'frame' Robinson and was a single continuing violation of

'plaintiff's constitutional rights tied together by a plan to `get' Van Robinson at all costs,' Order,

pp. 2-3, which continued until his acquittal in October 1983." Robinson v. Maruffi, 895 F. 2d 649

- Court of Appeals, 10th Circuit 1990.

22. Defendants Chief Magliano and Major John Allen informed Plaintiffs in February and April 2016
that the Court Security profile for RUDY ROSENBERG states that RUDY ROSENBERG has the
PTSD disability.

23. At the December 4, 2017 trial, defendants Nikki Sterling, Roberto Irizarry Tom Grey and Kim
Gooden committed at least six acts of perjury each telling a story of Plaintiffs, on March 9 2016,
engaging in racist and vulgar public acts against themselves and others in addition to violent
interference of police and court officers engaged in lawful execution of their mandated roles.

24. The District Attorney's Office had seized, on or about March 10, 2016, the full courthouse
security videos for all areas of the controversy inclusive of the Housing Court Clerk's Office and
the second-floor elevator bank foyer areas.

25. It is axiomatic that Defendants also testified at trial and in their March 9 2016 and subsequent
court management reports and also statements to the D.A. that ELTHA JORDAN participated in
the March 9, 2016 violations when in reality, ELTHA JORDAN was not in the courthouse on that
day.

26. The D.A. the full court security videos from as early as March 10, 2016 and thereafter privately
directed both the Court Security defendants and the New York State Office Of Court
Administration Counsel's Office to conceal exculpatory parts of the March 9, 2016 court security
videos and make false statements to Plaintiffs in denying their FOIL requests for all these court
security videos through and beyond the December 2017 trial.

27. Even though the District Attorney's Office was in receipt of materially conflicting sworn
statements from the trial witnesses as early as the afternoon of March 9, 2016, being the pre-
arraignment period, the D.A. proceeded to direct all defendants to follow the D.A.'s instructions
to continue with the conspiracy of perjury, fabrication, obstruction and false reporting through the
December 2017 trial period and beyond.

28. Plaintiffs have alleged sufficient facts "to raise a plausible inference that the applicable
limitations periods are subject to tolling.".

29. Defendants executed an unlawful arrest on May 24, 2017 to disguise the real purpose was to

effect an unlawful arrest based upon a fictitious 2016 Bench Warrant.

30. The New York Criminal Procedure Law Section 120.80 - Warrant of arrest; when and how

executed requires that the Bench Warrant must be displayed upon RUDY ROSENBERG's

demand, but Defendants have failed to produce,

> 2. Unless encountering physical resistance, flight or other factors rendering normal procedure impractical, the arresting police officer must inform the defendant that a warrant for his arrest for the offense designated therein has been issued. **Upon request of the defendant, the officer must show him the warrant if he has it in his possession. The officer need not have the warrant in his possession, and, if he has not, he must show it to the defendant upon request as soon after the arrest as possible**.

31. Defendants have pursued this conspiracy since 2016 by morphing it into a two-prong conspiracy

in 2017 by virtue of the District Attorney enrolling the NYPD in a sister false prosecution against

RUDY ROSENBERG.

32. There is evidence that there is singularity in the Defendants' actions that is demonstrated by the

fact that DANY circumvented the random judge assignment process to obtain Judge Statsinger

who is known to be pro-prosecution.

33. DANY has a historical reputation of circumventing the random judge assignment through their

undue influence which they did in the instant case and additionally sought to unlawfully and

unconstitutionally merge the entirely unrelated 2016 and 2017 trial processes.

34. Defendants charged RUDY ROSENBERG with four counts on March 9, 2016 and then suddenly

dropped a new count on the defense desk during the December 2017 trial and it is this count that

materially changed the theory and material facts supporting the trial and conviction.

35. Thereafter, RUDY ROSENBERG filed Notice of Appeal against this December 7, 2017

conviction which appeal has not been adjudicated as of the date of this complaint filing.

36. Defendants have operated within a single conspiracy of continuing violations and harm during

this time frame with the mandate to unconstitutionally prosecute, jail and deport RUDY

ROSENBERG, and by implication his dependents in addition to obstructing Plaintiffs' ability to

file timely statutory notices and complaints, "one conspiracy to 'frame' Robinson and was a

single continuing violation of 'plaintiff's constitutional rights tied together by a plan to `get' Van

Robinson at all costs,' Order, pp. 2-3, which continued until his acquittal in October 1983."

Case 1:20-cv-04012-CM   Document 2   Filed 05/22/20   Page 9 of 116
Robinson v. Maruffi, 895 F. 2d 649 - Court of Appeals, 10th Circuit 1990.

## HECK BAR, DISCOVERY & EQUITABLE TOLLING

37. Plaintiffs allege that the facts of the instant controversy qualify this case as an exception to the Heck deferral rule in that bringing this complaint would have impugned the 2016 prosecution that is currently on appeal.

38. Therefore, all causes of actions, inclusive of False Arrest et seq. should be provided the accrual date based upon the acquittal date.

39. It is axiomatic that Heck does not set forth a standard rule that all Fourth Amendment claims accrue at the time of violation. See Gibson v. Superintendent of NJ Dept. of Law and Public Safety - Division of State Police, 411 F.3d 427, 450-51 (3d Cir. 2005) ("Heck does not set forth a categorical rule that all Fourth Amendment claims accrue at the time of the violation. This Court's determination that the plaintiff's false arrest claim in Montgomery qualified as an exception to the Heck deferral rule, and thus accrued on the night of the arrest, does not mandate a blanket rule that all false arrest claims accrue at the time of the arrest.").

40. The Court in Livingston v. Henderson, et al. Northern District of New York, nynd-7:2015-cv-00631 held, "conspiracy claims are routinely dismissed under Heck when such claims bear on the validity of the underlying conviction or sentence. Cruz v. Reilly, No. 08-CV-1245 (JFB)(AKT), 2009 WL 2567990, at *3 (E.D.N.Y. Aug. 18, 2009) (collecting cases); see also Amaker v. Weiner, 179 F.3d 48, 52 (2d Cir. 1999) (holding that "Heck . . . applies with respect not only to [the] plaintiff's § 1983 claim but also to his §§ 1981, 1985(3) and 1986 claims" because the existence of a conspiracy would necessarily question the validity of plaintiff's conviction)."

41. The Court in Kogut v. The County of Nassau et al. Eastern District of New York, nyed-2:2006-cv-06695 (2009) held, "if a person were validly convicted of the crime for which he was arrested, he would be barred from bringing a claim for false arrest because one element of such a claim is the absence of probable cause," Vallen v. Connelly, 36 Fed. Appx. 29, 31 (2d Cir. 2002) (citing Singer v. Fulton County Sheriff, 63 F.3d 110, 114, 118-19 (2d Cir. 1995), cert. denied, 517 U.S. 1189, 116 S. Ct. 1676, 134 L. Ed. 2d 779 (1996)); Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994), 'and a valid conviction establishes the existence of probable cause. . . .' Vallen, 36

Fed. Appx. at 31 (citing, for example, Cameron v. Fogarty, 806 F.2d 380, 388 (2d Cir. 1986),

cert. denied, 481 U.S. 1016, 107 S. Ct. 1894, 95 L. Ed. 2d 501 (1987); see also Lewis v.

Donahue, 241 Fed. Appx. 776, 777 (2d Cir. 2007).

42. The Courts in Estes-El v. Long Island Jewish Med. Ctr., 916 F. Supp. 268, 270 (S.D.N. Y. 1996)

and Cameron v. Fogarty, 806 F.2d 380 (2d Cir.1986), cert. denied, 481 U.S. 1016, 107 S.Ct.

1894, 95 L.Ed.2d 501 (1987), in which the United States Court of Appeals for the Second Circuit

held that because, under common law principles, an action for false arrest cannot be maintained if

the arrest was followed by a conviction, conviction is a complete defense to a section 1983 action.

43. These facts alone raise the issue of whether Plaintiffs are required to file a separate complaint for

the false arrest in the courtroom on December 7, 2017.

# **<u>INJURIES</u>**

44. On information and belief, Plaintiffs allege that Defendants (collectively and individually), their

agents, employees and servants unlawfully and under color of law, in both their official and

individual capacities, engaged in (not exhaustive as to all abuses& injuries) the following abuses

and caused all Plaintiffs the resulting injuries,

- Conspiracy,

- First Amendment,

- Racial discrimination individually and by association

- False arrest & imprisonment,

- Unlawful entry, search & seizure,

- unlawful seizure & search,

- misappropriation of property,

- unlawful entry & search,

- invasion of privacy,

- harassment, blackmail & extortion,

- unlawful video & audio surveillance, invasion of privacy

- failure to intervene & provide protection,

- fabrication of evidence & filing of false government / business records, conspiracy, unlawfully searched & seized property amongst other Bad Acts

thereby causing irreparable injuries,

- Loss of Liberty & False Imprisonment,

- Loss of Affections,

- Fear, Humiliation, Emotional distress,

- Anxiety, Psychological, Emotional and Physical pain,

- Intentional Tort & Emotional Distress,

- Increased cost of living, legal and related expenses,

- Reputation / Stigma plus al damage,

- Loss of Enjoyment of Life,

- Degradation of ability to earn a living and obtain economic opportunities,

- Economic loss tied to employment, business and legal claim rights and opportunities,

## INJURY COMMON TO ALL PLAINTIFFS

Note: all other injuries recited at beginning of this Notice of Claim are to be considered copied herein at amounts to be determined. All damages to be determined unless otherwise stated herein.

Humiliation & Invasion of Privacy;

Alienation of Relations;

Deprivation of Civil Rights;

Psychological & physical manifestations injuries;

Pain and Suffering;

Attorney fees, inclusive of pre and post judgment;

General, Compensatory, Special and Punitive damages;

Punitive damages against the Individual Defendants in an amount to be determined;

Deprivation of Civil Rights;

Pre- and post-judgment interest;

Redress under 42 U.S.C. §1983, ADA Act, "Fair Housing Act". Sec. 801. [42 U.S.C.

3601], Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA") and Title VI, 42

U.S.C. § 2000d et seq;

Economic and legal harm including loss of economic opportunity;

Payments for legal fees and disbursements and legal expenses;

| | |
|---|---|
| Special and Punitive damages: | $20,000,000.00 |
| Compensatory Damages: | $10,000,000.00 |
| False Arrest: | to be determined |
| False Imprisonment: | $10,000,000.00 |
| Humiliation & Invasion of Privacy: | $5,000,000.00 |
| Loss of liberty: | $10,000,000.00 |
| Loss of Services: | to be determined |
| Unjust Imprisonment: | $10,000,000.00 |
| Pain and Suffering: | $10,000,000.00 |
| Inconvenience: | to be determined |
| Interrupted Life & Life Enjoyment: | $10,000,000.00 |
| Loss of time: | $10,000,000.00 |
| Psychological & physical manifestations injuries: | to be determined |
| Peril to life, liberty & immigration status: | $15,000,000.00 |
| Injury to Reputation / Stigma plus & Stigma plus: | $25,000,000.00 |
| Injury to Health: | $10,000,000.00 |
| Mental Suffering, Anxiety: | $10,000,000.00 |
| Loss of Affections: | $10,000,000.00 |

General impairment of

| | |
|---|---|
| social and mercantile standing: | $10,000,000.00 |
| Loss or injury to property, claims,<br>Interest, receivables, and credit: | to be determined |
| Decrease in earning capacity<br>and all losses sustained in business: | $10,000,000.00 |
| Loss of the pleasures of life: | $15,000,000.00 |
| Attorney fees, litigation cost & expenses,<br>inclusive of pre and post interest: | to be determined |
| Loss of residences & Life Stability: | $10,000,000.00 |
| Miscellaneous: | to be determined |
| TOTAL AMOUNT CLAIMED: | $25,000,000.00 plus |

## JURISDICTION AND VENUE

45. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 1343(a)(3) and 2201, 42 U.S.C. § 12132 *et seq.*, 29 U.S.C. § 794, and 42 U.S.C. § 1983.

46. The Court has supplemental jurisdiction over Plaintiff's local law claims pursuant to 28 U.S.C. § 1367, 1367(a), because the federal and local law claims arise from a common nucleus of operative fact.

47. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events or omissions giving rise to the claims occurred herein.

## JURY DEMAND

48. Plaintiffs demand trial by jury on each and every claim pleaded herein.

## PARTIES

49. Defendant City of New York is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

50. Defendant City is a municipal entity created and organized under the laws of the State of New York. The City is authorized by law to maintain a police department, which acts as its agent for purposes of law enforcement and for which the City is responsible.

51. The City is responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and is responsible for the appointment, training, supervision, discipline and retention, and conduct of all NYPD personnel as policy-maker and employer under respondent superior.

52. The City is responsible for enforcing the rules of the NYPD, and for ensuring that NYPD personnel obey the laws of the United States and the State of New York.

53. At all times relevant hereto, Defendant City of New York, acting through the NYPD, was responsible for the policy, practice, supervision, implementation and conduct of all NYPD matters and was responsible for the appointment, training, supervision and conduct of all NYPD personnel, including the Defendants referenced herein. In addition, at all relevant times, Defendant City of New York was responsible for enforcing the rules of the NYPD and for ensuring that NYPD personnel obey the laws of the United States and the State of New York.

54. The City of New York and the NYPD received federal financial assistance at all times relevant to this Complaint.

55. As an agency of the City of New York, the New York City Police Department (NYPD) is not an entity that can be sued in the name of the agency. N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); Jenkins v. City of New York, 478 F.3d 76, 93 n.19 (2d Cir. 2007).

56. At all times relevant hereto, Defendants are police officers, Detectives, supervisors, agents, supports staff, Confidential Informants, and police officials in the NYPD acting in the capacity of employee or similar facsimile of Defendant City of New York, and within the scope of their employment as such Defendants are being sued in their individual and official capacities.

57. Defendant Dermont F. Shea is Police Commissioner of the NYPD for all relevant time periods and is sued in his individual and official capacities.

58. Defendant Terence A. Monahan is Police Chief of the NYPD for all relevant time periods and is sued in his individual and official capacities.

59. Defendant William Bratton Police Commissioner of the NYPD (2016) for all the relevant time periods and is sued in his individual and official capacities.

60. Defendant James Patrick "Jimmy" O'Neill Jr. was Police Commissioner of the NYPD for all relevant time periods and is sued in his individual and official capacities.

61. Defendant Carlos M. Gomez was NYPD Chief of the Department for all relevant time periods and is sued in his individual and official capacities.

62. Defendant Michael A. Kletzel, Commander of NYPD Manhattan Warrant Section for all relevant time periods and is sued in his individual and official capacities.

63. Defendant Deputy Inspector KATHLEEN WALSH, Commanding Officer of the NYPD 25th Precinct for all relevant time periods and is sued in her individual and official capacities.

64. Defendant Lieutenant DERICK J. BENTLEY, Integrity Control Officer of the NYPD 25th Precinct for all relevant time periods and is sued in his individual and official capacities.

65. Police Officers Jason Brochhausen (Shield # 18783) and Robert Kselman (Shield # 25091) (Shield # 25091) are the arresting officers for all relevant time periods and are sued in their individual and official capacities.

66. "Doe" Kim, Sergeant at the NYPD 5th Precinct in Chinatown, for all relevant time periods and is sued in his individual and official capacities.

67. John and Jane Does for all relevant time periods and is sued in her individual and official capacities.

68. Upon information and belief, Plaintiffs allege that Roberto Irizarry a civilian is a paid civilian agent for DANY, who operated at all times under the color of law engaged in unlawful acts directed at Plaintiffs for the time periods pleaded herein, therefore for all relevant time periods and is sued in his individual and official capacities.

**DISTRICT ATTORNEY PARTIES**

69. At all times relevant hereto, Defendants are District Attorney, Assistant District Attorneys, investigators, Detectives, agents, Confidential Informants and support staff in the Manhattan District Attorney's Office acting in the capacity of employee or similar facsimile of Defendant City of New York, and within the scope of their employment as such is being sued in their individual and official capacities.

70. Cyrus Vance, Jr. is the Manhattan District Attorney for all relevant time periods and is sued in his individual and official capacities.

71. Assistant District Attorney Robert J. Ryan is the ADA involved in both of the 2016 and 2017 prosecutions for all relevant time periods and is sued in his individual and official capacities.

72. Assistant District Attorney David O'Keefe, Head of Manhattan District Attorney's Crime Strategies Unit for all relevant time periods and is sued in his individual and official capacities.

73. Assistant District Attorney Bonnie Sard, Administrative Assistant District Attorney and
Director of Legal Hiring for all relevant time periods and is sued in her individual and official capacities.

74. Assistant District Attorney Eugene Porcaro, Chief of Trial Bureau 30, for all relevant time periods and is sued in his individual and official capacities.

75. Assistant District Attorney Nitin Savur, Deputy Chief of the Trial Division in Charge of Criminal Court for all relevant time periods and is sued in his individual and official capacities.

76. John and Jane Does for all relevant time periods and is sued in their individual and official capacities.

**NEW YORK CITY CRIMINAL COURT SECURITY**

77. Chief Michael Senese is Chief of Court Security for New York City Courts for all relevant time periods and is sued in his individual and official capacities.

78. John Allen is NYS Court Officer-Major in charge of Court Security for Manhattan Criminal Court for all relevant time periods and is sued in his individual and official capacities.

79. Michael Magliano, was Chief of N.Y.C. Courts citywide operations and then Michael Magliano, Chief of The Department of Public Safety for all relevant time periods and is sued in his individual and official capacities.

80. Jewel McCollin, was Chief of N.Y.C. Courts citywide operations for all relevant time periods and is sued in her individual and official capacities.

81. Howard Metzdorff, First Deputy Chief of Public Safety, N.Y.C. Courts citywide operations for all relevant time periods and is sued in his individual and official capacities.

82. "John" Doe, Manhattan Criminal Court Security / Bailiff under Judge Frey for all relevant time periods and is sued in his individual and official capacities.

83. Jane and John Does for all relevant time periods and is sued in her individual and official

capacities.

## HOUSING COURT & COUNTY CLERK'S OFFICES

84. Anthony Cannataro, Citywide Administrative Judge of the Civil Court of the City of New York for all relevant time periods and is sued in his individual and official capacities.

85. Carol Alt, Chief Clerk of the Civil Court of New York City (2016) for all relevant time periods and is sued in her individual and official capacities.

86. Alia Razzaq, Chief Clerk of the Civil Court of New York City for all relevant time periods and is sued in her individual and official capacities.

87. Eugene Hurley, First Deputy Chief Clerk, Citywide Administration for all relevant time periods and is sued in his individual and official capacities.

88. Serena Springle, First Deputy Chief Clerk, Citywide Administration (2016) for all relevant time periods and is sued in her individual and official capacities.

89. Peter Catella, Manager of Housing Court Clerk's Office for all relevant time periods and is sued in his individual and official capacities.

90. Kim Gooden, Senior Clerk - Housing Court Clerk's Office for all relevant time periods and is sued in her individual and official capacities.

91. Ananias Grajales, Clerk of the County for all relevant time periods and is sued in his individual and official capacities.

92. Tom Grey, Senior Clerk - Housing Court Clerk's Office for all relevant time periods and is sued in his individual and official capacities.

93. Jane and John Does for all relevant time periods and is sued in her individual and official capacities.

## CRIMINAL COURT REPORTERS

94. Angela Brigante, Court Reporter for all relevant time periods and is sued in her individual and official capacities.

95. "Iervasi", Court Reporter for all relevant time periods and is sued in her individual and

official capacities.

96. Naomi Schwartz, Court Reporter for all relevant time periods and is sued in her

individual and official capacities.

# NOTICE OF CLAIM

97. Plaintiffs filed the Notice of Claim with the New York City Comptroller's office within

the 90-day period following the trial court's full acquittal on December 8, 2017.

98. All individual Defendants are being sued in both their personal and official capacities.

99. Defendants have not contacted Plaintiffs during this time period therefore they have

constructively waived a hearing pursuant to N.Y. Gen. Mun. Law §50-h.

100.    Plaintiffs timely filed a Notice of Claim with the Comptroller of the City of New

York, setting forth the salient facts underlying Plaintiffs' claims against the individual

Defendants and Defendant City of New York.

# FACTUAL ALLEGATIONS

## PERVASIVE PATTERN OF DANY, COURT SECURITY CLERK'S

## OFFICE & NYPD MISCONDUCT

101.    Upon information and belief, Plaintiffs allege that D.A. Cyrus Vance and his crew have

historically employed the NYPD and Court Security as its' ALTER EGO to shield the District

Attorney's Office from political, legal and economic liability in their failed prosecutions.

102.    Police officers, unlike civilians, have the power to terminate constitutionally protected

liberty; with this power comes great responsibility, as well as the need for appropriate oversight.

See, e.g., N.Y.P.D. Officers Are Charged with Lying About a Suspect, Feb. 16, 2017 ("Cyrus R.

Vance Jr., the Manhattan district attorney, said the charges against the detectives were a 'gross

violation of their training, N.Y.P.D. protocol and the law. When members of law enforcement

commit misconduct,' he added, 'they threaten the credibility of our work and the safety of the citizens whom we are sworn to protect.'").

103.     Between 2011 and 2018, NYPD lying and other forms of prosecution and law enforcement fraud have escalated; which negligence by the City of New York amounts to a policy or a custom.

104.     The Second Circuit of Appeals held in Pedrosa v. City of New York, No. 13–CV–01890, 2014 WL 99997, at *8 (S.D.N.Y. Jan. 9, 2014) that the City of New York and the NYPD were liable because the evidence established pervasive systemic indifference to Officer Pedrosa' complaints of rampant fraud and false reports by NYPD officers.

105.     Plaintiff Lisette Pedrosa's complaint alleged that, "Defendant Nilda Hoffman, Deputy Inspector and Commanding Officer of the 25th Precinct, knowingly caused false reports to be written alleging that Officer Pedrosa had left her equipment unsecured," which is identical misconduct that Plaintiffs' complain about the defendants in the instant complaint.

## CONDUCT THAT INTENTIONALLY OR RECKLESSLY DISREGARDED THE ABSENCE OF PROBABLE CAUSE

106.     In the instant case, the named NYPD Defendants, collectively and individually, fabricated probable cause through various means including post arrest fabrication of complaint and related records.

107.     All Defendants are involved in an ongoing conspiracy to unlawfully deprive Plaintiffs' constitutional rights including the violations complained of herein.

108.     By example of constitutional violations, "what is actionable under the Fourth Amendment is not the decision to pursue criminal charges, but only petitioner's detention absent a valid probable cause determination." See Manuel v. Joliet (03/21/2017) - Supreme Court

109.     Additionally, the Fourth Amendment requires the "right to a neutral determination of probable cause, which is the basic prerequisite for pretrial detention. See Gerstein, 420 U.S. at 124-125 ("What fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liber-ty.") (emphasis added); see also County of Riverside v. McLaughlin, 500 U.S. 44, 55 (1991) See Manuel v. Joliet (03/21/2017) - Supreme Court.

110.     The Court Security, through the "John" the Bailiff in the May 25, 2017 arraignment court dealing with the fictitious Bench Warrant and the new 2017 false charges, further stigmatized RUDY ROSENBERG and the other plaintiffs by his inflammatory and defamatory statements to the arraignment Judge Frey.

111.     Plaintiffs witnessed the bailiff whisper in Judge Frey's ear and Frey simultaneously stare at RUDY ROSENBERG in a threatening manner in the early morning of the May 25, 2017 court session.

112.     Plaintiffs also heard this bailiff speak with court appointed counsel in the same session uttering the same inflammatory and defamatory characterization of RUDY ROSENBERG being a "racist", "bigot" and "contemptuous toward the court."

113.     As a direct result of the bailiff's words and actions, Judge Frey imposed excessive bail and the court appointed counsel sought to be removed from representing RUDY ROSENBERG.

114.     Nikki Sterling, inclusive of arresting officers and supervisors, discriminatorily failed to bring RUDY ROSENBERG before an arraignment court on May 24 2017 by deliberately delaying the police processing to cause Plaintiffs irreparable physical, economic, Reputation / Stigma plus al, psychological and constitutional harms in violation of the Fourth Amendment, See Manuel v. Joliet (03/21/2017) - Supreme Court., "Regardless of the procedure justifying the arrest, upon seizure, a defendant must be brought before a magistrate judge for an initial appearance "without unnecessary delay" to be informed, inter alia, of the charges against him. Fed. R. Crim. P. 5(a) and (d)." also See Castellano v. Fragozo, 352 F.3d 939, 953-954 (5th Cir. 2003) (en banc) ("The initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example, * * * they are not claims for malicious prosecution and labeling them as such only invites confusion."), cert. denied, 543 U.S. 808 (2004).

**BACKGROUND STATEMENT**

115.     Upon information and belief, Plaintiffs allege that Defendants persistently engaged in affirmative acts of retaliatory inducement to arrest and prosecute Plaintiffs directly and by implication. See Williams v. City of Carl Junction, 480 F.3d 871, 876 (8th Cir. 2006); Greene v. Barber, 310 F.3d 889, 895 (6th Cir. 2002)

116.     Upon information and believe, Plaintiffs allege that Defendants sought to deny RUDY ROSENBERG his constitutional right to a fair state criminal trial and Plaintiffs' rights to be witnesses and thereafter pursue their respective constitutional rights violation claims through their unlawful concealment of vital information necessary to research, draft and file this complaint in a timely fashion.

117.     By example, the DA refused to hand over the names of witnesses therefore hampering and violating plaintiffs' case and the filing of this complaint.

118.     By example, the trial court misappropriated most of the trial record or otherwise delayed other portions such as the transcripts so as to conceal important information to allow Plaintiffs to identify the causes of action and the defendants' identities.

119.     Retaliatory the Manhattan District Attorney's Office, the NYPD and the Court Security defendants, individually and collectively, spent months investigating ways and means to fabricate an arrest and prosecution against RUDY ROSENBERG that incorporated perjury, false statements, false reports, false witnesses and manipulated court security video.

120.     Defendants selected Court Officer Nikki Sterling and Clerk's Office managers Kim Gooden, senior court clerk Tom Grey and Roberto Irizarry of the law firm BELKIN, BURDEN & GOLDMAN, LLP to engage in what amounts to being an effort to entrap Plaintiffs by ambush on March 9, 2016, the day of an important Housing Court hearing.

121.     By public information, Nikki Sterling has a longstanding history of being an African American racist bigot who has a malice fixation directed at Caucasian men.

**RACIALLY DISPARATE TREAMENT**

122.     Upon information and belief, Plaintiffs allege that Nikki Sterling was being directed by

March 9, 2016 on the premise that Sterling craves opportunities to inflict irreparable harm upon

Caucasian males.

123.    It is axiomatic that the Court in People v Morisseau praised the African American

defendants in light of her outrageously racist behavior toward Caucasian males, whereas the

Court in People v. "John Doe" vilified a Caucasian male defendant who had been "framed" by

African American court employees who have public reputations of being racist bigots toward

Caucasian males.

124.    It is axiomatic that the Court in People v Charlene Morisseau 2006 gave Charlene a get

out of jail free card because of her race, but she continued to liver her racist anti-Caucasian and

anti-establishment life even through today, People v Charlene Morisseau See 2019 NY Slip Op

51441.

125.    It is axiomatic that Court Officer Nikki Sterling and Kim Gooden are the institutional

mirror image of Charlene Morisseau's racist African American persona in that they both are

fixated on employing the Race Card against their Caucasian victims.

126.    The Court in People v Morisseau 2006 NY Slip Op 51826(U) [13 Misc 3d 1214(A)]

Decided on August 25, 2006 also noted that Court employees have a statutory and positive duty

to respect civilians visiting the courts, "The clerk's in the court system are the backbone of the

court system. However, the court and its employees must also treat the people who come before it

with respect. While it is easy to understand 'short fuses' in an overworked and overburdened

court system, we must all strive to maintain our temperament, which is no easy feat."

127.    Upon information and belief, Plaintiffs allege that the events and conspiracy that stated

on or about March 9, 2016, is a racially laced mixed motives conspiracy in violation of 42 U.S.C

1983, 1981, 1985(2)(3) and 1986 in addition to violating New York State and New York City

anti-discrimination and retaliation laws.

128.    In People v Morisseau 2006 NY Slip Op 51826(U) [13 Misc 3d 1214(A)] Decided on

August 25, 2006 held, an African American woman went ballistic in the clerk's office ranting

racial abuse at Caucasian judicial employees and the court security responded by simply

attempting to calm her down, and the Appellate Court bent over backwards with political

correctness,

Ms. Morisseau claims that when she "peacefully" questioned the clerk's refusal to hand

over the documents, she was placed under arrest by court personnel and charged with

obstructing governmental administration and disorderly conduct…It must also be noted

that the defendant was a plaintiff in a civil action in federal court against the Second

Department of the Appellate Division.

129.     The People v Morisseau Court also held, "The Chief Clerk claims that Ms. Morisseau

began to scream highly offensive, derogatory names, specifically "cracker" and 'white nigger.'"

130.     The People v Morisseau Court held, "This court can only hope that Ms. Morisseau will

use her unbridled passion for good works and worthy causes and not remain bogged down in the

quagmire of seeing every injustice as racially motivated."

131.     Nikki Sterling has a history of filing false complaints with the intent to harm innocent

persons, Per the Brooklyn Eagle, "In October 2012, Nikki Sterling, an African-American female,

filed a Title VII lawsuit against the New York State Office of Court Administration (OCA), the

New York State Unified Court System, the New York State Court Officers Association

(NYSCOA) and many persons in their individual capacity."

132.     In her Federal complaint, Sterling racially ranted against Caucasians," In her lawsuit,

Sterling claims that she was "denied light duty by the Civil Court Chief Clerk though white and

Latino officers [had] been granted light duty." Furthermore, Sterling alleged "there are few

African-American supervisors very few African American supervisors" and disparate promotion

opportunities offered to African-American court officers as compared to their Caucasian

counterparts."

133.     The Brooklyn Eagle uncovered Nikki Sterling's lawsuit was nothing more than a thug

playing the race card against not only her employer but the judiciary that is the personification of

civilization,

"I was taken aback when presented with the lawsuit," Quirk told the Eagle.  "Many

people file these Title VII discrimination lawsuits as an extortion tactic. I know that we

did nothing wrong, so I called on Mr. Baron to help us fight the case," continued Quirk.

134.     Due to Sterling's racist mentality, the District Court attempted to provide her direction

not to file her blackmail ragging discrimination complaint,

"Hon. Peck said to Sterling in effort to assist her.  "In addition to suing Mr. Quirk as an

individual, Ms. Sterling sued NYSCOA, the court officers' union. The union is not Ms.

Sterling's employer," continued Baron.

135.      Nikki Sterling's pay history demonstrates not only does she has a typical aggression of

people of her ilk, but her thuggish behavior required sanctions that demonstrated a material

sanction in 2009 reduction salary from $65,764.00 to $28,675.00 in 2009 which indicates serious

misconduct,

| | Employer | Position | Total Compensatio |
|---|---|---|---|
| Nikki Sterling / New York / 2008 / ☐ Add to Compare / See Details › | Office of Court Administration | NYS Co / Full Time | $65,273 |
| Nikki Sterling / New York / 2009 / ☐ Add to Compare / See Details › | NYC Civil Court | NYS Co / Full Time | $65,754 |
| Nikki Sterling / New York / 2010 / ☐ Add to Compare / See Details › | NYC Civil Court | NYS Co / Full Time | $28,675 |
| Nikki Sterling / New York / 2011 / ☐ Add to Compare / See Details › | NYC Civil Court | NYS Co / Full Time | $37,939 |
| Nikki Sterling / New York / 2012 / ☐ Add to Compare / See Details › | NYC Civil Court | NYS Co / Full Time | $55,463 |
| Nikki Sterling / New York / 2013 / ☐ Add to Compare / See Details › | NYC Civil Court | NYS Co / Full Time | $63,851 |

136.      Nikki Sterling received significant pay raises immediately after the 2016 arrests and a

fourteen thousand dollar raise immediately after the 2017 trial that resulted in RUDY

ROSENBERG's conviction,

| Year | Employer | Name | Title | Annual Wages |
|------|----------|------|-------|--------------|
| 2018 | New York City Civil Court | Sterling Nikki | Nys Co | $97,359.01 |
| 2017 | New York City Civil Court | Sterling Nikki | Nys Co | $83,204.34 |
| 2018 | New York City Civil Court | Sterling Nikki | | $80,571.42 |
| 2017 | New York City Civil Court | Sterling Nikki | | $78,936.29 |

137.    Upon information and belief, Plaintiffs allege that Nikki Sterling and Kim Gooden, who both have public reputations as being anti-Caucasian male race baiters, received substantial promotions after the March 9, 2017 arrests.

138.    The 2017 trial established that both Gooden and Sterling committed at least five separate and material acts of perjury during that trial which went unpunished by the employer and DANY.

139.    The only adverse action the trial judge took was to summarily dismiss all charges that Sterling had filed on March 9, 2016, because all the DANY witnesses committed perjury.

**CHIEF MAGLIANO & JOHN ALLEN'S RETALIATORY THREATS**

140.    Plaintiff RUDY ROSENBERG had telephone conversations with Chief Michael Magliano in February 2016 relating to ongoing discriminatory and retaliatory stalk and harassment by Court Security employees at 111 Center Street from 2015 through 2016 period.

141.    During one of the calls with Magliano, Magliano threatened RUDY ROSENBERG and the other plaintiffs to be silent on these complained about issues or he would cause false charges and prosecutions to be commenced against Plaintiffs.

142.    Chief Jewel McCollin's office, in 2016, further communicated to Plaintiffs false allegations accusing Plaintiffs as being anti-Black with specific reference to McCollin's conversations with Serena Springle and Alia Razzaq as the source of McCollin's defamatory and inflammatory statements.

143.    Thereafter on March 9, 2016, plaintiffs RUDY ROSENBERG and JACQUELINE ROSENBERG were unlawfully arrested, assaulted, threatened, imprisoned and Blackmailed,

absent probable cause, by defendant Court Security at the direction of both the executive of Court

Case 1:20-cv-04012-CM   Document 2   Filed 05/22/20   Page 27 of 116

Security, Clerk's Office administration and the Manhattan District Attorney's Office.

144.      Thereafter, John Allen engaged in direct and indirect threatening behavior directed at

Plaintiffs by his  personal involvement in aiding and abetting the March 9, 2016 forward,

inclusive of his direct threats to Plaintiffs during the April 4, 2016 telephone calls at which time

he stated that he directed his Court Security officers to engage in maximum oppressive tactics

against Plaintiffs.

## JUDICAL PERVASIVE BAD ACTS

145.      RUDY ROSENBERG also discussed with Magliano about the NY Courts IG

investigation into Plaintiffs pleadings being misappropriated by the Housing Court Clerk's Office

employees and related discriminatory harassment by that administration such as Serena Springle

and Peter Catella's assault upon RUDY ROSENBERG during a meeting with both him and

Serena Springle on November 25th 2015.

146.      Plaintiffs had previously filed discrimination and retaliation complaints against Serena

Springle and Alia Razzaq with Carol Alt and the Inspector General of the Court in 2015 and

2016.

147.      In 2015 and early 2016, Plaintiffs had previously filed administrative complaints against

Kim Gooden and Peter Catella accusing these defendants of racism toward Plaintiffs with Court

Deputy Clerk Serena Springle and other NY Court officials.

148.      Plaintiffs had filed complaints with the New York Court Inspector General regarding the

ongoing racist and retaliatory harassment by both the Court Security and the Clerk's Office

defendants that culminated in an investigation regarding Plaintiffs' January 2016 complaint about

misappropriated pleadings Plaintiffs filed on or about December 18, 2016.

149.      Serena Springle, African American, had made several racially disparaging comments

directed at RUDY ROSENBERG, who is Caucasian, and his relationship with JACQUELINE

ROSENBERG and ELTHA JORDAN who are West Indian during the period of Spring 2015

through March 2016.

150.      Kim Gooden, African American, had made several racially disparaging comments

directed at RUDY ROSENBERG, who is Caucasian, and his relationship with JACQUELINE

through March 2016.

# D.A. DRIVEN CONSPIRACY

151.     Upon information and belief, Plaintiffs allege that the Manhattan District Attorney's

Office directed all events, tactics and strategy, employed by the Court Security, Court Clerk's

Office, and the NYPD administration in addition to their agents, leading up to and after the March

9, 2016 arrest, "[C]onspiracies are by their very nature secretive operations, and may have to be

proven by circumstantial, rather than direct, evidence." Pangburn, 200 F.3d at 72

152.     Plaintiffs further allege that Defendants had a prior private agreement to engage in

retaliatory arrest and prosecution of Plaintiffs and this allegation is supported by the December

2017 trial judgment that Defendants lacked probable cause for the arrest,

> In Reichle v. Howards, 132 S. Ct. 2088 (2012), the plaintiff claimed that he was arrested "in retaliation for
>
> his political speech." Id. At 2091. The Reichle Court noted, without deciding, the question of whether a claim
>
> for retaliatory arrest requires a showing that there was a lack of probable cause. See id. at 2094-96.

153.     The District Attorney, and his executive managers, is an official city policymaker who

failed in his managerial role to adequately train and supervise his employees regarding pre-arrest

investigations and legal guidance to NYPD in addition to the Court Security and Clerk's Office

administrations.

154.     The Court in Garcia v. City of New York, No. 06 Civ. 746 held, "[w]hen prosecuting a

criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity,

represents the State not the county." Baez v. Hennessy, 853 F.2d 73, 77 (2d Cir. 1988).

155.     The Garcia Court also held, that the district attorney is an official policymaker,

> In contrast, where a district attorney acts as the manager in the administration of the district attorney's office,
>
> the district attorney is considered an official municipal policymaker. Ying Jing Gan v. City of New York, 996
>
> F.2d 522, 536 (2d Cir. 1993). See also Walker, 974 F.2d at 301 (decision not to supervise or train assistant
>
> district attorneys on Brady and perjury issues, resulting in defendant's wrongful conviction and imprisonment
>
> for nineteen years, is managerial decision which can lead to city liability); Gentile v. County of Suffolk, 926
>
> F.2d 142, 153 n. 5 (2d Cir. 1991) (distinguishing liability due to County's long history of negligent
>
> disciplinary practices regarding law enforcement personnel, which gave rise to defendants' conduct in

promoting malicious prosecution of plaintiffs, from immunity for specific decision of the District Attorney to prosecute); Johnson v. Kings County District Attorney's Office, 308 A.D.2d 278, 294 (N.Y.App. Div. 2003) (holding that plaintiff wrongly held for twenty-four days as a fugitive adequately alleged constitutional harm caused by a failure of the District Attorney's office to train assistant district attorneys and other personnel with regard to proper procedures for determining whether detainees pursuant to fugitive warrants are in fact persons sought by out-of-state authorities).

156.     The Garcia Court also held, "Under the Leatherman rule, Plaintiff's bare allegations that the DA was a policymaker and that the DA's Office failed to adequately train and supervise its employees regarding buy and bust procedures are sufficient, albeit minimally so, to withstand Municipal Defendants' Rule 12(b)(6) motion."

157.     Upon information and belief, Plaintiffs allege that the D.A.'s scheme included using the 2016 and 2017 arrests in addition to the 2016 Bench Warrant to obtain unlawful pre-trial detention, deportation as an immigrant, unlawful eviction in addition to other Bad Acts directed at Plaintiffs.

158.     This law enforcement scheme was to maximize irreparable injury by minimizing Plaintiff's constitutional rights and accessible resources, thereby completely destabilizing Plaintiffs to a point of being able to challenge any and all constitutional violations by Defendants.

159.     The first and foremost duty of a prosecutor is to pursue justice. Justice was not done. In the instant matter, the entirety of the Defendants investigation and process of bringing criminal charges against Plaintiffs was not simply erroneous, but outright wrong.

160.     Specifically, the Plaintiffs allege that the Defendants (collectively and individually) negligently, wantonly, recklessly, intentionally and knowingly sought to and did wrongfully deprive Plaintiffs of their State and Federal Constitutional rights, pursuant to the above-mentioned statutes and causes of action by committing acts under color of law and depriving the Plaintiffs of rights secured by the United States Constitution, Federal law, New York State Constitution and laws of the State of New York.

161.     Defendants also illegally arrested, searched and detained employing excessive force demonstrating reckless disregard for Plaintiffs' safety on March 9, 2016 in addition to unlawfully misappropriating Plaintiffs' property that included a video camera related equipment, cash, confidential records and other items during the courthouse and precinct detention.

162.     Plaintiffs allege that the Defendants (collectively and individually) abused the power and rights given to Defendants (collectively and individually) in their capacities as public servants and members of the New York County District Attorney's Office, Court Security and the NYPD.

163.     Upon information and belief, the Defendants prefer to violate the rights of individuals who are among the most vulnerable in society: individuals who are foreign born or who are the children of immigrants because of their unfamiliarity with American discrimination and constitutional laws and their lack of experience complaining about government officials.

164.     Each of the Defendants on prior occasions has violated the rights of other individuals in a manner similar to the one alleged herein.

165.     At all relevant times, the municipal defendant staffed its DANY, NYPD and Court Security with officers and named NYPD superiors and subordinated were actually or otherwise constructively unsupervised, undisciplined, inadequately trained and wholly unsuited to perform as police officers and supervisors.

166.     At all relevant times, the Defendants knew, or should have known, that police officers, their agents and Confidential Informants exhibited out of control, violent, aggressive and immoral behavior toward members of the public.

167.     At all relevant times, the municipal Defendant hired or retained employees, including the individual Defendants, who abused their authority.

168.     At all relevant times, the municipal Defendant hired or retained employees, including the individual Defendants, who retaliated against employees for, among other things, exercising their constitutional rights to petition for redress, to petition for redress, for accessing the courts and for speaking out about matters of public concern.

169.     At all relevant times, the municipal Defendant hired or retained employees, including the individual Defendants, who intentionally engaged in differential treatment of individuals that was irrational, wholly arbitrary and in pursuit of personal or political goals.

170.     At all relevant times, the municipal Defendant knew, or should have known, that employees were abusing their authority to carry out personal or political vendettas against employees and members of the public in addition to bilking the city out of overtime being charged to said constitutional violations.

171.      At all relevant times, the Defendants knew, or should have known, that failing or refusing to take corrective measures against employees, including the individual Defendants, who retaliated against individuals, acted arbitrarily and in furtherance of personal or political vendettas, or who were undisciplined, inadequately trained and unsuited to engage the general public would result in repeated incidents of violations of individual rights protected by the constitution, statutory and common law.

172.      At all relevant times, the Defendants knew, or should have known that the Manhattan District Attorney's Office has both positive duty of a constitutional magnitude to receive complaints, investigate and intervene based upon the merits of the Plaintiffs' complaints.

173.      The D.A. also has a positive duty to permit Plaintiffs access, as any other victims of crime, to receive services by this administration.

174.      Cyrus Vance's personal direction to his subordinates and the NYPD in this case to block Plaintiffs' access as victims from receiving equal protection and service from both the NYPD and the D.A.'s administrations amounts to a policy, custom and practice that carried over from 2016 through present day.

175.      Accordingly, Defendants City of New York, Cyrus R. Vance Jr. and his subordinates in addition to the Court Security, Court Clerk's Office and NYPD named (collectively and individually) are liable to the Plaintiffs for abuse of process and all other related constitutional violations and torts raised herein by directing, condoning and encouraging such civil rights violations and for maliciously failing to supervise, train, investigate and punish the actions of the individual Defendants.

176.      As a result of the Defendants' actions (collectively and individually), Plaintiffs suffered violations of their constitutionally protected rights; physical and emotional pain and suffering; significant economic injury and harm; and were caused to undergo additional and significant medical treatment for emotional injuries that they sustained at the hands of the Defendants.

177.      At all relevant times, the Defendants failed to adopt policies or procedures that would have prevented the violations of individual rights alleged herein, including but not limited to additional training and supervision.

178.        On March 9, 2016, about 1:45 pm, Defendants planned and executed a staged racially

driven confrontation by employing Nikki Sterling (Court Security Officer), Kim Gooden, Tom

Grey (Housing Court Clerk's Office Senior Manager) and Roberto Irizarry (Defendants' civilian

agent) at which time Roberto Irizarry of the law firm BELKIN, BURDEN & GOLDMAN, LLP

made anti-Caucasian communications directed at RUDY ROSENBERG and by implication

JACQUELINE ROSENBERG.

179.        Roberto Irizarry then sought out a physical confrontation with RUDY ROSENBERG by

wrenching a stapler from RUDY ROSENBERG's hand while using profanity.

180.        Roberto Irizarry then started yelling, playing the race card, falsely accusing RUDY

ROSENBERG of using racially laced profanity at Roberto Irizarry which was a signal for Tom

Grey and Kim Gooden to initiate oral assaults upon Plaintiffs' by falsely accusing them of biased

and disorderly behavior.

181.        Court Security Officer Nikki Sterling also came into the Clerk's Office and carried on

conversations with both Tom Grey and Kim Gooden.

182.        Plaintiffs completed filing their motions for their 2:30 pm Housing Court hearing and

proceeded to the second-floor elevator bank.

183.        On March 9, 2016 at about 1:40 pm, the employee defendants discriminatorily and

retaliatorily attacked Plaintiffs with outrageous and wanton malice; attacked Plaintiffs, threatened

Plaintiffs, assaulted, humiliated, battered, stalked, profiled, unlawfully searched and incarcerated

Plaintiffs, causing physical, emotional, legal and economic injuries, resulting in pain and

suffering and deprivation of State and Federal Constitutional Rights to be free from unlawful

search and seizure and denial of civil rights, and for redress under 42 U.S.C. 1981, 1983,

1985(2)(3) and 1986 et. seq, for deprivation of Constitutional and Civil Rights, in addition to

other violations of law.

184.        Unbeknownst to Plaintiffs, Tom Grey secretly stalked them from the Clerk's Office to the

elevator bank area at which time Grey leered at Plaintiffs and then approached RUDY

ROSENBERG.

185.     RUDY ROSENBERG asked Grey a question at which time Grey imitated an unprovoked oral and physical assault upon RUDY ROSENBERG by profanity and fist hits to RUDY ROSENBERG's face, head and upper torso causing RUDY ROSENBERG serious soft tissue, psychological and other injury that persisted for months in some cases and years in others.

186.     While Grey was assaulting RUDY ROSENBERG, Court Security Officer Nikki Sterling had arrived from the Clerk's Office and witnessed Grey's assault upon RUDY ROSENBERG.

187.     Instead of intervening to protect RUDY ROSENBERG, Sterling grabbed RUDY ROSENBERG in a headlock that severely obstructed RUDY ROSENBERG's circulation and airflow causing RUDY ROSENBERG to almost faint and fear for his life which was also a fear instilled in JACQUELINE ROSENBERG as she helplessly watched the violence unfold as RUDY ROSENBERG gasped and cried for pain that persisted for subsequent months.

188.     As Nikki Sterling had grabbed RUDY ROSENBERG from behind and pulled him into the wall, Tom Grey continued to hurl profanity and fist blows at RUDY ROSENBERG, who was now unable to block the blows as RUDY ROSENBERG gasped and cried for pain that persisted for subsequent months.

189.     At about 2:15 pm, more than ten Court Officers arrived, including one officer believed to be Daniel Magrino, dragged RUDY ROSENBERG, in handcuffs behind his back, and they hung Plaintiff over the second-floor foyer railing while threatening to drop RUDY ROSENBERG.

190.     At all times, all named Court Security supervisors were involved either physically or remotely directing the events causing the constitutional violations.

191.     At all times, Defendants deliberately handcuffed Plaintiffs to cause the metal to cut into their flesh so as to materially cause pain, suffering and circulation obstruction.

192.     These Court Security Officers hung RUDY ROSENBERG over the second-floor railing motioning as if Plaintiff would be released by them and dropped to the floor which was about 20 feet, causing Plaintiff and JACQUELINE ROSENBERG to fear for his life. See Raefski v State of New York, UID No. 2004-016-040 (Ct Cl, Marin, J., July 21, 2004)

193.     At that point in time, Kim Gooden arrived and made a series of false statements to the security staff that she knew were false prior to being made by her.

194.       Gooden's false statements included her allegations that "him and her" always come to the Clerk's Office to "disrespect us". Gooden continued her false statements by alleging that that "both of them came to my counter together" to file a motion "together" and further accused RUDY ROSENBERG of "going off on Roberto" using profanity.

195.       Kim Gooden and Nikki Sterling then falsely reported and charged that Plaintiff RUDY ROSENBERG thereafter "went off" on Gooden stating that RUDY ROSENBERG cursed her, "I was a moron and I need to get an 'fucking' education" in addition to other racially bigoted false allegations directed at JACQUELINE ROSENBERG, ELTHA JORDAN and RUDY ROSENBERG.

196.       Kim Gooden's statements factually contradict Nikki Sterling's March 9, 2016 accusatory affidavit.

197.       These Court Security staff, including Court Officers and Court Clerk Office staff knowingly engaged in Bad Acts that amounted to torture of Plaintiffs.

198.       Defendant Court Security officers thereafter arrested JACQUELINE ROSENBERG only because she was a witness supporting RUDY ROSENBERG's account of the events.

199.       An African American Male Court Security Officer, approximately 6'1", grabbed Jacqueline Rosenberg who is 5'4" in a headlock placing compression on her neck to seriously interfere with her breathing and circulation causing JACQUELINE ROSENBERG to gasp and cry for extreme pain.

200.       Thereafter, Nikki Sterling forced Jacqueline Rosenberg against the hard-stone wall in the women's bathroom causing neck, back and head soft tissue injuries to JACQUELINE ROSENBERG in addition to wrist fracture that were determined that evening at a NYC hospital.

**COURT SECURITY DETENTION**

201.       Defendant court security then physically engaged in excessive force on both RUDY ROSENBERG and JACQUELINE ROSENBERG by orally assaulting them with threats of bodily harm in addition to deliberately placing the handcuffs on each of them to cause severe pain and discomfort including materially cutting into their flesh to cause serious circulatory problems.

202.       During the March 9, 2016 detention, defendant Court Security officers employed threats and excessive force against both JACQUELINE ROSENBERG and RUDY ROSENBERG that

included excessive wrenching of their hands, wrist, arms, neck and torso while these officers dragged Plaintiffs from the arrest site through the various hallways and into the detention rooms.

203.    Defendant officers further unlawfully denied water, the statutory call, Miranda rights and lavatory use.

204.    Defendant security officers then physically dragged Plaintiffs down the stairs and down the hallways to the security detention area,

205.    Additionally, Defendants deliberately threatened Plaintiffs with further unlawful acts such as further filing of false and excessive criminal charges if Plaintiffs did not refrain from asserting legal rights such as mentioning their intent to file legal complaints against these Court Security staff.

206.    These Court Security and staff unlawfully denied both RUDY ROSENBERG and JACQUELINE ROSENBERG their right to use the washroom in a selective and discriminatory fashion; refused to allow Plaintiffs to have more than one cup of water for RUDY ROSENBERG and no water for JACQUELINE ROSENBERG in addition to denying their right to seek and obtain legal representation, amongst other violations and Bad Acts, causing Plaintiffs severe pain and suffering.

207.    During the March 9, 2016 detention, the supervisor defendants communicated to Plaintiffs that this false arrest was "payback" for the Plaintiff's complaints against court officials and staff.

208.    On March 9, 2016, while JACQUELINE ROSENBERG was in detention, she was further threatened with additional false charges when she raised the issue with Sgt. Loeffler and Captain Whitehead that this tall African American security guard, "John Doe "Badge # 6346 physically assaulted her when the security initially appeared at the second floor, thereby causing her severe pain and suffering both physically and psychologically.

209.    Both supervisors retaliated against JACQUELINE ROSENBERG's complaints by further threatening both JACQUELINE ROSENBERG and RUDY ROSENBERG to lay further false charges "if she does not keep her mouth shut".

210.    As further evidence of Defendants' directed ongoing harm and violations, John Allen directed, during the initial hearing before Judge Tamiko Amaker on April 4, 2016, approximately

Manhattan and leered and harassed Plaintiffs as then waited in the public section of Judge

Amaker's courtroom.

211.      Thereafter, wrongful harassment continued on or about April 4, 2016, when a court

officer, in the Criminal Court, wrongfully orally assaulted Plaintiff RUDY ROSENBERG by

yelling and threatening physical harm at Plaintiff RUDY ROSENBERG about having his hands

in his pocket, and told Plaintiff to "wait and see what happens to you" in a threatening and

menacing way.

212.      Loeffler and Whitehead made threats to JACQUELINE ROSENBERG not to make any

complaints unless she was looking for Loeffler to increase his charges in retaliation of her

expressed complaints.

213.      Loeffler had extorted JACQUELINE ROSENBERG's continued silence as to her

complaints during that detention.

214.      Plaintiff RUDY ROSENBERG was told by one of the Sergeants during detention that

RUDY ROSENBERG would only receive a single disorderly conduct desk summons for "not

listening to lawful orders."

215.      After RUDY ROSENBERG requested the right to file complaints against Thomas Grey

was refused by Defendants.

216.      Thereafter RUDY ROSENBERG asserted that he would sue the Court Security, Lt.

217.      Dennis Calascibetta changed his processing a desk summons to processing RUDY

ROSENBERG to send to Central Processing.

218.      Court Security refused to interview or process any of Plaintiffs' complaints against Court

staff on March 9, 2016.

219.      Court Security officials such as Lieutenants Dennis Calascibetta and Kalawski also

retaliated against Plaintiffs RUDY ROSENBERG and JACQUELINE ROSENBERG in the same

manner that Sgt. Loeffler had threatened Plaintiff Jacqueline Rosenberg.

220.      Initially Lieutenants Dennis Calascibetta and Kalawski told Plaintiffs that RUDY

ROSENBERG was to be issued a "desk summons", but Lieutenants Dennis Calascibetta and

Kalawski thereafter engaged in extortion to force RUDY ROSENBERG's confession in return to
Case 1:20-cv-04012-CM   Document 2   Filed 05/22/20   Page 37 of 116
being released without further charges being "trumped up".

221.     There was a single exception later that evening where Lieutenants Dennis Calascibetta and Kalawski in addition to other officer dragged RUDY ROSENBERG to the lavatory and ordered RUDY ROSENBERG to use the facility while handcuffed and these officers in the stall or looking into the stall.

222.     RUDY ROSENBERG ultimately refused to use the lavatory due to the blatant humiliating misconduct that these officers were putting him through in the evening of March 9, 2016.

223.     These officers dragged RUDY ROSENBERG back to a court security administrative office where they continued to pry RUDY ROSENBERG for a confession.

224.     Nikki Sterling throughout the events of March 9 2016 repeatedly made racial anti-Caucasian slurs against and to RUDY ROSENBERG referencing at times, "People v Charlene Morisseau, now we get payback!"

**FIFTH PRECINCT**

225.     On March 9, 2016 around 8:30 pm, Nikki Sterling and other officers transported Rudy Rosenberg to the NYPD Chinatown precinct, where NYPD only vouchered RUDY ROSENBERG's personal effects and permitted Nikki Sterling and her fellow court security cohorts to run their own show in the holding cell area with the help of a single precinct employee.

226.     During the transport to and from the 5th Precinct, Nikki Sterling engaged in projecting racialized profanity and threats at RUDY ROSENBERG while she encouraged the other officers to join in on the abuse.

227.     Nikki Sterling employed excessive force during the transports by hitting RUDY ROSENBERG with her fists and elbows about the head, torso and legs in an effort to provoke a physical and verbal response from Plaintiff.

228.     During the 5th Precinct detention, an unidentified officer actively discussed and drafted Sterling's false charges against RUDY ROSENBERG as Sterling even admitted to this officers that "the charges are entirely made up" by Sterling per the conversations that RUDY ROSENBERG witnessed.

229.     During the 5th Precinct detention, Nikki Sterling and her male African American partner both made racist statements to RUDY ROSENBERG that they hate "white" men and that they were "putting out the word" to "our peoples" in the jail to make sure that RUDY ROSENBERG be placed with the most dangerous anti-white inmates at Central Processing.

230.     All defendants involved with the 5th Precinct detention engaged in verbal and physical abuse by and not limited to wrenching RUDY ROSENBERG's arms, wrists and hands in addition to excessively restricting handcuffs that cut into RUDY ROSENBERG's flesh and obstructed circulation thereby causing Plaintiff severe pain and suffering for weeks.

231.     All defendants involved with the 5th Precinct detention engaged in coercive interrogation, absent Miranda Warning and statutory call, in an attempt to obtain unlawful incriminating statements from RUDY ROSENBERG through the use of torture styled tactics by unlawfully denial of water and lavatory access.

232.     During the March 9 2016 detention at the 5th Precinct, Nikki Sterling and her male partner both threatened RUDY ROSENBERG that they were going to make sure that "our peoples" would "snuff" RUDY ROSENBERG "tonight, just like out of a snuff flick".

233.     Over the next two hours, these officers continued to press RUDY ROSENBERG into a confession and incriminating statements by verbally threatening and harassing RUDY ROSENBERG.

234.     Defendants also continued to refuse RUDY ROSENBERG lavatory use, water and the statutory call in addition to Miranda rights.

235.     Nikki Sterling and the precinct officer threatened RUDY ROSENBERG to give them his password to his mobile telephone and when Plaintiff refused, they threw the mobile telephone on the ground in retaliation, thereby irreparably damaging RUDY ROSENBERG's property.

236.     Furthermore, RUDY ROSENBERG was racially accosted, anti-Caucasian male profane diatribe, and threatened by Sterling, the unknown precinct officer and a Sgt. Kim during the detention at the 5th Precinct in an effort to provoke a negative reaction from Plaintiff.

**JUDICIAL EVICTION**

237.     On information and belief, Plaintiffs allege that the D.A. defendants had a prior private agreement with the other defendants to stage the March 9, 2016 events and arrest to cause

Plaintiffs' default in the 2016 Housing Court eviction proceeding and again during a 2017
Case 1:20-cv-04012-CM   Document 2   Filed 05/22/20   Page 39 of 116
eviction proceeding.

238.        Defendants communicated to Plaintiffs on March 9, 2016 that RUDY ROSENBERG was

not permitted to enter the courthouse at 111 Center Street until further notice by Defendants.

239.        Upon the March 9, 2016 arrest, the Court Security officers, involved with the staged

arrest, immediately proceeded to the courtroom where Plaintiffs' hearing was scheduled and then

deliberately tainted the hearing record by yelling out that Plaintiffs were arrested for unlawful

behavior.

240.        The Court Security thereafter threatened RUDY ROSENBERG not to return to the

courthouse until further notice or he would be arrested and prosecuted on sight.

241.        Upon information and belief, Plaintiffs allege that Defendants, including the Court

Security and Court Clerk's Office administrations, conspired to conceal from Plaintiffs the next

court date of April 4, 2016 at which time they convened a secret hearing to find Plaintiffs in

default that resulted in the issuance of a warrant of eviction.

242.        Upon information and belief, Defendants had ex-parte conversations with all judges

involved in all court actions involving Plaintiffs from 2015 forward.


## MARCH 11, 2016 SECURITY REPORTS

243.        Upon information and belief, Plaintiffs allege that Court Officer Nikki Sterling's March

9, 2016 charges and the related events were part of a prior private agreement between all of the

defendants.

244.        Upon information and belief, Plaintiffs further allege that Alia Razzaq, Serena Springle,

Nikki Sterling and Kim Gooden opportunistically employed this official direction as a license to

wreak racialized havoc upon Plaintiffs as was the case in People v Charlene Morisseau.

245.        Court Officer Nikki Sterling filed materially contradictory NYS Office of Court

Administration required "Unusual Incident" reports against both RUDY ROSENBERG and

JACQUELINE ROSENBERG on March 11, 2016.

DETAILS: (Include pertinent information regarding nature of unusual occurrence. If arrest, include Arrest No., Pct., Charges, Complainant's Name and Address, Court, Judge, Disposition)

At T/P/O, reporting officer heard a loud disturbance in the Clerk's Office. This officer responded to find the subject yelling and cursing at a member of the public. The subject then proceeded to yell and curse at a court clerk (Witness #1). He called her a "Fucking moron", told her to "Get a fucking education", and that "If she didn't have this fucking job, that she would be on welfare". The officer observed the subject leave the Clerk's office as another clerk (Witness #2) attempted to assist the subject. The subject then accused that clerk of poking his finger in the subjects face. The subject then started poking his finger in the clerk's face. As the situation escalated, the subject made a motion to strike the clerk. At that point the officer grabbed the arm of the subject and pushed him against the wall, placing him under arrest. The subject attempted to wriggle free as the officer was trying to effect the arrest, while cursing and yelling at the officer to "Get the fuck off of me". Subject was charged with 1 count of Obstructing Governmental Admin. In the 2nd degree (PL 195.05), 1 count of Resisting Arrest (PL 205.30), 1 count of Disorderly Conduct (PL 240.20 Sub. 2) 1 count of Disorderly Conduct (PL 240.20 Sub. 3). Subject was asked if he needed medical attention and he replied that he did not. Subject.....Continue to next page

246.     The above incident report materially contradicts the facts set out in the March 9 2016, misdemeanor complaint in that the March 11 ,2016 report averred that Sterling entered the Clerk's Office witnessing a loud commotion and RUDY ROSENBERG yelling at a member of the public, then proceeding to yell profanity at a court clerk and then leave the Clerk's Office and then RUDY ROSENBERG accused another clerk of pointing his finger into RUDY ROSENBERG's face.

247.     Whereas the March 9, 2016 charge immediately below, has Sterling averring that RUDY ROSENBERG interfered with a "police officer and a peace officer from performing an official function by intimidation…"

248.     The March 9, 2016 charging document states that Sterling only witnessed RUDY ROSENBERG yelling profanity at a court clerk when she entered the Clerk's Office at 2 pm on March 9th with no mention of interfering with police officer in doing their jobs and no mention of yelling at a member of the public in addition to no mention of the court clerk being physically assaultive toward RUDY ROSENBERG as later mentioned in the March 11,2016 report to Sterling's managers,

On or about March 9, 2016 at about 2:00 P.M., inside 111 Centre Street in the County of New York the defendant intentionally prevented and attempted to prevent a public servant from performing an official function by intimidation, physical force and interference and by means of an independently unlawful act; the defendant intentionally attempted to prevent a police officer and peace officer from effecting an authorized arrest of himself and another person; the defendant, with intent to cause public inconvenience, annoyance and alarm and recklessly creating a risk thereof, made unreasonable noise; the defendant, with intent to cause public inconvenience, annoyance and alarm and recklessly creating a risk thereof, used abusive and obscene language and made an obscene gesture in a public place.

*The factual basis for these charges are as follows:*

I observed the defendant at the above location, which is the New York City Civil Courthouse, yelling at a loud volume and using profanity to a court clerk, yelling loudly to her in substance: "You are a fucking moron. Go get a fucking education. If you did not have this job you would probably be on welfare." I then observed the defendant yell loudly at another court clerk and poke his finger close to the court clerk's face. The defendant's conduct caused approximately twelve people in the area stop what they were doing and

249.　　Defendants proceeded to charge and arraign both RUDY ROSENBERG and JACQUELINE ROSENBERG even though Nikki Sterling gave multiple conflicting stories to everyone she spoke with and reported to from 2 pm on March 9, 2016 forward.

250.　　The factual and undisputed trial record demonstrates that Defendants proceeded to build their conspiracy and cover up their errors with mounting constitutional violations directed at Plaintiffs.

251.　　Nikki Sterling's March 9, 2016 complaint made specific allegations as follows:

252.　　Intentionally prevented and attempted to prevent a Police officer and Peace Officer from performing an official function by intimidation, physical force and interference and by means of an independently unlawful act;

253.　　Intentionally attempted to prevent a police officer and peace officer from effecting an authorized arrest of himself and another person;

254.　　The defendant, with the intent to cause public inconvenience, annoyance and alarm and recklessly creating risk thereof, made unreasonable noise;

255.　　The defendant, with the intent to cause public inconvenience, annoyance and alarm and recklessly creating risk thereof, use abusive and obscene language and made an obscene gesture in a public place.

## MARCH 9TH COMPLAINT INTERNAL INCONSISTENCIES

256.　　Defendant's use of profanity, using "Fucking", "yelling in a loud volume" at an unidentified court clerk;

257.	<u>NOTE: Sterling's one-sided reporting failed to provide any detail as to the court clerk's</u>

<u>side of the incident and their personal communications and actions contributing or reacting to the</u>

<u>conflict.</u>

258.	Defendant thereafter yelled, in a loud volume, and pointed his finger "close to" the face

of another unidentified court clerk;

259.	Defendant's conduct caused approximately 12 people "in the area", being the Clerk's

Office, to stop what they were doing and "watch the defendant";

260.	NOTE: Sterling failed to explain the reason she failed to record the alleged 12 other

witnesses.

261.	Sterling attempted to place Defendant under arrest, but Defendant "twisted his body away

from" her and stated, "Get the fuck off of me" which interfered with her arrest.

262.	<u>NOTE: Sterling failed to record other witnesses to the event outside of the Clerk's Office</u>

<u>and the alleged arrest event.</u>

263.	<u>NOTE: Sterling failed to provide any narrative supporting her complaint that a police</u>

<u>officer had also been involved in Defendant's arrest.</u>

## MARCH 11TH SECURITY UNUSUAL OCCURRENCE REPORT INCONSISTENCIES

264.	Sterling's March 11, 2016 Unusual Occurrence Report, obtained through FOIL, states the

following facts,

   a)	Sterling heard a loud disturbance in the Clerk's Office, responded and found Defendant

   "yelling and cursing at a member of the public.

   b)	<u>NOTE: Sterling failed to state where she was located prior to her response to the Clerk's</u>

   <u>Office.</u>

   c)	<u>NOTE: Sterling failed to demonstrate what words were allegedly used by Defendant</u>

   <u>upon this member of the public and what was the member of the public's name and</u>

   <u>extent of their personal involvement.</u>

   d)	Defendant proceeded to "yell and curse at a court clerk" calling her a "Fucking moron",

   told her to "Get a fucking education", and that "If she didn't have this fucking job, that

   she would be on welfare".

Sterling's March 11th report states that the second court clerk pursued Defendant out of the Clerk's Office and this clerk attempted to "assist the subject".

f)  NOTE: Sterling failed to provide a nonhearsay basis as to how she determined that the second clerk left the Clerk's Office to allegedly "assist" Defendant and whether this clerk operated within the Court's operating protocol.

g)  Upon the second clerk approaching, outside of the Clerk's Office, instantly complained that the clerk was "poking his finger in Defendant's face".

h)  Defendant "started poking his finger in the clerk's face".

i)  The interaction between the second clerk and Defendant escalated, Defendant made a motion to strike the clerk.

j)  NOTE: Sterling failed to note how the matter escalated from the second clerk's side.

k)  Sterling then decided to grab Defendant's arm and "pushed him against the wall placing him under arrest."

l)  Defendant attempted to wriggle free as the officer was trying to effect the arrest, while cursing and yelling at the officer to "Get the fuck off of me."

**COMPLAINT CONTRADICTED BY UNUSUAL OCCURRENCE REPORT**

265.    The March 9, 2016 Complaint is materially contradicted by Sterling's March 11th Unusual Occurrence Report as follows,

a)  There is no mention in the narratives of either the complaint of March 11, 2016 report of a police officer attempting to effect an arrest.

b)  Even though Sterling averred in her complaint that she "attempted" unsuccessfully to place Defendant under arrest, her March 11, 2016 report states that she in fact had placed "him under arrest".

c)  There is absolutely no reference in either the March 11 ,2016 or March 9 2016 narratives as to an "obscene gesture".

d)  There is no mention in the March 11, 2016 report that Defendant "yelled" or "cursed at" the second clerk, but there is mention that Defendant accused the clerk of harassment.

e)  There is no mention in the narratives of either the complaint of March 11, 2016 report of Defendant interfering with the arrest of another person.

March 9, 2016 Report has her responding from outside of the Clerk's Office.

g) The March 11, 2016 report has the initial event in the Clerk's Office as an interaction between Defendant and a member of the public which is omitted from the complaint.

h) The Complaint has Sterling Witnessing Defendant yelling at a second Clerk in the Clerk's Office, whereas the March 11th report she states that Defendant left the Clerk's Office with the second clerk pursuing him into the elevator bank area.

i) The Complaint has Defendant yelling loud at the second clerk and poking his finger close to the clerk's face, but the March 11, 2016 report has Defendant accusing the second clerk of poking his finger into Defendant's face prior to Defendant poking his finger into the clerk's face.

j) The Complaint has all of the events occurring within the Clerk's Office and that 12 bystanders were disturbed, but these factual allegations were omitted from the March 11, 2016 report.

k) The Complaint has the arrest occurring in the Clerk's Office immediately upon Sterling noticing the 12 people being disturbed, whereas these facts are omitted from the March 11, 2016 report.

l) The Complaint has Defendant plainly speaking during the alleged arrest, "Get the fuck off of me", whereas the March 11, 2016 report has Defendant "yelling at the officer, 'Get the fuck off of me.'"

m) The March 11, 2016, report has Sterling, without notice to Defendant, grabbing his arm and shoving him against the wall thereafter placing him under arrest and these facts are omitted from the Complaint.

**FACTS IMPLICITEDLY ADMITTED BY STERLING**

266.    Sterling's complaint has her decision to arrest based upon the events that she claimed all happened in the Clerk's Office, inclusive of Defendant yelling at the second clerk.

267.    Sterling admitted that Defendant did not use abusive language upon the second clerk.

268.    **Sterling's Misdemeanor Complaint** averred that the arrest took place in the Clerk's Office as she did not state that Defendant had left the Clerk's office.

269.     **Sterling's Unusual Occurrence Report** admits that what took place in the Clerk's Office was not actionable and when Defendant left the Clerk's Office, the events outside of that office were entirely distinct and separate to the prior events.

270.     **Sterling's decision to arrest, per her March 11, 2016 command report**, was entirely based upon her perception that Defendant made a motion and was about "to strike the clerk".

271.     Sterling did not allege that Defendant used any force or attempted to flee before, during or after her alleged arrest with the unidentified police officer.

272.     Sterling at no time on March 9 2016 gave any order to demand that Defendant cease and desist his alleged conduct.

273.     Sterling at no time on March 9, 2016 gave any order or other notification that she was about to arrest or was in the process of an arrest.

274.     Sterling forcibly shoved Defendant against the wall by a surprise attack absent any prior or subsequent lawful order to Defendant.

275.     Sterling admitted that her shoving Defendant against the wall and grabbing his arm was meant to surprise Defendant.

276.     Sterling admitted that she did not believe the incidents within the Clerk's Office required her to speak with Defendant at that point.

277.     Sterling admitted that she did not believe the incidents within the Clerk's Office to be actionable by her pursuant to her functional mandate.

278.     Sterling admitted that she did not find the second clerk following Defendant into the second-floor elevator area to be suspicious especially when she heard Defendant "accused the clerk of pointing his finger in subject's face."

279.     Sterling admitted that when Defendant accused the clerk of harassment, she felt that she should not have intervened between the two parties at that time, but she watched in wait for an escalation.

280.     Sterling admitted that she has not cared to watch the opposing parties as to hold them accountable, but she admits that her entire attention was fixated upon Defendant.

281.     Defendants persist in constitutional violations against Plaintiffs through present date.

**MARCH 13, 2016**

282.     JACQUELINE ROSENBERG and ELTHA JORDAN did business at the Courthouse at

111 Center Street on March 15, 2016 and upon leaving the building noticed that an African

American Court Security Officer stationed near the exit was in fact the officer who excessively

assaulted JACQUELINE ROSENBERG during the March 9, 2016 arrest.

283.     At that time, JACQUELINE ROSENBERG asked the black officer for his badge number

and he gave his badge number # 6346.

284.     The African American guard then recognized JACQUELINE ROSENBERG, that

resulted in both the Black male and then a Hispanic female officers threatening to falsely arrest

both ladies under false allegations that Plaintiffs were harassing these officers.

285.     These officers chased Plaintiffs out of the courthouse approximately 20 feet outside they

engaged in threats of physical abuse.

**2016 BENCH WARRANT FRAUD**

286.     On December 8, 2016, the court reporters named in this complaint include Angela

Brigante, "Iervasi" and "NAOMI SCHWARTZ" who created false courtroom transcripts relating

to the fictitious Bench Warrant of that date.

287.     The Court docket Record of Court Action states that "NAOMI SCHWARTZ" was the

court reporter for Judge Louis Nock in the morning of December 8, 2016, but this hearing time

contradicts Nock's April 2016 administrative order that all of RUDY ROSENBERG's hearings

and trials were to be in the afternoons after 2 pm.

288.     To date, the Court has not produced a transcript for the hearing before Judge Nock on

December 8, 2016.

289.     A court reporter named "Iervasi" is listed on the Record of Court Action for December

8th at the hearing before Judge Steven Statsinger, but the transcript that has been produced for

RUDY ROSENBERG, in March 2019, is signed by Angela Brigante who was obviously not in

the courtroom on December 8, 2016.

290.     These court records are not only internally contradicted with the established court record,

but these records support a Bench Warrant that no other credible records support.

291.     In the instant Complaint, Plaintiffs allege that Kletzel fabricated NYPD Warrant Unit

reports to create a fictitious Bench Warrant against RUDY ROSENBERG dated December 8,

2016.


## DISTRICT ATTORNEY DRIVEN CONSPIRACY

292.     Upon Information and belief, Plaintiffs allege that Defendant District Attorney

defendants operate in collusion by prior private agreement with judges such as Tamiko Amaker,

Louis Nock and Steven Statsinger specifically targeting RUDY ROSENBERG and his family.

See Ashelman v. Pope, 793 F.2d 1072 (9th Cir. 1986); see also Kalina v. Flectcher, 522 U.S. 118,

123-24 (1997).

293.     Plaintiffs' Complaint alleges that Defendants engaged in a multi-layered constitutional

rights violation conspiracy including a "civil" conspiracy pursuant to § 1983, 1981, 1985(2)(3)

and 1986.

294.     Upon information and belief, Plaintiffs' allege that they were racially profiled by Serena

Springle in Spring 2015 when Springle met Plaintiffs in the Housing Court Clerk's Office to

address Plaintiffs' discrimination complaints against Kim Gooden and other minority Clerk's

Office employees.

295.     Springle made a racist comment against JACQUELINE ROSENBERG that she must be a

prostitute being in the company of a Caucasian man at which time Plaintiffs complained about

this abuse to the senior management which culminated with retaliation by Defendants.

296.     Defendants' since projected their own racial and social stereotypes upon Plaintiffs to

justify Defendants' animus thereby escalating the number and ferocity of constitutional violations

directed at Plaintiffs from that point forward so as to constructively "evict" Plaintiffs from all

access to the Clerk's Office and the Court.

297.     The complained about conspiracy is not a single act by a single municipal entity acting

upon its own, but a conspiracy between DANY and the NYPD in addition to the inclusion of

other government and private actors. See, e.g., Herrmann v. Moore, 576 F.2d 453, 459 (2d
Case 1:20-cv-04012-CM   Document 2   Filed 05/22/20   Page 48 of 116
Cir.1978).

298.     Plaintiffs also allege that discovery may provide greater clarity as to the extent

Defendants operated within the scope of their employment.

299.     Upon information and belief, Plaintiffs further allege that Defendants engaged as an

exception to the intercorporate where these defendants pursued personal interests, vested in

animus against Plaintiffs, wholly separate and apart from the entity being their respective

employer.  See Dabney v. STORMER, 2013 - Dist. Court, ND New York.

300.     Furthermore, Defendants operated between various private actors and entities in addition

to the fact that the District Attorney's Office operated the conspiracy with a second municipal

entity being the NYPD to set up the false arrest and also cover up the unconstitutional acts in the

post arrest period caused another constitutional violation being a deprivation of RUDY

ROSENBERG's due process rights.

## DISTRICT ATTORNEY FABRICATION EXAMPLES

301.     The D.A. defendants actively fabricated evidence collectively and individually in

addition to directing the NYPD defendants to do the same misconduct.

302.     Prosecutors are immune from liability in suits under § 1983 for acts that are within the

scope of prosecutorial duties. Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128

(1976).

303.     The prosecutor defendants have operated outside of the scope of their prosecutorial duties

during the period leading up to Rudy Rosenberg's arraignment on May 25, 2017.

304.     The Court in Victory v. Pataki, 814 F. 3d 47 - 2016 - Court of Appeals, 2nd held, "[i]t is

firmly established that a constitutional right exists not to be deprived of liberty on the basis of

false evidence fabricated by a government officer." Zahrey v. Coffey, 221 F.3d 342, 355 (2d

Cir.2000). "No `reasonably competent officers could disagree,' that a parole officer cannot

properly rely on evidence he knows to be false."

305.     The Pataki Court held, "this Court explained long ago that the doctrine of absolute

immunity does not permit "relating back" absolute immunity afforded for certain subsequent acts

to acts of fabrication performed at earlier stages of the proceedings where absolute immunity did

Case 1:20-cv-04012-CM   Document 2   Filed 05/22/20   Page 49 of 116

not attach. See Zahrey, 221 F.3d at 353 n. 10.'

306.      Yet, the D.A. defendants, in collusion with various judges, actively recruited and did a complete override on NYPD and the Court Security apparatus' governing policy in addition to NYPD systems and procedures to check internal corruption, bias and constitutional violations.

## CONSPIRACY NARRATIVE COLORING PLAINTIFFS

**STIGMA PLUS**

307.      In the current action, Plaintiffs' further sue based upon Defendants' bigoted and defamatory false statements that fixate to stereotype and ostracize based upon Plaintiffs interracial family status that is part of a conspiracy pursuant to 42 U.S.C 1981 & 1985 (2) & (3).

308.      Defendants repeatedly made false and racially incendiary statements and false reports against Plaintiffs since March 9, 2016 and which have been incorporated into the law enforcement and court records with the intent to cause Plaintiffs to be socially, economically and legally stigmatized.

309.      Defendants, individually and collectively, engaged in overt acts calculated to make unwarranted public statements to publicly defame, humiliate and stigmatized Plaintiffs. See Vega. v. Lantz, 596 F.3d 77 (2nd Cir. 2010),

> an action can be grounded in 42 U.S.C. § 1983 when that plaintiff can demonstrate "a stigmatizing statement plus a deprivation of a tangible interest." Algarin v. Town of Wallkill, 421 F.3d 137, 138 (2d Cir. 2005); see also Patterson v. City of Utica, 370 F.3d 322, 330 (2d Cir. 2004).

310.      The Court in Algarin v. Town of Wallkill, 421 F.3d 137, 138 (2d Cir. 2005) held that "The complaint was based on the contents of an allegedly false investigative report ('the Report)," and the plaintiffs sought to sue under their association with particular groups.

311.      Such falsely published information by both the DANY and NYPD Defendants relate to an arrest and bail tied to a fictitious Bench Warrant, amongst other false information Defendants published and caused to be published violate Plaintiffs' rights of privacy and substantive and procedural due process under the First, Fourth, Fifth, Ninth and Fourteenth Amendments.

49

312.     RUDY ROSENBERG has repeatedly requested a copy of said Bench Warrant from Defendants, the court and the Clerk of the Court, but all have refused to answer and this fact establishes that Plaintiffs also claim a due process violation arising from the deprivation of a state-created liberty interest. Welch v. Bartlett, 196 F.3d 389, 392-393 (2d Cir. 1999).

313.     Upon information and belief, Plaintiffs allege that Defendants engaged in an ongoing conspiracy since 2016 to create false court and law enforcement records in addition to making false statements, that include the pre-arraignment period in the 2017 case, with the specific intent and result of portraying RUDY ROSENBERG and the other plaintiffs as racist anti-society and anti-government criminals. See also Vitek v. Jones, 445 U.S. 480, 493, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (concluding that labeling an inmate mentally ill, and transferring him to a mental hospital without due process, wrongly stigmatized him); See Paul v. Davis, 424 U.S. 693 (1976), public designation of plaintiff as an "active shoplifter," being defamatory per se, may impose a stigma; also See Constantineau , 400 U.S. at 434, 436–37, 91 S.Ct. 507, holding stigmatizing a public posting identifying an individual as "one who 'by excessive drinking' ... expos[es] himself or family 'to want' or becom[es] 'dangerous to the peace' of the community," id. at 434, 91 S.Ct. 507; Also See Hall v. Marshall. United States District Court, E.D. New York. Mar 6, 2007, "allegation that [plaintiff's] rap sheet erroneously recites that he was arrested for murder obviously ... qualifies as 'stigma'"

314.     Defendants labelling RUDY ROSENBERG as a racist, amongst other derogatory terms raises concerns of applying "Scarlet Letter" nullification to Plaintiffs' constitutional rights akin to calling a person a sex offender. See generally McKune v. Lile, 536 U.S. 24, 32; 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002) (calling "[s]ex offenders . . . a serious threat in this Nation.")

315.     Plaintiffs allege that the fact that Defendants have caused Plaintiffs' names, inclusive of RUDY ROSENBERG, to be placed into both government criminal registries and also the virtual internet registry tied to Google and other search engines and that Defendants did so knowing that RUDY ROSENBERG's livelihood and immigrant status depends upon a clean record, especially not demonstrating contempt and moral turpitude.

316.     Plaintiffs assert constitutional violation claims under 42 U.S.C. § 1983 for alleged violations of RUDY ROSENBERG's due process rights under the Fifth and Fourteenth

York State Constitution, Article I, § 6, id. Defendants have not given RUDY ROSENBERG or

the other plaintiffs copies of either the 2016 Bench Warrant but all evidence points to the warrant

being fictitious and have conspired to unlawfully deprive RUDY ROSENBERG of Due Process.

See Vitek v. Jones, 445 U.S. 480, 493, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (concluding that

labeling an inmate mentally ill, and transferring him to a mental hospital without due process,

wrongly stigmatized him).

317.    The existence of this false Bench Warrant on RUDY ROSENBERG's "rap sheet" will

certainly deprive Plaintiff of future liberty and/or property rights tied to bail conditions as it is

viewed a contempt conviction.

318.    Law enforcement and courts are legally required to make liberty and property rights

based upon the established court and law enforcement records without viewing the original Bench

Warrant, therefore the warrant is "material state-imposed burden." Sadallah , 383 F.3d at 38

(emphasis added); cf. Valmonte , 18 F.3d at 995–96, 1001–02 (state law requirement that certain

child care employers consult list of alleged child abusers before hiring an applicant—and if hired

to maintain a written record explaining why—created a "statutory impediment [to employment]

established by the state" sufficient to constitute a deprivation of liberty, id. at 1001

319.    There can be no doubt that the U.S.C.I.S. is mandated by Federal statutes, policy and

regulations to screen for arrests tied to theft and Bench Warrant when reviewing applications for

change in status benefits.

320.    Therefore, the false publishing of the Bench Warrant and the subsequent imposition of

the bail that was imposed undermined RUDY ROSENBERG's Due Process, Liberty and Property

rights in addition to lowering Plaintiffs' legal, and economic status.

321.    The falsely published Bench Warrant imposed a threat of continued imprisonment upon

RUDY ROSENBERG and constructively extorted $1,000.00 from the other plaintiffs in order to

gain his freedom, but this published information also caused loss of employment and other losses.

322.    The Filteau Court held, "it protects an individual's 'good name, reputation, honor, [and]

integrity,' Wisconsin v. Constantineau , 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971),

only where a governmental actor affirmatively provides information that is alleged to be "false"

and "sufficiently derogatory" so as to injure a person's reputation and cause the deprivation of an additional tangible interest, Vega , 596 F.3d at 81.

323.     The Court in John Doe, Xiv v. Michigan Department of State Police and Col. Tadarial Sturdivant, Director,, 490 F.3d 491 held, "As defined by the Supreme Court in Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the stigma-plus test is used to analyze a due process claim where the action taken by the state injures the plaintiffs reputation. "The frequently drastic effect of the `stigma' which may result from defamation by the government . . . does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either `liberty' or `property' by itself sufficient to invoke the procedural due process protection of the Due Process Clause." Id. at 701, 96 S.Ct. 1155."

324.     The Supreme Court held in 1971 that a protectible liberty interest may be implicated "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971).

325.     The Court in Valmonte v. Bane. 18 F.3d 992 (2d Cir. 1994) held, "We have previously interpreted this holding to mean that "stigma plus" is required to establish a constitutional deprivation. See Neu v. Corcoran, 869 F.2d 662, 667 (2d Cir.), cert. denied, 493 U.S. 816, 110 S.Ct. 66, 107 L.Ed.2d 33 (1989)."

326.     RUDY ROSENBERG has a liberty interest in travel that implicates the Due Process and Property rights in obtaining citizenship.

327.     RUDY ROSENBERG also has a liberty interest in pursuing employment, business and vocation of his choosing which may impose upon the employer the requirement to screen for unlawful behavior patterns or lack of citizenship.

328.     The Court in Valmonte v. Bane, 895 F. Supp. 593 (S.D.N.Y. 1995) held that the appellant has a liberty interest in pursuing work in her chosen field,

> the Circuit Court concluded that communication of plaintiff's status on the Central Register would stigmatize her, and found further addressing an issue which the appellate panel acknowledged to be one of first impression that plaintiff had a cognizable liberty interest in pursuing employment in her chosen field, such that the added burdens imposed upon would-be employers represented an unconstitutional and "specific

deprivation of [plaintiff's] opportunity to seek employment caused by a statutory impediment established by
Case 1:20-cv-04012-CM   Document 2   Filed 05/22/20   Page 53 of 116
the state.

329.     Furthermore, Federal and State Banking and Securities regulations require employers

engage background screening of applicants and consultants for citizenship and criminal history of

moral turpitude including arrests for theft.

330.     If a government authority, credit granting authority, potential or existing employer, law

enforcement or court execute a background check, they will see an arrest by Bench Warrant on

May 24, 2017 was issued on December 8, 2016. See Filteau v. Prudenti, 161 F. Supp. 3d 284 -

2016 - Dist. Court, SD New York,

> If Plaintiff does truthfully disclose [on a job application] that he pled guilty to a non-criminal violation
> arising from a verbal altercation and more serious charges of using a dangerous weapon were dismissed, an
> employer obtaining a certificate of disposition of Plaintiff's case in the official Court records will not find this
> information verified.

331.     If these same government and/or commercial entities have received a prior statement

from RUDY ROSENBERG disclosing the facts of the Bench Warrant as they stand today, these

entities would take adverse action against RUDY ROSENBERG which also may include a

further check that there was an Order of Protection issued and other false derogatory published

information against RUDY ROSENBERG and the other plaintiffs.

332.     Plaintiffs allege that Defendants maliciously and fraudulently placed or caused to be

placed, Plaintiffs names into a permanent and virtual internet registry, such as Google, which

internet databases are tied to the internet publications of the criminal arrest and court proceedings.

333.     Plaintiffs also allege that Defendants also maliciously and fraudulently placed Plaintiffs

good names into a permanent and virtual internet registry tied to government, credit and other

databases that are permanent.

334.     Upon information and belief, Plaintiffs allege that Defendants publishing of false

statements and information have caused Plaintiffs to be made criminal registrants of both virtual

internet criminal registries and government registries.

335.     Plaintiffs' employment and business opportunities within their respective skillsets, "the

ability of registrants to seek and obtain any type of employment." See John Doe, Xiv v. Michigan

Department of State Police and Col. Tadarial Sturdivant, Director, 490 F.3d 491

336.     RUDY ROSENBERG is now limited to a smaller pool or jobs who may not use such stringent clearances and business opportunities due to the charges of theft, violence and racism that Defendants have published against John Doe.

337.     The Court in Filteau v. Prudenti, 161 F. Supp. 3d 284 - 2016 - Dist. Court, SD New York held, "loss of a person's reputation can rise to the level of a due process violation "if that loss is coupled with the deprivation of a more tangible interest"; such a claim "is commonly referred to as a 'stigma-plus' claim." Id. at 330; see also Valmonte , 18 F.3d at 999."

338.     The Filteau Court held, "In short, Plaintiff cannot show that Defendants published incorrect information about his criminal conviction and rather can only show that others interpreted this information incorrectly. Plaintiff's claims against these Defendants cannot proceed."

339.     Plaintiffs allege that the information published or otherwise publicly accessible, i.e. Housing Court file etc., is entirely false and will inevitably lead to irreparable reputational and related harms impacting all plaintiffs. See Zdebski v. Schmucker, 972 F.Supp.2d 972 (E.D.Mich.2013)

340.     The narrative of this conspiracy is infused with racial animus by Defendants falsely asserting that RUDY ROSENBERG is a racist and has been engaged over a period of time of abusing court staff and anyone else that serves Defendants' purpose of being a victim.

341.     Defendants stated publicly shouting and ranting false race-based allegations against RUDY ROSENBERG in addition to JACQUELINE ROSENBERG and ELTHA JORDAN as being anti- "Black" racists in March 2016 during that arrest.

342.     A prior exception that New York County Deputy Clerk made racially incendiary public remarks in front of Court Security and Clerk's Office employees, throughout 2015 and leading up to the March 2016 arrest, by referring to both JACQUELINE ROSENBERG and ELTHA JORDAN as being "prostitutes", "sellouts" and "whitewash" in characterizing their association with RUDY ROSENBERG.

343.     On March 9, 2016, Plaintiffs had a landlord tenant hearing that afternoon, but due to their arrest were not present, but the Court Security went to that court to defame Plaintiffs by making false statements that were imputed into the court record so as to taint the underlying proceedings.

344.    Thus, there has been a cumulative effect by Defendants' publishing false information over time that seriously magnified their publishing of false information

345.    Upon information and belief, Plaintiffs allege that the combination of Serena Springle's racist 2015 / 2016 remarks, the false publishing of information around the 2016 prosecution and Defendants' publishing of false information in the 2017 case led to a material deprivation of Plaintiffs' status in seeking to enforce their rights in the Civil and Criminal courts from May 24th forward to present.

346.    Defendants public utterances and published information calculated to be false and falsely represent Plaintiffs' character and actions caused additional stigma plus violations by publicly asserting RUDY ROSENBERG and by implication both JACQUELINE ROSENBERG and ELTHA JORDAN as being thieves and other defamatory terms.

347.    It is axiomatic that JACQUELINE ROSENBERG and ELTHA JORDAN are both of West Indian descent and Defendants narrative continues to illogically assert RUDY ROSENBERG is a racist only by virtue of their brute force of police powers.

348.    Another consequence was raised by an immigration attorney who advised that these prosecutions seriously impact upon RUDY ROSENBERG's immigrant status and options, including filing for citizenship as the theft complaint in of itself raises the issue of moral turpitude that can lead to deportation or at a minimum this record bars RUDY ROSENBERG from obtaining citizenship.

349.    The Court in  Jana-Rock Construction, Inc. v. City of Syracuse, 5:05-CV-1191 held, " A 'stigma plus' claim is satisfied only if there is some action taken in addition to the defamatory statements, such as a change in the plaintiff's legal status restricting his future employment by operation of law. See, e.g., Valmonte v. Bane, 18 F.3d 992, 1001 (2d Cir. 1994) (holding that placement of the plaintiff's name in a central registry of child abusers was a "plus" because future employers in the child-care sector were required by law to review this list when making employment decisions).

350.    Defendants have not charged Nikki Sterling or any of the State's actual or protentional witnesses in the underlying 2016 prosecution, even though all engaged in obstruction and perjury leading up to the arrests, charges, seizure, incarceration and subsequent prosecution. See Adickes

F.2d at 1526.

351.     The Court Security deliberately shared Plaintiffs' arrest details by announcing the same

on the Housing Court record at 2:30 pm on March 9, 2016 with the specific intention to cause

Plaintiffs to be adversely labelled in the judiciary as culpable.

352.     The Court Security knew that Plaintiffs were about to attend a Housing Court hearing at

or about 2:30 pm on March 9, 2016 and they further calculated that by their announcing the arrest

details in open court, these false but inflammatory statements would taint that proceeding but also

all further trial and appellate litigation which arrest details became published on the internet.

353.     As a direct consequence of Defendants' public defamation stigma plus violations,

Plaintiffs have been constructively ostracized from obtaining legal representation to bring this

complaint.

354.     Additionally, The DANY, Court Security, Court Clerk's and NYPD defendants used the

consequential lowering of Plaintiffs' status to commit further constitutional violations against

Plaintiffs such as constantly threatening both JACQUELINE ROSENBERG and ELTHA

JORDAN to be evicted in November 2016 and again forced Plaintiffs to be unlawfully evicted

from their residence in June and July 2017 absent any legal process obligating them to abandon

the premises.

355.     Another consequence is that Plaintiffs' lost their property and related rights due to the

stigma plus violations in addition to Defendants' extrajudicial interference in the 2017 eviction

proceeding.

356.     Another consequence is that Plaintiffs have lost rental opportunities due to the

background check uncovering the case record.

357.     Upon information and belief, Plaintiffs allege that the DANY Defendants had exerted

influence, including employing stigma plus violations in ex parte communications with the trial

judge, in a 2016 Housing Court Eviction proceeding to undermine Plaintiffs' constitutional rights

in that proceeding and cause Plaintiffs' 2016 eviction.

358.     The DANY, Court Security, Court Clerk's and NYPD management level defendants also

conspired to direct that all subordinates and agents to cause the stigma plus violations against

Plaintiffs on May 24 2017 and thereafter by fabricating the 2016 Bench Warrant to be used in the
Case 1:20-cv-04012-CM   Document 2   Filed 05/22/20   Page 57 of 116
May 24, 2017 arrest and incarceration in addition to the 2017 Housing Court eviction.

359.    Upon information and belief, Plaintiffs allege that the DANY and NYPD Defendants calculated that the false arrests and the prosecutions would result in permanent internet publishing of the charges and details against RUDY ROSENBERG and by implication all the plaintiffs.

360.    Plaintiffs further allege that all of the Defendants knew that the conspiracy was being used to incarcerate and ultimately cause the U.S.C.I.S. to deport RUDY ROSENBERG and the other plaintiffs.

361.    The complained about acts in addition to the publishing of the arrests and resulting trial details have irreparably lowered Plaintiffs' social, immigration, employment, legal, credit, business, rental, purchase and other status.

362.    Furthermore, Defendants operate through employing civilian agents such as Roberto Irizarry as a complainant on March 9, 2016 operates as a legal shield to execute their attacks against their selected "victims" being Plaintiffs.

363.    Defendants' narrative is nothing more than a disguise to allow them, the abuser, to wear the mantle of the victim's liberator in abusing Plaintiffs through the Bad Acts of Defendants' agents.

364.    By May 25, 2017, the Court Security stigma plus actions of March 9, 2016 had shown up now in RUDY ROSENBERG's 2017 criminal arraignment by the arraignment court's Bailiff by the name of "John" also deliberately engaged in stigma plus violations in the courtroom on May 25, 2017.

365.    The police officers and their supervisors also engaged in stigma plus violations in their public communications with Plaintiffs at the subject apartment on May 24 2017 in addition to other factual examples of stigma plus violations.

366.    Relief for defamation is still available under the "stigma plus" doctrine, "which in limited circumstances provides a remedy for government defamation under federal constitutional law." See Sadallah v. City of Utica, 383 F.3d 34, 38 (2d Cir. 2004)

367.    The Sadallah Court held, "To prevail on a 'stigma plus' claim, a plaintiff must show (1) the utterance of a statement 'sufficiently derogatory to injure his or her reputation, that is capable

of being proved false, and that he or she claims is false,' and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." Id. (quotation omitted). "The state-imposed burden or alteration of status must be 'in addition to the stigmatizing statement.'" Id. (quotation omitted).

368.     The Sadallah Court held, "Thus, even where a plaintiff's allegations would be sufficient to demonstrate a government-imposed stigma, such defamation is not, absent more, a deprivation of a liberty or property interest protected by due process." Id. (citations omitted).

369.     The Sadallah Court also held, "Some additional burdens that satisfy the "plus" prong under the "stigma plus" doctrine include the deprivation of a plaintiff's property, the termination of government employment, or direct interference with a plaintiff's business."

**DEFENDANTS CONSPIRACY - PROTECT AND INTERVENE**

370.     Upon information and belief, Defendants, inclusive of the Court Security and Clerk's Office managers operated with racial bias in their treatment of Plaintiffs on and after March 9, 2016.

371.     Upon information and belief, Plaintiffs allege that the District Attorney directed the Court Security to stage a fictitious arrest on March 9, 2016 and thereafter vicariously employed the force of the Court's power during Plaintiffs' detention to procure unlawful and fraudulent incriminating statements and/or confessions from Plaintiffs.

372.     The existence of a conspiracy can be proved through circumstantial evidence. See, e.g., Adickes, 398 U.S. at 158 ("If a policeman were present, we think it would be open to a jury, in light of the sequence that followed, to infer from the 5 circumstances that the policeman and a Kress employee had a 'meeting of the minds' and thus reached an understanding that petitioner should be refused service.").

373.     The trial court record establishes that Defendants conspired "for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory."

374.     Defendants obstructed the course of justice in state court such that they are liable under Section 1985(2).  That section provides, in relevant part, that a party may recover damages where:

two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any

manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal

protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the

right of any person, or class of persons, to the equal protection of the laws.

375.     Defendants furthered their constitutional violations by making specific racial references during their unlawful conduct to describing Plaintiffs' being an interracial couple in derogatory terms, employed racially disparate treatment in handling Plaintiffs' complaints against Tom Grey and the other defendants' constitutional violations against Plaintiffs.

376.     When RUDY ROSENBERG complained to Sgt. Kim at the 5th Precinct about Nikki Sterling and the unknown 5th Precinct's officer's constitutional violations directed at Plaintiff, Kim told Plaintiff, "shut your fucking cracker mouth, or I will crack your head cracker!" or words to that degree.

377.     The same abusive indifference and racially laced threatening retorts came out of the mouths of the Court Security supervisors shortly after the arrest and detention at 111 Center Street.

378.     Sterling engaged in nonstop broadcasting that RUDY ROSENBERG is a "member of the KKK" at every location that she attended with RUDY ROSENBERG, inclusive of Central Booking.

379.     Defendants demonstrated a pattern of constitutional violations that appear to be fixated upon acquiring fabricated confession and /or fabricated incriminating evidence against Plaintiffs that would also serve to irreparably and constructively terminate Plaintiffs' Federal civil rights and State tort claims.

380.     Plaintiffs complained at the time of arrest and at all times thereafter only to be further assaulted, threatened and other constitutional violations by the Court Security defendants.

381.     The 5th Precinct  and the Court Security supervisors condoning of the false arrests and assaults upon Plaintiffs during the March 9th staged ambush by Defendants was also sanctioned by DANY, the commanding officers at 5th  Precinct and the Court Security in addition to the executive officers and the NYPD Commissioner who refused to accept and/or investigate Plaintiffs' complaints made shortly after the incident date. See Yick Wo, 118 U.S. 356 (1886) at 367; Skinner v. Oklahoma 316 U.S. 535 (1942)

382.     On information and belief, Plaintiffs further allege that Defendants employment of

Roberto Irizarry on March 9 ,2016 took place with Defendants providing Roberto Irizarry with a

license to orally and physically assault Plaintiffs as Roberto Irizarry directly assaulted RUDY

ROSENBERG and by implication, his assaults on March 9th extended to JACQUELINE

ROSENBERG who witnessed this abuse first hand.

383.     Upon information and belief, DANY orchestrated a prior private agreement with both

Roberto Irizarry and his employer   BELKIN, BURDEN & GOLDMAN, LLP aid and abet the

conspiracy against Plaintiffs.

384.     Roberto Irizarry operated under color of law during his employment hours allegedly

filing legal papers at the Housing Court Clerk's Office on March 9, 2016.

385.     Ultimately, ELTHA JORDAN was victimized by the information related to her by

telephone as she listened to the violent events in the Clerk's Office and elevator bay foyer and

thereafter on March 9, 2016.

386.     The Court in Okin v. Village of Cornwall-On-Hudson Police Department held We read

the DeShaney Court's analysis to imply that, though an allegation simply that police officers had

failed to act upon reports of past violence would not implicate the victim's rights under the Due

Process Clause, an allegation that the officers in some way had assisted in creating or increasing

the danger to the victim would indeed implicate those rights.

387.     The Orkin Court also held, "Conversely, a state actor may be subject to liability for an

action physically undertaken by private actors in violation of the plaintiff's liberty or property

rights if the state actor directed or aided and abetted the violation. See, e.g., Fries v. Barnes, 618

F.2d 988, 991 (2d Cir. 1980)."

388.     The Orkin Court also held that the municipality is liable for law enforcement's negligent

condoning constitutional violations by private actors, "such interference increasing the

vulnerability of [the victim] to the actions of [the private individual] and possibly ratifying or

condoning such violent actions on his part….. .. Without such affirmative actions on the part of

the chief of police, the danger faced by the [victim] would have arguably been less." 911 F.2d at

54-55.

389. The Orkin Court further noted that the police gave the tortfeasors an oral license to
assault the crowd and these facts supported a claim for conspiracy,

> It alleged that defendant officers told the "skinheads" that the officers would permit the "skinheads" to assault
> the demonstrators; that one of the "skinheads" informed a Village Voice reporter of the verbal license given
> by the officers; that the "skinheads" did assault Dwares, a demonstrator, in the presence of the officers; and
> that the officers present refrained from interfering with the assault and did not arrest the "skinheads."

## 1985 ET SEQ. CONSPIRACY

390.     Nikki Sterling and the visible minority 5th Precinct defendants in addition the other Court

Security defendants conspired and used excessive force in an effort to force RUDY

ROSENBERG into a false confession labelling himself as a "white racist".

391.     Plaintiffs further allege that such an unlawful and fraudulent confession would

irreparably impair both RUDY ROSENBERG and his dependents rights for trial and to be

witnesses by unlawfully causing RUDY ROSENBERG and JACQUELINE ROSENBERG to

become de-facto witnesses for the State prosecution by incriminating statements procured by

Defendants through trickery and force they directed upon Plaintiffs.

392.     It was foreseeable that Plaintiffs would institute civil proceedings and complaints during

or after the criminal trial.

393.     Upon information and belief, Plaintiffs allege that Defendants sought a quick pre-

arraignment confession and / or incriminating evidence against either RUDY ROSENBERG

and/or JACQUELINE ROSENBERG would immediately terminate their State and Federal Rights

to be parties and witnesses as is the normal case.

394.     Plaintiffs further allege that such an unlawful and fraudulent confession would

irreparably impair both RUDY ROSENBERG and his dependents rights for trial and to be

witnesses by unlawfully causing RUDY ROSENBERG and JACQUELINE ROSENBERG to

become de-facto witnesses for the State prosecution by incriminating statements procured by

Defendants through trickery and force they directed upon Plaintiffs.

395.     It was foreseeable that Plaintiffs would institute civil proceedings and complaints during

or after the criminal trial.

396.     The existence of a conspiracy can be proved through 3 circumstantial evidence. See, e.g.,

Adickes, 398 U.S. at 158 ("If a policeman were present, we 4 think it would be open to a jury, in

light of the sequence that followed, to infer from the 5 circumstances that the policeman and a Kress employee had a 'meeting of the minds' and thus reached an understanding that petitioner should be refused service.").

397.     The trial court record establishes that Defendants conspired "for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory."

398.     Defendants obstructed the course of justice in state court such that they are liable under Section 1985(2).  That section provides, in relevant part, that a party may recover damages where:

> two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

399.     Section 1985(3) of the Civil Rights Act of 1964 provides a civil remedy for conspiracies to interfere with constitutionally or federally protected rights when motivated by invidiously discriminatory animus. See Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971).

400.     Under Section 1985(3), a plaintiff must show: (1) a conspiracy; (2) an act in furtherance of the conspiracy; (3) an intent to deprive any person of the equal protection of, or equal privileges and immunities under, the law; and (4) a resulting injury to a legal right or privilege. See Great American Federal Savings & Loan Assoc. v. Novotny, 442 U.S. 366, 373 (1979) (quoting Griffin v. Breckenridge, 403 U.S. at 102).

401.     To state a claim under Section 1985(3), therefore, plaintiff much allege the existence of a conspiracy in fact which is made herein.


## MONELL LIABILITY - NYPD & DANY MISCONDUCT

402.     On information and belief, Plaintiffs allege that the March 9, 2016 arrest is all about orders handed down to the Court Security command and ultimately to these officers from the NYPD and DANY final policymakers.

403.     Plaintiffs raise the Final Policymaker Theory in addition to the Single-Incident and Pattern of Constitutional Violations theories to establish municipal liability.

404.    Defendant N.Y.C. and its' subordinates, [including the District Attorney's Office, the NYPD and the Court Security & Clerk's Office administrations] failed to even investigate Plaintiffs' included complaint that the individual officers' conduct conformed to official policy, custom, or practice.

## SINGLE INCIDENT THEORY & MISCONDUCT PATTERNS

405.    The Supreme Court first articulated the single-incident principle in City of Canton v. Harris, 489 U.S. 378, 390 n.10 (1989), by way of a hypothetical:

> [C]ity policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force . . . can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights. *Id.* at 390 n.10.

406.    "Under this theory, a city could be held liable for a single instance of misconduct by an untrained low-level employee if, under the circumstances, the unconstitutional consequences of this failure to train were 'patently obvious.' See CASTILLA v. City of New York, 2012 - Dist. Court, SD

407.    A single incident of unconstitutional conduct may give rise to municipal liability where it reflects a failure to provide training in circumstances where "the unconstitutional consequences of failing to train [are] so patently obvious that a city should be liable under § 1983 without proof of a pre-existing pattern of violations." Id. at 64; see also Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995) ("An obvious need [for better training or supervision] may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents.").

408.    Upon information and belief, Plaintiffs allege that Defendants have persistently engaged in a repetitive pattern of constitutional violations, Continuing Violations, since March 2015 through present which the City has operated in aiding and abetting through deliberate indifference.

409.    Upon information and belief, Plaintiffs allege that all of the named Court Officers, including Tom Grey, Sabrina Springle, Kim Gooden and Nikki Sterling have disciplinary records

that demonstrated a pattern of constitutional violations, independent and collectively with
Case 1:20-cv-04012-CM   Document 2   Filed 05/22/20   Page 64 of 116
Plaintiffs' prior administrative complaints against these defendants.

410.     Plaintiffs prior complaints against both the Court Security and the Clerk's Office for discriminatory and retaliatory harassment were filed by Plaintiffs from 2015 forward.

411.     Upon information and belief, Plaintiffs allege that Nikki Sterling has criminal/DUI arrests and Court Security employment history of official misconduct and anti-Caucasian legal controversies such as found in Sterling v. New York State Office of Court Administration et al (1:12-cv-03378), New York Southern District Court, Filed: 04/27/2012.

412.      The Brooklyn Beagle described Nikki Sterling as anti-establishment and inherently racist, "Anyone who brings a frivolous claim can and should be sanctioned for it including, the attorney's fees incurred by the defendant," he noted.   Given that many of the defendants sued by Sterling were inappropriate, Judge Peck warned Sterling to "think long and hard about who you are suing."

413.     The Brooklyn Beagle further added that Sterling is a nonsensical bigot, "First and foremost, Ms. Sterling sued Dennis Quirk, the president of NYSCOA, individually. Under Title VII, an individual cannot be sued."

414.     Dennis Quirk advised that Nikki Sterling is nothing more than a racist extortionist, "Many people file these Title VII discrimination lawsuits as an extortion tactic. I know that we did nothing wrong, so I called on Mr. Baron to help us fight the case."

415.     Additionally, Nikki Sterling has been sued repeatedly in L&T courts over her tenancy misconduct. See Lenox Court HDFC, Respondent, v. Nikki Sterling

416.     Bernardo Aviles has also a checkered legal past being named in several Civil Rights lawsuits such as Arthur Barnes and Michelle Barnes v. Laura Anderson, Bernardo Aviles, Arnold Thomas, Alan Kaplan, and Randal Meierdierks , 190 F.3d 47 ( 1999 ) in which Aviles was held liable for a racist Housing Courtroom assault upon a pregnant woman thereby causing that plaintiff's miscarriage.

417.     In Lazarus v State of New York 2013, the plaintiff testified that Bernardo Aviles and the other Court Security defendants engaged in threats and physical abuse, including extended

incarceration, as a method to extort a signed agreement of some type that the plaintiff would not sue defendants.

418.     When Aviles did not receive this submission by the plaintiff, Lazarus testified that Aviles retaliated in kind,

> Claimant argues that he was detained longer than necessary because he refused to promise that he would not sue or otherwise file a complaint over the incident. He quoted Major Aviles as saying to him that he could not stop him from filing a lawsuit - - there is no basis to conclude that the officers would assume that a verbal exchange in a detention pen would preclude a subsequent lawsuit or other recourse.

419.     Another published case against Bernardo Aviles is Lazarus v State of New York 2013 in which the plaintiff alleged that he was issued a ticket for profanity in the courthouse, whereas the original allegations against RUDY ROSENBERG were identical but Defendants engaged in excessive and life threatening force not only against RUDY ROSENBERG but also JACQUELINE ROSENBERG who was merely a witness.

420.     The Lazarus Court noted Aviles' testimony, "According to Bernard, the two lawyers were "very loud." The officer said there was "quite a crowd" on the fourth floor at the time, at least 50 persons. Some bystanders were "shocked," and some became "interested" in the situation."

421.     Avilies' testimony in Lazarus v State of New York 2013 is identical patter of fraud as Defendants employed in RUDY ROSENBERG's prosecution namely the false claim that a crowd was attracted to the Courthouse controversy, "there was 'quite a crowd' on the fourth floor at the time, at least 50 persons. Some bystanders were "shocked," and some became "interested" in the situation."

422.     The identical narrative was testified to in the December 2017 trial, but the D.A.'s partial video of the Clerk's Office established that the State's witnesses all engaged in perjury on this issue, therefore this fact is conclusive evidence of a conspiracy directed by the D.A. defendants.

423.     By virtue of the foregoing, defendant City of New York is liable to Plaintiffs because of its intentional, deliberately indifferent, careless, reckless, and/or grossly negligent hiring, retention and supervision of its agents, servants and/or NYPD employees with regard to their duties, including:

a)   the duty not to use false, misleading or unreliable evidence;

b) the continuing obligation to correct false, inaccurate, incomplete or misleading evidence

and statements; and

c) the continuing duty to obtain, to preserve and to make timely disclosure to the appropriate parties, including the court and prosecutors, during criminal investigations and prosecutions, of all material evidence or information favorable to a person suspected, accused or convicted of criminal conduct, including exculpatory evidence as well as evidence impeaching the credibility or undercutting the reliability of prosecution witnesses and including verbal as well as recorded information

424. Policymaking and supervisory officials for the New York City Police Department and the City in addition to the Court Security and Clerk's Office administrations, had legal and constitutional obligations to prevent their employees from violating the above duties.

425. Those policymakers and officials had knowledge and notice that adequate polices regarding hiring, retention and supervision were necessary with respect to rank and file police officers and their supervisors and that failing to implement such policies would result in the violation of the constitutional rights of individuals investigated and arrested by the NYPD and Court Security.

426. The Lazarus Court also noted that the courthouse arrest was not the decision of the subordinate court officers but by official policy reserved for the ranks of Major and above, "Such observation of claimant was apparently made prior to the handcuffing because the lieutenant said that the decision to arrest was not his call, but was the major's to make."

427. On March 9, 2016 Nikki Sterling arrested and charged RUDY ROSENBERG on her own absent any higher direction and entirely without probable cause. See DePaula v State of New York, 24 Misc 3d 1222(A) (Ct Cl 2009), affd 82 AD3d 827 (2d Dept 2011)

428. The City of New York is not a stranger to Court Security officer's pattern of constitutional violations. See DePaula v State of New York, 24 Misc 3d 1222(A) (Ct Cl 2009), affd 82 AD3d 827 (2d Dept 2011); King v. Macri, 993 F.2d 294 (2nd Cir. 1993); Tomaino v. State of New York, # 2008-040-080.

429.     Upon information and belief, Plaintiffs allege that Court Security officials was previously planned and given authority to Nikki Sterling to arrest RUDY ROSENBERG in advance of March 9, 2016.

430.     The City, after RUDY ROSENBERG's December 2017 trials, failed to discipline the perjured State witnesses.

431.     This fact establishes a pattern of similar conduct and gross indifference by the City in addition to demonstrating a custom and policy of failing to train the Court Officers and Clerk's Office employee as to safeguarding against constitutional violations being inflicted upon the public in addition to ensuring unbiased conduct and honesty in executing their duties.

432.     Plaintiffs also assert that in addition to the single incident theory, Defendants collectively and individually demonstrate a pattern of constitutional violations that were sanctioned by the respective municipal policymakers.

433.     Plaintiff have alleged the deliberate indifference necessary for municipal liability under § 1983 due to Defendants' failure to train and supervise claims against the City, even after Plaintiffs filed complaints directly with the defendants' respective policymakers following the unlawful arrests.

434.     The Court in Pedrosa v. City of New York held that "even if the single-incident theory were applicable, the constitutional consequences of the allegedly inadequate discipline against Lieutenant Marchese — the issuance of a Complaint Report, an order to attend a remedial seminar and a transfer out of the 25th Precinct — cannot be said to be "so patently obvious" as to allow Plaintiff to bypass the requisite showing of a pattern."

435.     At the December 2017 trial, a material part of the Clerk's Office and second floor elevator bank foyer security videos are missing.

436.     What is clear from the RUDY ROSENBERG December 2017 trial record is that Defendants either conspired to destroy the relevant Courthouse security video of both the Clerk's Office and the second-floor elevator bank foyer or they were not trained at all in handling exculpatory evidence. See Cristini v. City of Warren, No. 07–11141, 2012 WL 5508369, at *12–13 (E.D.Mich. Nov. 14, 2012) (denying summary judgment on single-incident theory where police officers allegedly received no training as to handling exculpatory evidence).

437.    The named defendant supervisors either conspired to direct their subordinates' violations of their respective training and related governing protocol or the defendant supervisors were not trained or properly trained to ensure that their subordinates were trained or properly trained or otherwise complied with their prior training and regulating protocol.

438.    All defendants' actions clearly demonstrate that they lack any training in dealing with persons with disabilities such as PTSD as their actions were void of any medical expertise. See Chamberlain v. City of White Plains, 986 F. Supp. 2d 363, 392 (S.D.N.Y. 2013)

439.    Furthermore, the Court Security, Clerk's Office and the 5th Precinct employees further demonstrated a total failure of their management to train to provide Plaintiffs medical treatment for their complained about injuries and other health related concerns on the day of the arrests. See Schwartz v. Lassen Cnty., 838 F.Supp.2d 1045, 1057–59 (E.D.Cal.2012) (denying motion to dismiss claim under single-incident theory that jail's personnel lacked any training on providing proper medical care to inmates); Wereb v. Maui Cnty., 830 F.Supp.2d 1026, 1033–37 (D.Haw.2011) (denying summary judgment on single-incident theory where jail employees allegedly had no training on detecting when inmates need urgent medical care); see also Dillman v. Tuolumne Cnty., No. 13–CV–404, 2013 WL 3832736, at *6–8 (E.D.Cal. July 23, 2013) (dismissing claim under single-incident theory where plaintiff challenged adequacy, rather than lack of existence, of training regarding proper use of handcuffs and strip searches); Ault v. Baker, No. 12–CV–228, 2013 WL 1247647, at *8–10 (E.D. Ark. Mar. 27, 2013) (dismissing claim under single-incident theory where plaintiff failed to plead sufficient facts showing consequences of lack of training as to excessive force and medical needs were patently obvious). The District Court in Wereb provides a thorough and well-reasoned analysis of the Connick decision's effect on the single-incident theory, see 830 F.Supp.2d at 1031–33, and in the absence of guidance from the Second Circuit on this issue, I agree that the theory is still a viable one in limited circumstances.

440.    Plaintiffs complained to DANY, the NYPD Commissioner and Chief's office and the same responded with complete discriminatory indifference thereby their offices sanctioned the March 9, 2016 misconduct by demonstrating their gross and reckless indifference.

441.    Plaintiffs complained to the CCRB and the Mayor's Office and these defendants

responded with the same discriminatory indifference.

442.    Defendant New York City has either deliberately sanctioned or turned a "blind-eye" to misconduct 5th Precinct and the Court Security as their constitutional violations have been unabated, Simpkins v. Bellevue Hosp., 832 F.Supp. 69, 73-74 (S.D.N.Y. 1993).

443.    The Court in Pedrosa v. City of New York, No. 13–CV–01890, 2014 WL 99997, at *8 (S.D.N.Y. Jan. 9, 2014) dealt with a 42 U.S.C. 1983 complaint brought by a police officer at the 25th Precinct against other precinct officers.

444.    The Court in Pedrosa v. City of New York held that a municipal policymaker's inaction upon receipt of information raising an issue of employee misconduct represents a "deliberate choice" to be recklessly indifferent,

> A city "policy or custom" exists "where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a `deliberate choice'. . .." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 126 (2d Cir. 2004).

445.    Plaintiff Lisette Pedrosa's complaint alleged that, "Defendant Nilda Hoffman, Deputy Inspector and Commanding Officer of the 25th Precinct, knowingly caused false reports to be written alleging that Officer Pedrosa had left her equipment unsecured," which is identical misconduct that Plaintiffs' complain about the defendants in the instant complaint.

446.    Defendants, at the 25th Precinct, pathetically continue fabricating and other Bad Acts being directed at both their own officer employees and the public at large.

447.    Officer Pedrosa's complaints of misconduct were also summarily ignored by the NYPD and City of New York officials, just like Plaintiffs have experienced, "Frustrated by the NYPD's failure to take her complaints of sexual harassment seriously, Officer Pedrosa gave an interview to the New York Daily News. On June 2, 2011, the Daily News published an article reporting her allegations against Lieutenant Marchese."

448.    Pedrosa's complaint further alleged that there was a systemic conspiracy by the NYPD to cover-up the frauds and other constitutional violations at the 25th Precinct, "To the extent the Complaint adds any context to these events, it suggests that Sergeant Coleman and Deputy

Inspector Hoffman caused false reports to be filed in order to cover up their failures to prevent

Case 1:20-cv-04012-CM   Document 2   Filed 05/22/20   Page 70 of 116

and report the theft, not to further or otherwise participate in any sexual harassment of Plaintiff."

449.     On information and belief, Plaintiffs allege that both the NYPD Commissioner and Chief of the Department acted as the "Official Policymaker," in their respective official capacities, which individually and collectively did mismanage the NYPD by failing to adequately train, supervise, and discipline his subordinates and employees regarding conflicts & constitutional law in addition to reporting, anti-corruption / discrimination, integrity policy and procedures.

450.     On information and belief, Plaintiffs allege that both the Court Security's Chief of Court Security Magliano and Clerk's Office Chief Clerk Carol Alt operated as the respective "Official Policymaker," for both the Court Security and Clerk's Office administrations.

451.     Both acted in their respective official capacities, which individually and collectively, did mismanage their respective subordinates by failing to adequately train, supervise, and discipline his subordinates and employees regarding conflicts & constitutional law in addition to reporting, anti-corruption / discrimination, integrity policy and procedures.

452.     On information and belief, Plaintiffs allege that both the District Attorney acted as the "Official Policymaker," in his respective official capacity did mismanage DANY by failing to adequately train, supervise, and discipline his subordinates and employees regarding conflicts & constitutional law in addition to reporting, anti-corruption/discrimination, integrity policy and procedures.

453.     Defendant New York City exhibited gross negligence and deliberate indifference to Plaintiffs by allowing the individual defendants to conduct and engage in the investigative process in the context of being an Assistant District Attorney.

454.     This gross negligence directly resulted in the appalling wrongs done unto plaintiffs by the individual Defendants.

455.     Further, abuse of process continued by New York City for their refusal to properly investigate or take action on the charges of abuse and gross negligence against the defendants (collectively and individually).

456.	Such abuse of process was continued by the defendants, their agents, servants, and

employees in their refusal to adequately investigate, review and take action regarding the abuse

and unlawful actions that individual defendants perpetrated on plaintiffs.

457.	Both before and after March 9, 2016 and then the trials ending on December 4, 2017,

New York City has permitted, tolerated, and encouraged a pattern and practice of unjustified,

unreasonable, and illegal abuses and arrest of persons by those within and in charge of the

Manhattan District Attorney's Office in addition to the wrongful detention of such persons.

458.	Although such prosecutorial conduct was improper, said incidents were covered up by

New York City, its agents, employees and servants by official claims that the DA's office's gross

negligence, unlawful seizures and abuse of process were justified and proper, or by leveling false

charges against the persons who were victims of said gross negligence, unlawful seizures and

abuse of process, so as to insulate the offending prosecutors and other officials from prosecution

and liability.

459.	Said charges and official claims have been fully backed by New York City, which has

repeatedly and unreasonably sided with the abuse of persons so affected in far too many cases,

despite vast evidence of wrongdoing by its prosecutors against individuals, including plaintiffs

herein.

460.	Additionally, New York City has systematically failed to identify the improper abuse,

misuse, volatile acts and unethical conduct by prosecutors and officials, while further failing to

subject such prosecutors and officials to discipline, closer supervision or restraint.

461.	Upon information and belief, specific examples of systemic flaws within the New York

City misconduct review process include, but are not limited to, the following:

- Preparing reports regarding investigations of unwarranted incidents as routine point-by-

  point justification of the prosecutor's actions regardless of whether such actions are

  justified;

- Prosecutors investigating unwarranted incidents systematically fail to credit testimony by

  non-police officer witnesses and uncritically rely on reports by police officers and other

  officials involved in the unwarranted incidents;

- Prosecutors investigating unwarranted incidents fail to include in their reports relevant factual information which would tend to contradict the statements of the police officer involved;

- Supervisory prosecutors exonerate offending prosecutors for misconduct and abuse of process before the investigation of the incident by the prosecutor's office has been completed;

- New York City and its D.A.'s Office hastily accepts the reports as provided regarding abuses and civil rights infringements, despite evidence to suggest that the such reports are inaccurate, untruthful and meant to conceal blatant prosecutorial misconduct.

462.    Said cover-up by the New York City, was executed in this case where New York City, its agents, employees and servants failed to sufficiently investigate the truthfulness and accuracy of prosecutor's investigation statements and instead acted under color of statue to knowingly, recklessly and/or negligently impose false charges upon plaintiffs.

463.    By permitting and assisting such a pattern of prosecutorial misconduct, New York City, acted under color of custom and policy to condone, encourage and promote the deprivation of plaintiffs Fourth, Fifth, and Fourteenth Amendment rights.

464.    The actions of the individual defendants, in inflicting emotional and economic injury, unto plaintiffs was a direct result of New York City's failure to train and supervise the individual defendants, who were each acting under color of law and pursuant to the objectives of New York City.

465.    New York City should have known that such failures and gross negligence would cause the precise economical, emotional, and civil rights injuries suffered herein in by plaintiffs.

466.    As a direct consequence of the New York City's systemic practice, pattern, and custom of intentionally or recklessly promoting and supporting officers' and officials' violations of 42 U.S.C. § 1983 et seq., plaintiffs were deprived of their freedom and subject to extensive economical and emotional harm.

467.    As a proximate cause of Plaintiffs' injuries; Defendant New York City, its agents, and employees, supported and in every manner effectively promoted the very same police abuses that occurred against plaintiffs, plaintiffs were subjected to great fear, personal humiliation and

468.        Additionally, the Fourth Amendment requires, the "right to a neutral determination of

probable cause, which is the basic prerequisite for pretrial detention. See Gerstein, 420 U.S. at

124-125 ("What fair and reliable determination of probable cause as a condition for any

significant pretrial restraint of liber-ty.") (emphasis added); see also County of Riverside v.

McLaughlin, 500 U.S. 44, 55 (1991) See Manuel v. Joliet (03/21/2017) - Supreme Court.

469.        By example, the Court Security, through the "John" the Bailiff in the May 25th, 2017

arraignment court dealing with the fictitious Bench Warrant and the new 2017 false charges,

further stigmatized RUDY ROSENBERG and the other plaintiffs by his inflammatory and

defamatory statements to the arraignment Judge Frey.

470.        Plaintiffs witnessed the bailiff whisper in Judge Frey's ear and Judge Frey simultaneously

stared at RUDY ROSENBERG in a threatening manner in the early morning of the May 25th

court session.

471.        Plaintiffs also heard this bailiff speak with court appointed counsel in the same session

uttering the same inflammatory and defamatory characterization of RUDY ROSENBERG being a

"racist", "bigot" and "contemptuous toward the court."

472.        As a direct result of the bailiff's words and actions, Judge Frey imposed excessive bail

and the court appointed counsel sought to be removed from representing RUDY ROSENBERG

thereby tainting the subsequent replacement counsel on RUDY ROSENBERG's 2016 and 2017

cases.

473.        New York City and the named Defendants have operated continuously with depraved

indifference to violating Plaintiffs' constitutional rights, "deliberate indifference manifests as a

'conscious disregard of the risk that poorly-trained employees will cause deprivations of clearly

established constitutional rights.'" See Wray v. City of N.Y., 490 F.3d 189, 195-96 (2d Cir. 2007)

474.        On information and belief, Plaintiffs allege that all named Defendants know or should

have known prior to the May 24 2017 false arrest that the controversy would not originate out of

a legitimate policy action or criminal investigation.

475.     Therefore, it is arguable that the case is closer to the Court in Jones v. Wellham, 104 F.

3d 620 - 1997 - Court of Appeals, 4th holding,

> that his conduct must be judged under the "objectively unreasonable/excessive force" standard prescribed in
>
> Graham v. Connor, 490 U.S. 386 (1989). This of course misconstrues the nature of the constitutional claim.
>
> Because the harm inflicted did not occur in the course of an attempted arrest or apprehension of one
>
> suspected of criminal conduct, cf. Tennessee v. Garner, 471 U.S. 1, 7-9 (1985), the claim was not one of a
>
> Fourth Amendment violation, but of the violation of the substantive due process right under the Fourteenth
>
> Amendment not to be subjected by anyone acting under color of state law to the wanton infliction of physical
>
> harm. See Ingraham v. Wright, 430 U.S. 651, 673 (1977) (excessive force in paddling school child); Doe v.
>
> Taylor Ind. Sch. Dist., 15 F.3d 443, 450-52 (5th Cir. 1994) (sexual abuse by government employee). The
>
> district court instructed the jury that if it found that Ziegler forcibly raped Ms. Jones under the circumstances
>
> she claimed, this would constitute a violation of her constitutional rights under the Fourteenth Amendment.
>
> J.A. 380. This effectively defined the Fourteenth Amendment right to bodily integrity specifically at issue in
>
> this case and accurately stated what had to be found from the evidence in order to impose liability for its
>
> violation. The district court did not err by refusing to give the requested instruction on "objective
>
> reasonableness."
>
> The court actually instructed that forcible rape would constitute a deprivation of both Fourth and Fourteenth
>
> Amendment rights.

476.     By all accounts and upon parallel scenario, the May 24, 2017 arrest is not a per se Fourth

Amendment violation as it is a Fourteenth Amendment violation, but the Court in Jones v.

Wellham instructed the jury that the fraudulent arrest constitutes a deprivation of both Fourth and

Fourteenth Amendment rights.

477.     Upon information and belief, Plaintiffs allege that Defendant City of New York is liable

due to the fact that Defendants sanctioned NYPD, Court Security, Court Clerk's Office and

DANY employee misconduct by official policy, practice or custom in addition to the other

enumerated grounds herein supporting liability under a Monell Claim.

478.     Plaintiffs further allege that Defendants engagement of civilian agents such as Roberto

Irizarry & his employer BELKIN, BURDEN & GOLDMAN, LLP as DANY agents to cause

constitutional violations and torts amounts to an official policy, practice or custom in addition to

all enumerated other grounds set out herein to support a Monell claim,

- a rule or regulation promulgated, adopted, or ratified by [municipality's] legislative body;

- a policy statement or decision that is officially made by [municipality's] [policy-making official];

- a custom that is a widespread, well-settled practice that constitutes a standard operating procedure of [municipality]:

- [inadequate training] [inadequate supervision] [inadequate screening during the hiring process] [failure to adopt a needed policy]. However, [inadequate training] [inadequate supervision] [inadequate screening during the hiring process] [failure to adopt a needed policy] does not count as "official policy or custom" unless the [municipality] is deliberately indifferent to the fact that a violation of [describe the federal right] is a highly predictable consequence of the [inadequate training] [inadequate supervision] [inadequate screening during the hiring process] [failure to adopt a needed policy]. I will explain this further in a moment.

479.     Plaintiffs further allege that they complained directly to the office of NYPD Police Commissioner, Chief of Court Security and Chief Clerk's offices on and after March 10, 2016 with each of these policymaker's specifically responding with reckless indifference.

480.     Plaintiffs thereafter received a communication from the NYPD Commissioner's immediate support staff advising the Commissioner had reviewed the issues with the precinct command and decided to support the precinct's position as to their conduct on March 9, 2016.

**FINAL POLICYMAKER THEORY**

481.     The Fourth Circuit's decision in Jones v. Wellham-another case where the plaintiff relied exclusively on a final policymaker theory rather than evidence of a pattern of constitutional violations or an express policy. 104 F .3d 620, 624-27 (4th Cir. 1997), is instructive, but Plaintiffs do not solely rely upon the final policymaker theory alone, but also rely upon alternative theories to final policymaker if the final policymaker theory is rejected by this Court.

482.     On information and belief, Plaintiffs allege that there exists substantial evidence of a pattern of constitutional violations or an express policy that also supports liability but this evidence is exclusively within the possession and control of the named Defendants.

483. Commissioner O'Neill's office responded that he will not intervene in the 5th Precinct's

operations and if Plaintiffs did not like that answer, Plaintiffs are free to sue New York City

government.

484.     Plaintiffs had also complained similarly to the NYPD Chief Carlos M. Gomez on or

about May 24, 2017 and also on later dates mirroring the complaints made to the commissioner,

but Gomez ignored these complaints.

485.     On information and belief, Plaintiffs allege that both the NYPD Commissioner and Chief

are both New York City policymakers and demonstrated gross reckless indifference to Plaintiffs'

several filed oral and written complaints about the 5th Precinct's abuses of March 9, 2016.

486.     Under Monell, Pembaur, and their progeny, a decision by a municipal policymaker on

even "a single occasion" may expose the municipality to Section 1983 liability. Pembaur, 475

U.S. at 471; see also Amnesty Am. v. Town of W. Hartford, 361F.3d113, 126 (2d Cir. 2004)

(Sotomayor, J.) ("[A] single instance of deliberate indifference to subordinates' actions can

provide a basis for municipal liability.").

487.     The holding in Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011) primarily governs

failure-to-train cases, and that even the Connick decision "left open the possibility ... that a single

incident in the failure-to-train context can be so extreme as to warrant municipal liability in the

absence of a pattern of similar constitutional violations" (citing Connick, 131 S. Ct. at 1366)).)

488.     The Second Circuit has made clear in recent decisions that the "final policymaker" theory

survived Connick, and that a showing of a pattern of constitutional violations is not necessary for

all Monell claims. See, e.g., Jones v. Town of E. Haven, 691 F.3d 72, 81 (2d Cir. 2012); Cash,

654 F.3d at 336 ("[W]e begin by noting that the pattern ordinarily necessary to prove deliberate

indifference in the context of a failure-to-train claim does not neatly transfer to this case."

(emphasis added)).

489.     Under appropriate circumstances, decisions by the NYPD Commissioner related to

discipline (or employee terminations) can be viewed as City "policy" and can result in potential

Monell liability. 1° Cf., e.g., Pipitone v. City of New York, Nos. 06-CV-145, -2843, -2954, -

3101, -2864, -3591, 07-CV-2189 (RJD) (JMA), --- F. Supp. 3d ---, 2014 WL 4954488, at *13

(E.D.N.Y. Sept. 30, 2014) ("The single action or inaction of a municipal policymaker, such as a

specific failure to adequately supervise or discipline an officer, can also form an official policy or custom attributable to a municipality for purposes of municipal liability." (citing Amnesty Am., 361 F.3d at 125-26; Pembaur, 476 U.S. at 480-81)); Lovell v. Comsewogue Sch. Dist., 214 F. Supp. 2d 319, 324 (E.D.N.Y. 2002) (denying motion to dismiss where plaintiff-teacher alleged that final policymaker-principal caused violation of her constitutional rights by previously failing to discipline students who sexually harassed her).

490.     The Supreme Court, in Pembaur, first articulated the final policymaker theory, plaintiff alleged that a county prosecutor formulated official policy in deprivation of his Fourth Amendment rights when the prosecutor advised the police to enter and search plaintiffs' premises without plaintiff's consent and without a warrant. See generally 475 U.S. at 469; see also Biyan Cnty., 520 U.S. at 405-06 (recognizing that Pembaur left open the possibility that a city can be liable under Monell "based on a single decision attributable to a municipality," but also recognizing that "[c]laims not involving an allegation that the municipal action itself violated federal law, or directed or authorized the deprivation of federal rights, present much more difficult problems of proof'). (See also Defs.' Mem. at 11 n.4 ("This case is easily distinguished on the basis that the Pembaur decision itself only addressed decisions by policymakers that were themselves the unconstitutional acts complained of .... ").).

## PATTERN OF CONSTITUTIONAL VIOLATIONS

491.     On Information and belief, Plaintiffs allege that DANY name and unnamed officials were involved in this false arrest et seq controversy of May 24, 2017 by directing the NYPD named actors to engage in various Bad Acts leading up to the arrest and thereafter thereby formulating policy in deprivation of Plaintiffs' constitutional rights.

492.     The City of New York and all named relevant Defendants (including DANY, NYPD and the Court Security) operated with extreme, discriminatory and deliberate indifference to all of Plaintiffs' oral and written complaints from the morning of March 10th, 2016 forward.

493.     The events of the instant controversy also mirror the facts of Pipitone v. City of New York, in which the NYPD Commissioner and the Chief of New York Courts Security, "aware of significant red flags" concerning police corruption, such as "serious[,] unusual[, and] highly provocative" evidence, "consciously chose to ignore them" and reinstated the officers in question

rather than discipline them or order additional investigation. 13 Nos. 06-CV-145, -2843, -2954, -
Case 1:20-cv-04012-CM   Document 2   Filed 05/22/20   Page 78 of 116
3101, -2864, -3591, 07-CV-2189 (RJD) (JMA), --- F. Supp. 3d ---, 2014 WL 4954488, at *15

(E.D.N.Y. Sept. 30, 2014).

494.      In the instant case, the Court's Clerk's Office managers and especially Court Security

Officer Nikki Sterling had been demoted and punished in previous years for the same or similar

misconduct that they are now, once again, accused of perpetrating, but the Court Security and the

City of New York actually promoted all but Tom Grey, who is also Caucasian.

495.      Tom Grey's testimony at trial exposed the other defendants' perjury to the point that

Plaintiffs' cross examination of Roberto Irizarry, Nikki Sterling and Kim Gooden established a

pattern of perjury at and prior to trial being promoted by the DANY defendants in conjunction

with the Court Security administration.

496.      Upon information and belief, Plaintiffs allege that Senior Court Clerk Manager Tom

Grey was demoted after RUDY ROSENBERG's trial in retaliation for his failing to follow

DANY and the Court Security administrations direction to commit obstruction and perjury to

harm Plaintiffs at the December 2017 trial.

497.      The Second Circuit's decision in Vann is instructive. There, based on both evidences

related to prior complaints against the Defendant-officer and evidence related to the City's

"general methods of dealing with problem policemen," the Second Circuit affirmed the district

court's denial of summary judgment on the Monell claims. Vann, 72 F.3d at 1049-51.

498.      Notably, the officer in Vann was the subject of almost ten civilian complaints in a fifteen-

month period for the use of derogatory language and serious physical force, See also. e.g.,

Selvaggio v. Patterson, No. 13-CV-2436

**EXPRESS POLICY**

499.      Policy-based Monell claims of extreme, discriminatory and gross indifference in the

application of law enforcement by the 5th Precinct and Court Security.

500.      As the Second Circuit recently confirmed, "*Monell* does not provide a separate cause of

action for the failure by the government to train its employees; it *extends* liability to a municipal

organization where that organization's failure to train, or the policies or customs that it has aided

& abetted, led to an independent constitutional violation." Barrett v. City of Newburgh, — F.

App'x —, 2017 WL 6540497, at *2 (2d Cir. Dec. 21, 2017) (summary order) (quoting Segal v.

Case 1:20-cv-04012-CM   Document 2   Filed 05/22/20   Page 79 of 116

City of N.Y., 459 F.3d 207, 219 (2d Cir. 2006)).

501.    On information and belief, Plaintiffs allege that all of the District Attorney's Office

named Defendants are liable for the constitutional and tort violations by the NYPD and the Court

Security defendants.

502.    Plaintiffs further allege that these prosecutors directed, guided and motivated NYPD and

Court Security violations during this pre-arraignment period as part of an overarching conspiracy

between the two organizations to unlawfully deprive Plaintiffs' constitutional rights.

503.    Upon information and belief, Plaintiffs allege that the named D.A. Defendants, [i.e.

Robert Ryan, Eugene Porcaro, Nitin Savur and David O'Keefe] have made threats of retaliation

against RUDY ROSENBERG and his family during the 2016 pre-trial process.

504.    In one telephone call with Robert Ryan suddenly Eugene Porcaro and Nitin Savur came

on the line threatening RUDY ROSENBERG by stating that they would face an escalation in

charges that would send RUDY ROSENBERG to prison and thereafter deport him and his family

if RUDY ROSENBERG did not stop complaining about how they were handling the prosecution

inclusive of the Brady complaints.

505.    Upon information and belief, Plaintiffs allege that over Plaintiffs' complaints against

Robert Ryan and his named associates' interference with RUDY ROSENBERG's constitutional

and substantive pre-trial rights.

506.    Upon information and belief, Plaintiffs allege that Bonnie Sard and Cyrus Vance

maliciously and falsely communicated information to RUDY ROSENBERG that they would

formally investigate RUDY ROSENBERG's complaints against these DANY staff, but in reality,

aided & abetted these staff to retaliate against Plaintiffs from April 2016 forward.

507.    During the second and third quarters of 2016, RUDY ROSENBERG spoke directly with

both Cyrus Vance and Bonnie Sard about RUDY ROSENBERG's complaints raised herein

during 2016.

508.    Both Defendants made warranty that they would investigate these complaints, take

remedial action and seek a resolution with Plaintiffs where necessary to all concerned, but

509.     Upon information and belief, the D.A. Defendants' pre-arraignment misconduct directed at Plaintiffs occurred in capacities as administrative, investigative functions normally performed by a detective or police officer," Buckley, 509 U.S. at 273, or when these prosecutors "provid[es] legal advice to the police," Burns, 500 U.S. at 492, 496, See also Kalina v. Fletcher, 522 U.S. 118, 120, 131 (1997) (prosecutor lacked absolute immunity from claim asserting that she "ma[de] false statements of fact in an affidavit supporting an application for an arrest warrant," because in so doing she "performed the function of a complaining witness" rather than that of an advocate);

510.     By example, Cyrus Vance and his A.D.A. entourage of named defendants directed Major John Allen of the New York City Court Security to direct his security guards to stalk, harass and menace Plaintiffs in and out of the criminal courtrooms, hallways and the like.

511.     Furthermore, the D.A. defendants directed or otherwise gave the Court defendants specific allowance to interfere with Plaintiffs' March 9, 2016 Housing Court hearing and thereafter threatened RUDY ROSENBERG not to re-visit the Courthouse.

512.     By example, Cyrus Vance and his named Defendants engaged Judges Steven Statsinger, Louis Nock and Tamiko A. Amaker in a scheme to create a fictitious Bench warrant and hearing records on December 8, 2016.

513.     By example, Cyrus Vance directed the NYPD Warrant Squad not to locate RUDY ROSENBERG and not to do any locating investigation to satisfy the Bench Warrant of December 8, 2016.

514.     The District Attorney's Office Defendants personally engaged all levels and defendant actors of the NYPD and the Court Security administrations to operate as an Alter Ego for DANY.

515.     This is a far more complex conspiracy than the usual street level drug bust by crooked cops seeking just overtime pay.

516.     In the present case the court will allow the plaintiff to proceed against the City of New York on *Monell* grounds that allege the failure to take reasonable steps to control lying by police officers is a policy of the NYPD. *See Monell v. Department of Social Services,* 436 U.S. 658 (1978).

517.    Plaintiffs also alleged that the D.A. also directed the misconduct by the named New York

Courts Security.

518.    Plaintiffs allege that the District Attorney's Office and the NYPD precinct level

management up to the Chief's office directed, aided & abetted in addition to sanctioning the

subject arrest and related misconduct by the precinct officers and the court security defendants

named herein.

519.    Furthermore, Plaintiffs' theory also incorporates the allegation that the police department

and the Court Security have long been aware of a wide-spread practice of false arrests and related

constitutional violations, but continued to operate with extreme prejudicial indifference toward

Plaintiffs' injuries.

**FAILURE TO TRAIN, SUPERVISE & DISCIPLINE – DANY & NYPD**

520.    Upon information and belief, Plaintiffs allege that in the case of the NYPD, officer

misconduct pervasively occurs at the end of tours of duty in order to obtain overtime and that it

has failed to sufficiently address this practice which demonstrates a custom, practice and policy

that permits officers of the 5th Precinct to use constitutional violations inflicted upon the public as

a source of personal overtime revenue for the officer.

521.    To establish a defendant's § 1983 liability for a policy of inadequate training or

supervision, a plaintiff must demonstrate that the failure to properly train reflects a "deliberate

indifference to the constitutional rights" of the Plaintiff. City of Canton, Ohio v. Harris, 489 U.S.

378, 388 (1989).

522.    Plaintiffs assert that they would need discovery from the DANY, Court Security and the

NYPD administrations to better and more completely address the issue of failure to train,

supervise and discipline given the fact that these administrations possess and control the

information which is not within Plaintiffs' ability to access.

523.    Three requirements must be met before a municipality's failure to train or supervise its

employees constitutes deliberate indifference: the plaintiff must show that (1) the policy maker

knows "to a moral certainty" that his/her employees will confront a given situation; (2) the

situation either presents the employee with a difficult choice of the sort that training or

supervision will make less difficult or that there is a history of employees mishandling the

situation; and (3) the wrong choice by the city employee will frequently cause the deprivation of a

Case 1:20-cv-04012-CM   Document 2   Filed 05/22/20   Page 82 of 116

citizen's constitutional rights. Walker, 974 F.2d at 297-298.

524.     For liability to attach, the "identified deficiency in a city's training program must be closely related to the ultimate injury." Harris, 489 U.S. 378, 391 (1989); see also Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, Monell prohibits a finding of liability against the City.")

525.     The Court of Appeals has held that if reckless disregard standard (discussed above) is met then the defendant is foreclosed from establishing qualified immunity: "If a police officer submits an affidavit containing statements he knows to be false or would know are false if he had not recklessly disregarded the truth, the officer obviously failed to observe a right that was clearly established." Lippay, 996 F.2d at 1504.

526.     On information and belief, Plaintiffs allege that the city's policy is not to track or adequately discipline policemen for testifying falsely and there is absolutely no governance of the D.A.' administration and staff.

527.     During the 2016 calls with Bonnie Sard, RUDY ROSENBERG asked pointed questions and she demonstrated complete ignorance of DANY's internal training, governance, public complaint and discipline system.

528.     These District Attorney Defendants persistently engaged in securing false witness and victim statements and filed fabrications for years in the 2016 and 2017 prosecutions against RUDY ROSENBERG.

529.     The fact that Robert Ryan and his team directed the NYPD Warrant Squad to engage in negligence of their own posts by not seeking out RUDY ROSENBERG on the Bench Warrant.

530.     Why would DANY Defendants direct the Warrant Squad to "stand down" except for the fact that it speaks volumes as to an illicit conspiracy between DANY and the NYPD.

531.     Certainly, these conspiracy facts cannot be found either DANY or the NYPD's training and procedures manuals.

532.     In the instant case, the defendant NYPD defendant officers engaged in creating false reports, constitutional violations and other Bad Acts while they obtained overtime pay from the City of New York.

533.     Furthermore, the City of New York and the NYPD persistently fail to supervise or properly discipline police officers who have a record of being unsuccessful Defendants in Title 42 U.S. Code Section 1983 cases because tied to complaints of fabricating evidence, false statements and perjury.

534.     A conversation with Major John Allen of the Court Security on or about April 5, 2016 captured him communicating that he directed his security staff to retaliate against Plaintiffs over their previously filed complaints through the Chief's office which is evidence in support of this Monell claim and also of Defendants indifference to engaging in continuing constitutional violations without both individual and official accountability.

535.     Plaintiffs allege that this is not a controversy where money hungry officers fabricate street sale drug charges to make an arrest near the end of their tour of duty in order to obtain overtime for completing the attendant paperwork.

536.     Nikki Sterling boasted to the 5th Precinct officers that her charges are simply "made up," but she also bragged about "getting overtime for fucking this Cracker up".

537.     The city is additionally being sued on the theory that its overtime policy and policy on lying by its officers encouraged their unlawful action. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989) ("[A] municipality can be liable under § 1983 only where its policies are the moving force [behind] the constitutional violation.")

538.     On Information and belief, Plaintiffs allege the 5th Precinct, DANY and Court Security administrations officially sanction officers who "structure their schedules to order to maximize the possibility of overtime compensation, or rushed end-of-tour arrests in a manner that increased the possibility of mistaken arrests."

539.     An obvious form of negligence is the fact that Nikki Sterling's entire overtime is predicated upon her false statements and constitutional violations that were planned in advance of March 9th, 2016.

540.     The 5th Precinct defendants, including Sgt. Kim and the unidentified officer, aided and

abetted Nikki Sterling's prior declared report fabrications over RUDY ROSENBERG's

objections on March 9, 2016.

541.     Sterling's out of control fabrications continued through the December 2017 which were

also exposed by Plaintiffs' audio recording of March 9, 2016 that exposed all of the State witness

perjury and the corresponding conspiracy all the defendants individually and collectively.

542.     Such cases are becoming increasingly difficult to try fairly. Jurors are ever more aware of

stories in the media reporting police officers lying to justify false arrests and to convict criminal

Defendants. See, e.g., Nathan Tempey, Two NYPD Detectives Arrested For Allegedly Lying

About A Gun Bust, Feb. 17, 2017 ("Two Queens detectives have been arrested on official

misconduct and filing a false instrument charges stemming from a 2014-gun possession arrest

they made in Washington Heights, which prosecutors say was based on an illegal search justified

by repeated lies."); Robert Lewis, The Hard Truth About Cops Who Lie, WNYC News, Oct. 13,

2015.

543.     One high profile commentator, discussing police officer veracity, indicates: some

experts on police practice treat lying by police at trials and in their paperwork as the "norm,"

"commonplace," or "routine." Michelle Alexander, *Why Police Lie Under Oath*, N.Y. Times,

Feb. 2, 2013

544.     In 2011, Justice Gustin L. Reichbach of the State Supreme Court in Brooklyn

condemned a widespread culture of lying and corruption in the department's drug

enforcement units . . . 'this court was shocked, not only by the seeming pervasive scope of

misconduct but even more distressingly by the seeming casualness by which such conduct is

employed.' "

545.     Monell liability will apply where "a local government is faced with a pattern of

misconduct and does nothing, compelling the conclusion that" it has "tacitly authorized its

subordinates' unlawful actions." Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007).

546.     Repeated and consistent conduct often indicate city involvement or acquiescence to a

deprivation of liberty. City of Canton, 489 U.S. at 395 (holding that a municipality's "policy of

inaction" may rise to "the functional equivalent of a decision by the city itself to violate the

constitution"). Court's typically require documentary evidence of a "widespread practice."

Biewas v. City of New York, 2017 WL 3524679, at *9 (S.D.N.Y. Aug. 15, 2017); Bektic-

Marrero v. Goldberg, 850 F. Supp. 2d 418, 431 (S.D.N.Y. 2012) (finding a Monell claim

sufficiently pled where the plaintiff could point to a report by the United States Department of

Justice ("DOJ") concluding that the county Defendants' "provision of medical care to inmates

was constitutionally deficient in several respects," and "high-ranking prison officials were

advised of the DOJ's preliminary findings").

# CAUSES OF ACTION

All claims for relief further incorporate all claims raised herein within the complaint herein in addition to

all defendants named and unidentified related to each cause of action, whether or not stated in each of the

articulated claims for relief below.

## 1ST CLAIM FOR RELIEF

### FALSE EVIDENCE

**(UNDER 42 U.S.C. § 1983, 1981, 1985(2)(3), 1986)**
**(Against All Defendants and City of New York)**

547.     Plaintiffs repeat and re-allege each and every prior allegation as if fully set forth herein.

548.     Defendants, individually and collectively, were acting under color of state law, as officers

of the NYPD, Court Security, Court Clerk's Office and officials of the Manhattan D.A., inclusive

of their agents, and in their respective individual and official capacity, when they carried out the

acts complained of herein.

549.     The Defendants acted willfully, maliciously and/or with reckless disregard of the

consequences of their actions.

550.    Defendants are liable under Section 1983, 1981 and 1985 (2), (3) and 1986 for intentional racial harassment and other constitutional violations designed to oppress and punish plaintiffs for their interracial relationship, their First Amendment speech, their access to the Courts, immigrant status and other rights exercised or sought to be exercised by Plaintiffs.

551.    The false reports, perjury and other fabricated evidence by all the Court Security and Clerk's Office defendants are part of a larger conspiracy directed by both DANY and NYPD defendants.

552.    Each Defendant knew or should have known such evidence was false, and the Defendants engaged in such conduct with deliberate indifference to and/or reckless disregard for the truth and for Plaintiff's rights secured by the United States Constitution and Amendments thereto.

553.    The constitutional source against using false evidence is primarily the due process clause of the Fifth and Fourteenth Amendments, and Plaintiff's due process rights were violated by the conduct alleged herein.

554.    Plaintiffs bring this claim as both a procedural and substantive due process violations that Defendants unlawfully and falsely arrested/imprisoned both RUDY ROSENBERG and JACQUELINE ROSENBERG in addition to unlawful fabrication against all plaintiffs thereby violating their bodily integrity and right to personal security.

555.    To the extent that any court was to conclude that the source of Plaintiffs' right to not have false evidence used against them is any constitutional source other than due process (such as the Fourth Amendment), this claim is brought on those bases as well.

556.    As a direct and proximate result of the unlawful acts of the Defendants described herein, the plaintiff has incurred economic damage including a loss of gainful employment and damage to his Reputation / Stigma plus and still suffers both physical pain and suffering and psychiatric injury all to plaintiff's damage and injuries that have persisted for years.

557.    As a direct and proximate result of the unlawful policies and acts of the Defendants described herein, the plaintiffs have incurred losses & injury, as described herein including unlawful detention, loss of liberty, emotional distress, fear, anxiety, humiliation, degradation, for an undetermined period greater than a couple of months and will continue for an undetermined period of time, additionally including losses & injuries:

a. physical pain and suffering

b. emotional and psychological pain and suffering

c. economic damage including a loss of gainful employment & economic claims

d. loss of business credibility & opportunities,

e. alienation of relations & affections, and loss of enjoyment,

f. medical and psychological injury,

g. Reputation / Stigma plus,

h. All other losses and injury pleaded herein.

## 2ND CLAIM FOR RELIEF

### FIRST AMMENDMENT VIOLATIONS

**42 U.S.C. § 1983, 1981, 1985(2)(3) & 1986**
**(Against All Defendants and City of New York)**

558.    Plaintiffs repeat and re-allege each and every prior allegation as if fully set forth herein.

559.    Defendants, individually and collectively, were acting under color of state law, as officers of the NYPD, Court Security, Court Clerk's Office and officials of the Manhattan D.A., inclusive of their agents, and in their respective individual and official capacity, when they carried out the acts complained of herein.

560.    Defendants acted individually and collectively to discriminate and retaliate against Plaintiffs over their complaints against judicial misconduct in addition to Defendants' intertwined misconduct filed from Spring 2015 forward.

561.     Defendants acted individually and collectively to discriminate and retaliate against Plaintiffs to constructively "evict" Plaintiffs from the New York Court system through a conspiracy of harassment, racialized character defamation, false arrests and other stigma plus adverse actions that would irreparably harm Plaintiffs' immigrant status in addition to impairing employment, credit, residence and other rights and privileges.

562.    The Defendants acted willfully, maliciously and/or with reckless disregard of the consequences of their actions.

563.     Defendants are liable under Section 1983, 1981 and 1985 (2), (3) and 1986 for intentional racial harassment and other constitutional violations designed to oppress and punish plaintiffs for their interracial relationship, their First Amendment speech, their access to the Courts, immigrant status and other rights exercised or sought to be exercised by Plaintiffs.

564.     The Defendants' retaliation against plaintiffs for serving a notice of claim and other filed complaints against police, the judiciary and D.A. constitutes a violation of the plaintiff's access to the courts and his right to petition for redress as set forth in the First Amendment to the United States Constitution.

565.     As a direct and proximate result of the unlawful acts of the Defendants described herein, the plaintiff has incurred economic damage including a loss of gainful employment and damage to his Reputation / Stigma plus and still suffers both physical pain and suffering and psychiatric injury all to plaintiff's damage and injuries that have persisted for years.

566.     As a direct and proximate result of the unlawful policies and acts of the Defendants described herein, the plaintiffs have incurred losses & injury, as described herein including unlawful detention, loss of liberty, emotional distress, fear, anxiety, humiliation, degradation, for an undetermined period greater than a couple of months and will continue for an undetermined period of time, additionally including losses & injuries:

    a.   physical pain and suffering

    b.   emotional and psychological pain and suffering

    c.   economic damage including a loss of gainful employment & economic claims

    d.   loss of business credibility & opportunities,

    e.   alienation of relations & affections, and loss of enjoyment,

    f.   medical and psychological injury,

    g.   Reputation / Stigma plus,

    h.   All other losses and injury pleaded herein.

## STIGMA PLUS

**(Due Process Clause of the Fifth and Fourteenth Amendments Violations)**
**(UNDER 42 U.S.C. § 1983, 1981, 1985(2)(3), 1986)**
**(Against All Defendants and City of New York)**

567.     Plaintiffs repeat and re-allege each and every prior allegation as if fully set forth herein.

568.     Defendants, individually and collectively, were acting under color of state law, as officers of the NYPD, Court Security, Court Clerk's Office and officials of the Manhattan D.A., inclusive of their agents, and in their respective individual and official capacity, when they carried out the acts complained of herein.

569.     The Defendants acted willfully, maliciously and/or with reckless disregard of the consequences of their actions.

570.     Defendants are liable under Section 1983, 1981 and 1985 (2), (3) and 1986 for intentional racial harassment and other constitutional violations designed to oppress and punish plaintiffs for their interracial relationship, their First Amendment speech, their access to the Courts, immigrant status and other rights exercised or sought to be exercised by Plaintiffs.

571.     Defendants acted individually and collectively to discriminate and retaliate against Plaintiffs over their complaints against judicial misconduct in addition to Defendants' intertwined misconduct filed from Spring 2015 forward.

572.      Defendants acted individually and collectively to discriminate and retaliate against Plaintiffs to constructively "evict" Plaintiffs from the New York Court system through a conspiracy of harassment, racialized character defamation, false arrests and other stigma plus adverse actions that would irreparably harm Plaintiffs' immigrant status in addition to impairing employment, credit, residence and other rights and privileges.

573.     Defendants deliberately made false statements and reports with the intent to be defamatory.

574.     Defendants published and/or caused to be published these false statements and reports in public and publicly accessible forums or similar facsimile.

575.     Defendants' actions and statements were calculated to cause Plaintiffs individual or collective irreparable harm so as to unlawfully deprive same of their constitutional rights, inclusive of liberty, due process and property.

576.     Defendants misconduct, including the recklessly negligent and malicious false statements and reports, and results meet the legal requirements of Stigma Plus.

577.     As a direct and proximate result of the unlawful acts of the Defendants described herein, the plaintiff has incurred economic damage including a loss of gainful employment and damage to his Reputation / Stigma plus and still suffers both physical pain and suffering and psychiatric injury all to plaintiff's damage and injuries that have persisted for years.

578.     As a direct and proximate result of the unlawful policies and acts of the Defendants described herein, the plaintiffs have incurred losses & injury, as described herein including unlawful detention, loss of liberty, emotional distress, fear, anxiety, humiliation, degradation, for an undetermined period greater than a couple of months and will continue for an undetermined period of time, additionally including losses & injuries:

   a.   physical pain and suffering

   b.   emotional and psychological pain and suffering

   c.   economic damage including a loss of gainful employment & economic claims

   d.   loss of business credibility & opportunities,

   e.   alienation of relations & affections, and loss of enjoyment,

   f.   medical and psychological injury,

   g.   Reputation / Stigma plus,

   h.   All other losses and injury pleaded herein.

# 4TH CLAIM FOR RELIEF

## UNLAWFUL & SEARCH / SEIZURE

### (FIRST, FOURTH, FIFTH & FOURTEENTHAMENDMENT VIOLATIONS)
### (UNDER 42 U.S.C. § 1983, 1981, 1985(2)(3), 1986)
### (Against All Defendants and City of New York)

579.     Plaintiffs repeat and re-allege each and every prior allegation as if fully set forth herein.

580.     Defendants, individually and collectively, were acting under color of state law, as officers of the NYPD, Court Security, Court Clerk's Office and officials of the Manhattan D.A., inclusive of their agents, and in their respective individual and official capacity, when they carried out the acts complained of herein.

581.     The Defendants acted outrageously, willfully, maliciously and/or with reckless disregard of the consequences of their actions.

582.     Defendants are liable under Section 1983, 1981 and 1985 (2), (3) and 1986 for intentional racial harassment and other constitutional violations designed to oppress and punish plaintiffs for their interracial relationship, their First Amendment speech, their access to the Courts, immigrant status and other rights exercised or sought to be exercised by Plaintiffs.

583.     The defendants engaged in racialized harassment, defamation and invasion of privacy that was reinforced by excessive oral, physical and psychological assaults upon Plaintiffs.

584.     Search RUDY ROSENBERG's person and bag without probable cause and warrant.

585.     Search JACQUELINE ROSENBERG's person and bag without probable cause or warrant.

586.     Defendants repeatedly used escalating force and threats to silence Plaintiffs' objections.

587.     For an arrest to stand there must be reasonable cause to believe that a crime has been committed.

588.     False imprisonment is present when one intentionally takes the freedom of movement away from another without cause or justification.

589.     There was no reasonable cause present when the Defendants falsely caused the arrest of RUDY ROSENBERG in violation of his Fourth Amendment right to be free from unreasonable seizures.

590. There was no crime being committed when Defendants caused the arrest of plaintiffs.

591. Individual Defendants falsely arrested Plaintiffs due to improper and inaccurate investigation for the sake of political, status gain, discrimination and retaliation without cause, reason or justification.

592. Defendants, via their agents intentionally restrained Plaintiffs by handcuffing Plaintiffs restricting their movement and causing both grievous mental and physical ongoing pain and suffering.

593. Plaintiffs were at a loss of their freedom because of the unjustified restraints that placed on them.

594. As a direct and proximate result of the unlawful policies and acts of the Defendants described herein, the plaintiffs have incurred losses & injury, as described herein including unlawful detention, loss of liberty, emotional distress, fear, anxiety, humiliation, degradation, for an undetermined period greater than a couple of months and will continue for an undetermined period of time, additionally including losses & injuries:

   a. physical pain and suffering

   b. emotional and psychological pain and suffering

   c. economic damage including a loss of gainful employment & economic claims

   d. loss of business credibility & opportunities,

   e. alienation of relations & affections, and loss of enjoyment,

   f. medical and psychological injury,

   g. Reputation / Stigma plus,

   h. All other losses and injury pleaded herein.

# 5TH CLAIM FOR RELIEF

## SELECTIVE PROSECUTION & RETALIATION

### (FIRST, FOURTH, FIFTH AND FOURTEENTH AMENDMENT VIOLATIONS)
### 42 U.S.C. § 1983, 1981, 1985(2)(3) & 1986
### (Against All Defendants and City of New York)

595.     Plaintiffs repeat and re-allege each and every prior allegation as if fully set forth herein.

596.     Defendants, individually and collectively, were acting under color of state law, as officers of the NYPD, Court Security, Court Clerk's Office and officials of the Manhattan D.A., inclusive of their agents, and in their respective individual and official capacity, when they carried out the acts complained of herein.

597.     The Defendants acted outrageously, willfully, maliciously and/or with reckless disregard of the consequences of their actions.

598.     Defendants acted individually and collectively to discriminate and retaliate against Plaintiffs over their complaints against judicial misconduct in addition to Defendants' intertwined misconduct filed from Spring 2015 forward.

599.     Defendants acted individually and collectively to discriminate and retaliate against Plaintiffs to constructively "evict" Plaintiffs from the New York Court system through a conspiracy of harassment, racialized character defamation, false arrests and other stigma plus adverse actions that would irreparably harm Plaintiffs' immigrant status in addition to impairing employment, credit, residence and other rights and privileges.

600.     Defendants are liable under Section 1983, 1981 and 1985 (2), (3) and 1986 for intentional racial harassment and other constitutional violations designed to oppress and punish plaintiffs for their interracial relationship, their First Amendment speech, their access to the Courts, immigrant status and other rights exercised or sought to be exercised by Plaintiffs.

601.     The policies and intentional conduct of the Defendants in furtherance of a political vendetta deprived the plaintiff of his right to equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution.

602.     The Defendants acted willfully, maliciously and/or with reckless disregard of the consequences of their actions.

603.    As a direct and proximate result of the unlawful policies and acts of the Defendants

described herein, the plaintiffs have incurred losses & injury, as described herein including

unlawful detention, loss of liberty, emotional distress, fear, anxiety, humiliation, degradation, for

an undetermined period greater than a couple of months and will continue for an undetermined

period of time, additionally including losses & injuries:

    a.   physical pain and suffering

    b.   emotional and psychological pain and suffering

    c.   economic damage including a loss of gainful employment & economic claims

    d.   loss of business credibility & opportunities,

    e.   alienation of relations & affections, and loss of enjoyment,

    f.   medical and psychological injury,

    g.   Reputation / Stigma plus,

    h.   All other losses and injury pleaded herein.


## 6TH CLAIM FOR RELIEF

### EXCESSIVE FORCE

**42 U.S.C. § 1983, 1981, 1985(2)(3) & 1986**
**(Against All Defendants and City of New York)**


604.    Plaintiffs repeat and re-allege each and every prior allegation as if fully set forth herein.

605.    Defendants, individually and collectively, were acting under color of state law, as officers

of the NYPD, Court Security, Court Clerk's Office and officials of the Manhattan D.A., inclusive

of their agents, and in their respective individual and official capacity, when they carried out the

acts complained of herein.

606.    The Defendants acted outrageously, willfully, maliciously and/or with reckless disregard

of the consequences of their actions.

607.    Defendants are liable under Section 1983, 1981 and 1985 (2), (3) and 1986 for intentional

racial harassment and other constitutional violations designed to oppress and punish plaintiffs for

their interracial relationship, their First Amendment speech, their access to the Courts, immigrant

status and other rights exercised or sought to be exercised by Plaintiffs.

608.    The level of force, including physical, oral and psychological, applied by each of the defendant police officers against both RUDY ROSENBERG and JACQUELINE ROSENBERG was objectively unreasonable, excessive, and unjustified therefore deprived Plaintiffs of their constitutional rights as guaranteed under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

609.    Defendant Court Security, NYPD and Clerk's Office employees with their agent Roberto Irizarry, described herein and directed by the DANY defendants, engaged in excessive physical force with discriminatory malice, including racial animus, against each individually and collectively named Plaintiffs being RUDY ROSENBERG and JACQUELINE ROSENBERG.

610.    These officers openly engaged in physical assaults causing injury that lingered for years.

611.    Defendants further aided & abetted and directed all excessive assaults and force by NYPD and Court Security officers and agents, described herein, that caused Plaintiffs serious psychological and physical injury that lasted for years, inclusive of the Defendants' excessive handcuffing that seriously obstructed RUDY ROSENBERG's circulation, wrist, elbow and shoulder injuries.

612.    Defendants' threats and coercive interrogation of RUDY ROSENBERG and JACQUELINE ROSENBERG amounts excessive psychological and physical force meant to injure both RUDY ROSENBERG and his family's mental and physical health and wellbeing for years.

613.    As a result of Defendants' actions, Plaintiffs suffered significant physical and emotional pain, humiliation, trauma, and deprivation of their State and Federal constitutional rights which injury and damage have persisted for years.

614.    The Defendants acted willfully, maliciously and/or with reckless disregard of the consequences of their actions.

615.    As a direct and proximate result of the unlawful policies and acts of the Defendants described herein, the plaintiffs have incurred losses & injury, as described herein including unlawful detention, loss of liberty, emotional distress, fear, anxiety, humiliation, degradation, for an undetermined period greater than a couple of months and will continue for an undetermined period of time, additionally including losses & injuries:

a.   physical pain and suffering

b.   emotional and psychological pain and suffering

c.   economic damage including a loss of gainful employment & economic claims

d.   loss of business credibility & opportunities,

e.   alienation of relations & affections, and loss of enjoyment,

f.   medical and psychological injury,

g.   Reputation / Stigma plus,

h.   All other losses and injury pleaded herein.


# 7TH CLAIM FOR RELIEF

## FAILURE TO PROTECT & INTERVENE

### (FOURTH, FIFTH, NINTH AND FOURTEENTH VIOLATIONS)
### (Title 42 U.S.C. § 1983, 1985 (2) & (3), 1986, 1981)
### (Against All Defendants and City of New York)

616.   Plaintiffs repeat and re-allege each and every prior allegation as if fully set forth herein.

617.   Defendants, individually and collectively, were acting under color of state law, as officers of the NYPD, Court Security, Court Clerk's Office and officials of the Manhattan D.A., inclusive of their agents, and in their respective individual and official capacity, when they carried out the acts complained of herein.

618.   The Defendants acted outrageously, willfully, maliciously and/or with reckless disregard of the consequences of their actions.

619.   Defendants acted individually and collectively to discriminate and retaliate against Plaintiffs over their complaints against judicial misconduct in addition to Defendants' intertwined misconduct filed from Spring 2015 forward.

620.    Defendants acted individually and collectively to discriminate and retaliate against Plaintiffs to constructively "evict" Plaintiffs from the New York Court system through a conspiracy of harassment, racialized character defamation, false arrests and other stigma plus adverse actions that would irreparably harm Plaintiffs' immigrant status in addition to impairing employment, credit, residence and other rights and privileges.

621.     Defendants are liable under Section 1983, 1981 and 1985 (2), (3) and 1986 for intentional racial harassment and other constitutional violations designed to oppress and punish plaintiffs for their interracial relationship, their First Amendment speech, their access to the Courts, immigrant status and other rights exercised or sought to be exercised by Plaintiffs.

622.     Defendants further conspired and designed their unconstitutional violations to unlawfully deprive Plaintiffs of their constitutional and substantive rights.

623.     42 U.S. Code § 1986. Action for neglect to prevent:

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

624.     Defendants', acting individually and collectively, aided & abetted the wrongdoers' commissions in addition to their acts of omissions tied to failure to intervene and/or provide protection for Plaintiffs as part of Defendants common scheme.

625.     Defendants assisted in creating or increasing the danger to Plaintiffs that implicate their constitutional rights.

626.     The Defendants acted outrageously, willfully, maliciously and/or with reckless disregard of the consequences of their actions.

627.     Defendants who are presently unidentified were present but did not actively participate in the aforementioned unlawful conduct observed such conduct; had an opportunity to prevent such conduct and had a duty to intervene and prevent such conduct - but consciously failed and refused to intervene.

628.     Accordingly, the Defendants who failed to intervene violated the Fourth, Fifth and Fourteenth Amendments.

629.     As a direct and proximate result of the unlawful policies and acts of the Defendants

described herein, the plaintiffs have incurred losses & injury, as described herein including

unlawful detention, loss of liberty, emotional distress, fear, anxiety, humiliation, degradation, for

an undetermined period greater than a couple of months and will continue for an undetermined

period of time, additionally including losses & injuries:

    a.   physical pain and suffering

    b.   emotional and psychological pain and suffering

    c.   economic damage including a loss of gainful employment & economic claims

    d.   loss of business credibility & opportunities,

    e.   alienation of relations & affections, and loss of enjoyment,

    f.   medical and psychological injury,

    g.   Reputation / Stigma plus,

    h.   All other losses and injury pleaded herein.


## 8TH CLAIM FOR RELIEF

### MONELL CLAIM - Violation of Civil Rights

**(Title 42 U.S.C. § 1983, 1985 (2) & (3), 1986, 1981, 1986)**
**(Municipal Liability Against Defendant, City of New York)**

630.     Plaintiffs repeat and re-allege each and every prior allegation as if fully set forth herein.

631.     Defendants, individually and collectively, were acting under color of state law, as officers

of the NYPD, Court Security, Court Clerk's Office and officials of the Manhattan D.A., inclusive

of their agents, and in their respective individual and official capacity, when they carried out the

acts complained of herein.

632.     The Defendants acted outrageously, willfully, maliciously and/or with reckless disregard

of the consequences of their actions.

633.     Defendants are liable under Section 1983, 1981 and 1985 (2), (3) and 1986 for intentional

racial harassment and other constitutional violations designed to oppress and punish plaintiffs for

their interracial relationship, their First Amendment speech, their access to the Courts, immigrant

status and other rights exercised or sought to be exercised by Plaintiffs.

634.    Defendant failed to create and maintain appropriate hiring, training, supervisory and disciplinary systems, policy and procedures to prevent, detect and control employees, supervisors and officials at the Court Security, Clerk's Office, NYPD and Manhattan District Attorney's Office so as to safeguard against constitutional violations, fraud and other Bad Acts.

635.    Defendant's custom or policy of either allowing the complained of constitutional violations against Plaintiffs to be permitted or ignored, including the excessive force, false arrest, False imprisonment of RUDY ROSENBERG and not intervening or not investigating such practices, or failing to train officers so as to prevent such practices.

636.    The Defendants acted willfully, maliciously and/or with reckless disregard of the consequences of their actions.

637.    In the instant case, the Manhattan District Attorney's Office pre and post arrest involvement against Plaintiffs, in directing the NYPD and Court Security's misconduct and the NYPD's executive following such blatantly unlawful and unconstitutional directions and guidance, constitutes a governing policy and practice to Monell liability.

638.    The Manhattan District Attorney's Office and the NYPD operated under a shroud of secrecy alike to a "Chinese Curtain" from December 2016 through the May 24, 2017 arrest and even post arrest misconduct.

639.    Law Enforcement's single-minded goal was to fix felony charges against RUDY ROSENBERG to the extent that the Court Security, NYPD and the D.A. deliberately neglected to pursue Judge Statsinger's December 8, 2016 Bench Warrant in furtherance of a conspiracy to stage a new false arrest and imprisonment on May 24th, 2017 and upon the May 24, 2017arrest, Officers Brochausen and Kselman and their supervisors deliberately refused to show the Bench Warrant.

640.    The NYPD POLICE STUDENT'S GUIDE page 456 states that the warrant must be shown to the arrestee, per CPL 120.80 et seq., for examination at the time of the arrest or shortly thereafter, but the NYPD demonstrates a policy or a custom of negligence by deliberately sanctioning officers pattern of failing to show the warrants which also raises the pattern of misconduct in their failing to verify that such warrants exist,

A.  A warrant of arrest may be executed on any day of the week
and at any hour of the day or night.

B.  Unless there is physical resistance, flight or other factors
making normal procedure impractical, the arresting officer
must:

- Inform the defendant of the warrant and the charge
indicated on it;

- On request, the officer must show the defendant the
warrant if it is in the officer's possession.

C.  The officer need not have the warrant in his or her
possession at the time of the arrest.  However, the officer
must show the warrant to the defendant as soon after the
arrest as possible.

641.     The D.A and the other defendants have operated purely out of animus to seek retribution

against RUDY ROSENBERG over gripes that included Plaintiffs' prior corruption and ethics

complaints filed against the NYPD, judges, Court Security and the D.A. from 2015 forward.

642.     A substantial part of the D.A.'s conspiracy is premised upon all government and private

participants engaging in various unconstitutional violations and other Bad Acts such as false

statements, false witnesses, perjury, fabricating false government, judicial and business records to

incriminate Plaintiffs and unconstitutionally denying Plaintiffs' equal service and protection

under the law.

643.     Monell and its progeny do not, and should not, permit our local government to act with

such deliberate indifference to violations of its citizens' constitutional rights.

644.     By permitting, tolerating and sanctioning a persistent and widespread policy, practice and

custom pursuant to which RUDY ROSENBERG was subjected to the conduct alleged herein,

Defendant City of New York has deprived Plaintiffs of their constitutional rights, remedies,

privileges and immunities guaranteed to every citizen of the United States secured by 42 U.S.C. §

1983, including but not limited to, rights guaranteed by the Fourth and Fourteenth Amendments

of the United States Constitution, the ADA, and other federal laws.

645.     Accordingly, Plaintiffs were harmed as a direct result of Defendants' unlawful,

unconstitutional and discriminatory conduct, and is entitled to damages, injunctive relief, and

reasonable attorneys' fees and costs in an amount to be determined by the Court.

646.     As a direct and proximate result of the unlawful policies and acts of the Defendants

described herein, the plaintiffs have incurred losses & injury, as described herein including

unlawful detention, loss of liberty, emotional distress, fear, anxiety, humiliation, degradation, for

an undetermined period greater than a couple of months and will continue for an undetermined

period of time, additionally including losses & injuries:

    a.   physical pain and suffering

    b.   emotional and psychological pain and suffering

    c.   economic damage including a loss of gainful employment & economic claims

    d.   loss of business credibility & opportunities,

    e.   alienation of relations & affections, and loss of enjoyment,

    f.   medical and psychological injury,

    g.   Reputation / Stigma plus,

    h.   All other losses and injury pleaded herein.

## 9TH CLAIM FOR RELIEF

### VICARIOUS LIABILITY/ RESPONDENT SUPERIOR

**(Against New York City, D.A VANCE & Commissioner DERMONT F. SHEA et al)**

647.     Plaintiffs repeat and re-allege each and every prior allegation as if fully set forth herein.

648.     Defendants, individually and collectively, were acting under color of state law, as officers of the NYPD, Court Security, Court Clerk's Office and officials of the Manhattan D.A., inclusive of their agents, and in their respective individual and official capacity, when they carried out the acts complained of herein.

649.     The Defendants acted outrageously, willfully, maliciously and/or with reckless disregard of the consequences of their actions.

650.     Defendants are liable under Section 1983, 1981 and 1985 (2), (3) and 1986 for intentional racial harassment and other constitutional violations designed to oppress and punish plaintiffs for their interracial relationship, their First Amendment speech, their access to the Courts, immigrant status and other rights exercised or sought to be exercised by Plaintiffs.

651.     The Defendants acted willfully, maliciously and/or with reckless disregard of the consequences of their actions.

652.    All of the above-mentioned improper actions taken by the Individual Defendants were

committed while they were acting in furtherance of New York City official business.

653.    All of the above-mentioned improper actions taken by the individual Defendants were

committed while acting within the scope of their authority and assigned duties as employees,

agent, and officers for New York City.

654.    Defendant New York City knew and/or should have known that the outrageous and

persistent violations of Plaintiffs' constitutional rights was taking place by its' employees while

acting within and outside of the scope of their assigned duties under color of law.

655.    The individual Defendants filed and/or caused to be filed, false/perjured statements

pertaining to the charges, allegations and other adverse actions taken against Plaintiffs.

656.    The above stated willful, reckless, negligent action taken by the individual Defendants

against Plaintiffs, while acting within the scope of their authority was foreseeable and/or should

have been reasonably anticipated by New York City as well as D.A. Vance, NYPD

Commissioner, Court Security Chief and Chief Clerk.

657.    New York City and the other defendant policymakers are responsible and/or liable to

Plaintiffs for each and every above-described act committed by the individual Defendants while

acting within the scope of their authority as employees, agents, and law enforcements officers for

the New York City and under the defendant policymakers.

658.    As a direct result of Defendants discriminatory and grossly negligent acts, Plaintiffs

suffered and are entitled to damage sustained to date.

659.    Accordingly, Plaintiffs were harmed as a direct result of Defendants' unlawful,

unconstitutional and discriminatory conduct, and is entitled to damages, injunctive relief, and

reasonable attorneys' fees and costs in an amount to be determined by the Court.

660.    As a direct and proximate result of the unlawful policies and acts of the Defendants

described herein, the plaintiffs have incurred losses & injury, as described herein including

unlawful detention, loss of liberty, emotional distress, fear, anxiety, humiliation, degradation, for

an undetermined period greater than a couple of months and will continue for an undetermined

period of time, additionally including losses & injuries:

661.    physical pain and suffering

662.     emotional and psychological pain and suffering

663.     economic damage including a loss of gainful employment & economic claims

664.     loss of business credibility & opportunities,

665.     alienation of relations & affections, and loss of enjoyment,

666.     medical and psychological injury,

667.     Reputation / Stigma plus,

668.     All other losses and injury pleaded herein.


# 10TH CLAIM FOR RELIEF

## ABUSE OF PROCESS

### (Against New York City & all Defendants)

669.     Plaintiffs repeat and re-allege each and every prior allegation as if fully set forth herein.

670.     Defendants, individually and collectively, were acting under color of state law, as officers of the NYPD, Court Security, Court Clerk's Office and officials of the Manhattan D.A., inclusive of their agents, and in their respective individual and official capacity, when they carried out the acts complained of herein.

671.     Defendants acted individually and collectively to discriminate and retaliate against Plaintiffs over their complaints against judicial misconduct in addition to Defendants' intertwined misconduct filed from Spring 2015 forward.

672.      Defendants acted individually and collectively to discriminate and retaliate against Plaintiffs to constructively "evict" Plaintiffs from the New York Court system through a conspiracy of harassment, racialized character defamation, false arrests and other stigma plus adverse actions that would irreparably harm Plaintiffs' immigrant status in addition to impairing employment, credit, residence and other rights and privileges.

673.     Defendants are liable under Section 1983, 1981 and 1985 (2), (3) and 1986 for intentional racial harassment and other constitutional violations designed to oppress and punish plaintiffs for his interracial relationship and their First Amendment speech and other rights exercised or sought to be exercised by Plaintiffs.

674.     Defendants, inclusive of Roberto Irizarry, intentionally, recklessly, and maliciously filed and/or caused to be filed, a false, inaccurate, and/or misleading indictment against Plaintiffs.

675.     The criminal complaint was made by the aforementioned Defendants with knowledge that the indictment was untruthful.

676.     The Defendants acted willfully, maliciously and/or with reckless disregard of the consequences of their actions.

677.     The false misdemeanor complaint lodged by Defendants was brought forth with knowledge that the facts and investigation leading to said indictment and contained therein were false, misleading and/or otherwise inaccurate.

678.     Defendants abused the criminal process for the sole purpose/motive to cover up their negligent and improper investigative process as well as political gain in this high-profile media case.

679.     Defendants, with knowledge of the inaccuracy and/or falsity of said charge made by Defendants without any investigation and/or rudimentary query, based upon facts existing at all-time relevant to the indictment; intentionally, recklessly and maliciously caused to be filed said false, inaccurate, and/or misleading criminal complaint against Plaintiffs.

680.     Said charge process was made by the aforementioned Defendants without any actual research and investigation into the veracity and/or truthfulness of the charges presented and indicted upon.

681.     Defendants were motivated to engage these wrongs by self-serving ideas of self-preservation to insulate both politically and for the sake of keeping the line by not arguing with superiors.

682.     Defendants clear intention was to falsely arrest, falsely prosecute and to cause harm to Plaintiffs without proper motive, excuse, or justification of any kind.

683.     Defendants use of the criminal process for the aforementioned improper purpose amounted to an abuse of said process, which was initiated and used to the detriment of Plaintiffs solely for a purpose that was/is outside the legitimate ends of the criminal process; the cover-up of clear prosecutorial misconduct.

684.	As a direct consequence of the Defendants' (collectively and individually) wrongful

actions, grossly negligent behavior, violation of state and federal laws, Plaintiffs were deprived of

their freedom, subject to false criminal arrest, subject to malicious prosecution, made to suffer

great personal emotional injuries, made to suffer financial/monetary injuries, subjected to great

fear, terror, personal humiliation and degradation, and continues to suffer pain and mental and

emotional distress as a result of the aforesaid unlawful conduct of the Defendants.

685.	That by reason of the foregoing, Plaintiffs have been damaged.

686.	Accordingly, Plaintiffs were harmed as a direct result of Defendants' unlawful,

unconstitutional and discriminatory conduct, and is entitled to damages, injunctive relief, and

reasonable attorneys' fees and costs in an amount to be determined by the Court.

687.	As a direct and proximate result of the unlawful policies and acts of the Defendants

described herein, the plaintiffs have incurred losses & injury, as described herein including

unlawful detention, loss of liberty, emotional distress, fear, anxiety, humiliation, degradation, for

an undetermined period greater than a couple of months and will continue for an undetermined

period of time, additionally including losses & injuries:

 a. physical pain and suffering

 b. emotional and psychological pain and suffering

 c. economic damage including a loss of gainful employment & economic claims

 d. loss of business credibility & opportunities,

 e. alienation of relations & affections, and loss of enjoyment,

 f. medical and psychological injury,

 g. Reputation / Stigma plus,

 h. All other losses and injury pleaded herein.


# 11TH CLAIM FOR RELIEF

## DISCRIMINATION: Title II of the Americans with Disabilities Act

### (42 U.S.C. § 12132 et seq.)
### (Against Defendant, City of New York)


688.	Plaintiffs repeat and re-allege each and every prior allegation as if fully set forth herein.

689.     Defendants, individually and collectively, were acting under color of state law, as officers of the NYPD, Court Security, Court Clerk's Office and officials of the Manhattan D.A., inclusive of their agents, and in their respective individual and official capacity, when they carried out the acts complained of herein.

690.     The Defendants acted willfully, maliciously and/or with reckless disregard of the consequences of their actions.

691.     Under Title II of the ADA, it is illegal for public entities to discriminate against qualified individuals with disabilities. Under 42 U.S.C. § 12132, "no qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity."

692.     At all times relevant to this action, RUDY ROSENBERG was disabled with PTSD and Defendants recklessly interfered with Plaintiff's requests for medical attention and medication that also extended to their interference at the hospital and beyond.

693.     Defendant City of New York is a "public entity," as defined by 42 U.S.C. § 12131(1).

694.     Defendant City of New York unlawfully discriminated against RUDY ROSENBERG in violation of the ADA by failing to accommodate RUDY ROSENBERG's qualified disability during his arrest, transport and detention at the 25th Precinct, Central Booking and the Court.

695.     The NYPD discriminated against RUDY ROSENBERG, adding an additional layer of punishment, injury and indignity to the arrest, transport and detention processes solely because of RUDY ROSENBERG's disability. A person who does not have a disability would not otherwise have experienced this harm.

696.     RUDY ROSENBERG was harmed as a direct result of Defendants' unlawful and discriminatory conduct and is entitled to damages, injunctive relief, and reasonable attorneys' fees and costs in an amount to be determined by the Court.

697.     As a direct and proximate result of the unlawful policies and acts of the Defendants described herein, the plaintiffs have incurred losses & injury, as described herein including unlawful detention, loss of liberty, emotional distress, fear, anxiety, humiliation, degradation, for

698.    The Defendants acted willfully, maliciously and/or with reckless disregard of the

consequences of their actions.

699.    Section 504 provides that it is illegal for "any program or activity receiving Federal

financial assistance" to subject any "qualified individual with a disability" to discrimination under

29 U.S.C.A. § 794(a).

700.    At all times relevant to this action, RUDY ROSENBERG was disabled with PTSD and

Defendants recklessly interfered with Plaintiff's requests for medical attention and medication

that also extended to their interference at the hospital and beyond.

701.    RUDY ROSENBERG is a "qualified individual with a disability" under Section 504, as

defined by 29 U.S.C.A. § 705(20) and 42 U.S.C.A. 12102(2).

702.    At all times relevant to this action, RUDY ROSENBERG was disabled with PTSD and

Defendants recklessly interfered with Plaintiff's requests for medical attention and medication

that also extended to their interference at the hospital and beyond.

703.    Defendant City of New York is a "public entity," as defined by 42 U.S.C. § 12131(1).

704.    At all times relevant to this action, both Defendant City of New York and their agency,

the NYPD, received funding from the federal government of the United States and were

"programs or activities," as defined by 29 U.S.C.A. § 794(b).

705.    Defendant City of New York unlawfully discriminated against RUDY ROSENBERG in

violation of the ADA by failing to accommodate RUDY ROSENBERG's qualified disability

during his arrest, transport and detention at the 25th Precinct, Central Booking and the Court.

706.    The NYPD discriminated against RUDY ROSENBERG and his dependents, adding an

additional layer of punishment, injury and indignity to the arrest, transport and detention

processes solely because of RUDY ROSENBERG's disability. A person who does not have a

disability would not otherwise have experienced this harm.

707.    As a direct and proximate result of the unlawful policies and acts of the Defendants

described herein, the plaintiffs have incurred losses & injury, as described herein including

unlawful detention, loss of liberty, emotional distress, fear, anxiety, humiliation, degradation, for

period of time, additionally including losses & injuries:

    a.   physical pain and suffering

    b.   emotional and psychological pain and suffering

    c.   economic damage including a loss of gainful employment & economic claims

    d.   loss of business credibility & opportunities,

    e.   alienation of relations & affections, and loss of enjoyment,

    f.   medical and psychological injury,

    g.   Reputation / Stigma plus,

    h.   All other losses and injury pleaded herein.

## 12TH CLAIM FOR RELIEF

### GROSS NEGLIGENCE

#### (Against All Defendants and City of New York)

708.      Plaintiffs repeat and re-allege each and every prior allegation as if fully set forth herein.

709.      Defendants, individually and collectively, were acting under color of state law, as officers of the NYPD, Court Security, Court Clerk's Office and officials of the Manhattan D.A., inclusive of their agents, and in their respective individual and official capacity, when they carried out the acts complained of herein.

710.      Defendants, inclusive of Roberto Irizarry, conspired in advance to perpetrate constitutional violations and other Bad Acts through fabrication of evidence, filing false business & government records and perjury.

711.      Defendants acted willfully, maliciously and/or with reckless disregard of the consequences of their actions.

712.      The individual Defendants, each of them in their individual and official capacities had a duty under New York State's Constitution and the Constitution of the United States to prevent and cease the wrongful detainment, false arrest, false imprisonment, malicious prosecution and false charging and other wrongful acts that were committed against Plaintiffs.

713.     The individual Defendants, each of them in their individual and official capacities, and

New York City, have a duty to conduct proper investigations with regard to all criminal matters

to assure that such criminal complaints are accurate and truthful.

714.     Defendants are required to undergo any and all investigative procedures reasonably

available to make sure persons, like Plaintiffs, are not falsely / wrongfully arrested and charged.

715.     Defendants have a duty to arrest and prosecute individuals only when there is probable

cause to effect and arrest and/or subject a person to said prosecution.

716.     As a direct and proximate result of the unlawful policies and acts of the Defendants

described herein, the Plaintiffs have incurred losses & injury, as described herein including

unlawful detention, loss of liberty, emotional distress, fear, anxiety, humiliation, degradation, for

an undetermined period greater than a couple of months and will continue for an undetermined

period of time, additionally including losses & injuries:

    i.   physical pain and suffering

    j.   emotional and psychological pain and suffering

    k.   economic damage including a loss of gainful employment & economic claims

    l.   loss of business credibility & opportunities,

    m.   alienation of relations & affections, and loss of enjoyment,

    n.   medical and psychological injury,

    o.   Reputation / Stigma plus,

    p.   All other losses and injury pleaded herein.

## 13TH CLAIM FOR RELIEF

### INTENTIONAL & NEGLIGENCE INFLICTION OF EMOTIONAL DISTRESS

#### (Against All Defendants and City of New York)

717.     Plaintiffs repeat and re-allege each and every prior allegation as if fully set forth herein.

718.     Defendants, individually and collectively, were acting under color of state law, as officers

of the NYPD, Court Security, Court Clerk's Office and officials of the Manhattan D.A., inclusive

719.     Defendants are liable under Section 1983, 1981 and 1985 (2), (3) and 1986 for intentional racial harassment and other constitutional violations designed to oppress and punish plaintiffs for his interracial relationship and their First Amendment speech and other rights exercised or sought to be exercised by Plaintiffs.

720.     Defendants acted individually and collectively to discriminate and retaliate against Plaintiffs over their complaints against judicial misconduct in addition to Defendants' intertwined misconduct filed from Spring 2015 forward.

721.      Defendants acted individually and collectively to discriminate and retaliate against Plaintiffs to constructively "evict" Plaintiffs from the New York Court system through a conspiracy of harassment, racialized character defamation, false arrests and other stigma plus adverse actions that would irreparably harm Plaintiffs' immigrant status in addition to impairing employment, credit, residence and other rights and privileges.

722.     The Defendants acted willfully, maliciously and/or with reckless disregard of the consequences of their actions.

723.     All of the above-mentioned improper actions taken by the Individual Defendants were committed while they were acting in furtherance of New York City official business.

724.     All of the above-mentioned improper actions taken by the individual Defendants were committed while acting within the scope of their authority and assigned duties as employees, agent, and officers for New York City.

725.     Defendant New York City knew and/or should have known that said improper activity and blatant violations of Plaintiffs constitutionally secured rights were taking place by its employees while acting within the scope of their assigned duties.

726.     The individual Defendants filed and/or caused to be filed, false/perjured statements pertaining to the charges, allegations and other adverse actions taken against Plaintiffs.

727.     Defendants engaged in a continuous pattern of extreme and outrageous conduct directed at Plaintiffs originating on March 9, 2016 and continuing as a conspiracy through May 24, 2017,

when the Defendants fabricated the new charge and arrest on the Bench Warrant/Contempt
Case 1:20-cv-04012-CM   Document 2   Filed 05/22/20   Page 111 of 116
charge against RUDY ROSENBERG.

728.     Defendants outrageous and fraudulent misconduct caused the arrest, public stigma plus harassment, invasion of privacy, defamation, slander and humiliation of Plaintiffs on both March 9, 2016 and again on May 24, 2017.

729.     Defendants either acted intentionally to cause emotional distress to the Plaintiffs or otherwise acted with reckless disregard of the probability of causing emotional distress.

730.     Plaintiffs allege that Defendants outrageous conduct, individually and collectively, caused and will cause the Plaintiffs to suffer severe or extreme emotional distress for years.

731.     Defendants, inclusive of Roberto Irizarry, conspired in advance to perpetrate constitutional violations and other Bad Acts through fabrication of evidence, filing false business & government records and perjury.

732.     Defendants acted willfully, maliciously and/or with reckless disregard of the consequences of their actions.

733.     The individual Defendants, each of them in their individual and official capacities had a duty under New York State's Constitution and the Constitution of the United States to prevent and cease the wrongful detainment, false arrest, false imprisonment, malicious prosecution and false charging and other wrongful acts that were committed against Plaintiffs.

734.     The individual Defendants, each of them in their individual and official capacities, and New York City, have a duty to conduct proper investigations with regard to all criminal matters to assure that such criminal complaints are accurate and truthful.

735.     Defendants are required to undergo any and all investigative procedures reasonably available to make sure persons, like Plaintiffs, are not falsely / wrongfully arrested and charged.

736.     Defendants have a duty to arrest and prosecute individuals only when there is probable cause to effect and arrest and/or subject a person to said prosecution.

737.     As a direct and proximate result of the unlawful policies and acts of the Defendants described herein, the plaintiffs have incurred losses & injury, as described herein including unlawful detention, loss of liberty, emotional distress, fear, anxiety, humiliation, degradation, for

an undetermined period greater than a couple of months and will continue for an undetermined period of time, additionally including losses & injuries:

    a.   physical pain and suffering

    b.   emotional and psychological pain and suffering

    c.   economic damage including a loss of gainful employment & economic claims

    d.   loss of business credibility & opportunities,

    e.   alienation of relations & affections, and loss of enjoyment,

    f.   medical and psychological injury,

    g.   Reputation / Stigma plus,

    h.   All other losses and injury pleaded herein.

## 14TH CLAIM FOR RELIEF

### Violation of the Equal Protection Clause of the Fourteenth, Fifth & First Amendments

**42 U.S.C. § 1983, 1981, 1985(2)(3) & 1986**
**(Against All Defendants and City of New York)**

738.      Plaintiffs repeat and re-allege each and every prior allegation as if fully set forth herein.

739.      On information and belief, Plaintiffs allege that all defendants targeted and selectively violated Plaintiffs' constitutional rights on race, immigrant status and country of origin.

740.      Defendants, individually and collectively, were acting under color of state law, as officers of the Court Security, Clerks Office, NYPD and officials of the Manhattan D.A. inclusive of their agents, and in their respective individual capacity, when they carried out the acts complained of herein.

741.      Defendants acted individually and collectively to discriminate and retaliate against Plaintiffs over their complaints against judicial misconduct in addition to Defendants' intertwined misconduct filed from Spring 2015 forward.

742.      Defendants acted individually and collectively to discriminate and retaliate against Plaintiffs to constructively "evict" Plaintiffs from the New York Court system through a conspiracy of harassment, racialized character defamation, false arrests and other stigma plus

743.　　Defendants are liable under Section 1981, 1983, 1981, 1985 (2), (3) and 1986 et seq. for intentional racial harassment designed to punish Plaintiff for his interracial relationship and their First Amendment speech and other rights exercised or sought to be exercised by Plaintiffs.

744.　　The City of New York, through the subordinate defendants, has implemented, enforced, encouraged, and sanctioned a policy, practice, and/or custom of using unreasonable force against the named Plaintiffs and members of the Plaintiff class based solely on their race and national origin, in violation of the Fourteenth Amendment.

745.　　This use of selective arrest, prosecution, unreasonable force, and incarceration, within New York City and more specifically the 25th Precinct has been and is being conducted predominantly on Black and Latino and other individuals on the basis of racial and immigrant status profiling which adverse impacts Plaintiffs.

746.　　Furthermore, this use of selective arrest, prosecution, unreasonable force, and incarceration, within New York City has been specifically abused by Court Security, i.e. Nikki Sterling, and Court Clerk's Office, i.e. Kim Gooden, Alia Razzaq and Serena Springle, in addition to the other defendants.

747.　　The NYPD, Clerk's Office, Court Security and DANY defendants intentionally applied a facially neutral policy in a discriminatory manner.

748.　　As a result, the defendants' policy, practice, and/or custom of using unreasonable force violates the Equal Protection Clause of the Fourteenth, Fifth and First Amendments.

749.　　By its acts and omissions, the City has acted under color of state law to deprive the named Plaintiffs and class members of their Fourteenth, Fifth and First Amendment rights in violation of 42 U.S.C. § 1983 et seq.

750.　　The Clerk's Office Court Security, DANY and NYPD defendants used unreasonable force with a discriminatory purpose.

751.　　Defendants pursued this policy precisely because of the adverse effects it has on Caucasian and West Indian couples such as Plaintiffs.

752.     The City was and remains deliberately indifferent to the unconstitutional acts committed by NYPD officers through their use of unreasonable force and selective and excessive enforcement by defendants inclusive of the 25th Precinct.

753.     The Court Security, Clerk's Office, DANY and NYPD defendants' constitutional abuses were and remain directly and proximately caused by policies, practices, and/or customs devised, implemented, enforced, encouraged, and sanctioned by the City, including: (a) the encouragement, sanctioning, and failure to rectify the Clerk's Office, Court Security, DANY and NYPD's policy and practice of unreasonable force; (b) the failure to properly screen, train, and supervise defendants' named employees; (c) the failure to adequately monitor and discipline officers; and (d) the perpetuation of a code of silence within the City and its' subordinate defendants.

754.     Accordingly, Plaintiffs were harmed as a direct result of Defendants' unlawful, unconstitutional and discriminatory conduct, and is entitled to damages, injunctive relief, and reasonable attorneys' fees and costs in an amount to be determined by the Court.

755.     As a direct and proximate result of the unlawful policies and acts of the Defendants described herein, the plaintiffs have incurred losses & injury, as described herein including unlawful detention, loss of liberty, emotional distress, fear, anxiety, humiliation, degradation, for an undetermined period greater than a couple of months and will continue for an undetermined period of time, additionally including losses & injuries:

    i.     physical pain and suffering

    j.     emotional and psychological pain and suffering

    k.     economic damage including a loss of gainful employment & economic claims

    l.     loss of business credibility & opportunities,

    m.     alienation of relations & affections, and loss of enjoyment,

    n.     medical and psychological injury,

    o.     Reputation / Stigma plus,

    p.     All other losses and injury pleaded herein.

756.     Plaintiffs repeat and re-allege each and every prior allegation as if fully set forth herein.

757.     On information and belief, Plaintiffs allege that all defendants targeted and selectively violated Plaintiffs' constitutional rights on race, immigrant status and country of origin.

758.     Defendants, individually and collectively, were acting under color of state law, as officers and officials of the NYPD, Court Security, Court Clerk's in addition to officials of the Manhattan D.A. inclusive of their agents, and in their respective individual capacity, when they carried out the acts complained of herein.

759.     The acts of the Defendants were willful, wanton, egregious. malicious and oppressive and were motivated solely by a desire self-gain, thereby harming Plaintiffs, without regard for Plaintiffs' wellbeing, and were based on a lack of concern and self-centered political gain. Such acts therefore deserve an award of special and punitive damages.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this court:

1) Award all pleaded damages for all described injuries and losses pleaded herein in favor of each of the individual Plaintiffs in an amount to be determined by a jury in accordance with the proof, plus interest at the legal rate until paid in full;

2) Award general damages in favor of each of the individual Plaintiffs in an amount to be determined by a jury in accordance with the proof, plus interest at the legal rate until paid;

3) Award compensatory damages in favor of each of the individual Plaintiffs in an amount to be determined by a jury in accordance with the proof, plus interest at the legal rate until paid;

4) Award special and punitive damages against Defendants for their calculated and/or negligent conduct in willful and wanton disregard of the rights of Plaintiffs in an amount to be determined by a jury in accordance with the proof, plus interest at the legal rate until paid;

5) Award Plaintiffs costs and attorney's fees pursuant to 42 U.S.C. § 1988;

6) Grant Plaintiffs such other relief as may be deemed just and proper;

7) Grant Plaintiffs immediate discovery: and

8) Grant Plaintiffs a trial by jury when the issues are joined.

The individual named Plaintiffs also seek compensatory damages against all Defendants for the violations alleged in this Complaint. They similarly seek punitive damages against the individual Defendant Officers for these violations.

## JURY TRIAL IS HEREBY DEMANDED

Pursuant to Fed. R. Civ. P. 38, Plaintiffs collectively hereby request a trial by jury for all issues so triable.

RUDY ROSENBERG certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically, so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically, so identified, are reasonably based on belief or a lack of information.

Dated: May 18, 2020                                  Respectfully submitted,


*Rudy Rosenberg*

RUDY ROSENBERG


*Jacqueline Rosenberg*

JACQUELINE ROSENBERG


*Eltha Jordan*

ELTHA JORDAN